# **EXHIBIT A**

[Interim Order]

*Draft Proposed Form of Order*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------- X
In re:                                             :  Chapter 11
                                                   :
PRESTIGE INDUSTRIES LLC,[1]                        :  Case No. 17-_____ (____)
                                                   :
            Debtor.                                :
                                                   :
-------------------------------------------------- X   Re:  Docket Nos. _____
```

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, AND 507 AND FED. R. BANKR. P. 2002, 4001 AND 9014 (I) AUTHORIZING DEBTOR AND DEBTOR IN POSSESSION TO OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING USE OF CASH COLLATERAL, (III) GRANTING LIENS AND SUPER-PRIORITY CLAIMS, (IV) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED LENDERS, (V) MODIFYING THE AUTOMATIC STAY; (VI) SCHEDULING A FINAL HEARING, AND (VII) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtor and debtor in possession (the "Debtor") pursuant to §§ 105, 361, 362, 363, 364(c)(1), 364(c)(2) and 364(c)(3), and 364(d) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and Rule 4001-2 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), *inter alia* seeking, among other things:

(1)    authorization for Prestige Industries LLC, as debtor and debtor-in-possession (the "Borrower") to obtain post-petition financing from Wells Fargo Bank, National Association ("Lender") in accordance with the terms and conditions set forth in the Pre-Petition Loan

---

[1]    The Debtor and the last four digits of its federal taxpayer identification numbers are follows: Prestige Industries, LLC (3213).  The Debtor's executive headquarters are located at 1099 Wall St W #100, Lyndhurst, NJ 07071.

[2]    Capitalized terms used herein but not defined herein shall have the same meanings ascribed to such terms in the Ratification Agreement.

Agreement (as defined below), as ratified and amended by that certain Ratification and Amendment Agreement dated as of January [ • ], 2017 (the "Ratification Agreement") a copy of which is attached hereto as **Exhibit 1** (as amended, supplemented or otherwise modified from time to time in accordance with the terms and conditions set forth herein, the "Loan Agreement" as such term is further defined in the Ratification Agreement), by and between the Borrower and the Lender, and the other Loan Documents (as defined in the Ratification Agreement), and in accordance with this order ("Interim Order"), secured by perfected senior priority security interests in and liens on the Collateral (as defined below) pursuant to §§ 364(c)(2) and 364(c)(3), and 364(d) of the Bankruptcy Code (subject to the Carve-Out and the Permitted Liens (each as defined below));

(2)     authorization for Borrower and Guarantor to remit all collections, asset proceeds and payments to Lender for application, or deemed application, first to all Pre-Petition Obligations (as defined below) until such obligations are fully repaid in accordance with the Loan Agreement, and then to the repayment of all Post-Petition Obligations (as defined in the Ratification Agreement) in accordance with the Loan Agreement, the other Loan Documents, and this Interim Order and to deem all Pre-Petition Obligations with respect to Letters of Credit to have been issued or provided, as applicable, under the Loan Agreement and the other Loan Documents;

(3)     authorization for the Debtor to grant superpriority administrative claim status, pursuant to § 364(c)(1) of the Bankruptcy Code, to the Lender in respect of all Post-Petition Obligations;

2

(4)      as set forth below, subject to Section 4.1 of this Interim Order, approval of certain stipulations by the Debtor as set forth in this Interim Order in connection with the Pre-Petition Senior Loan Documents (as each term is defined below);

(5)      as set forth below, authorization to provide adequate protection to the Lender, Pre-Petition Subordinated Agent and Pre-Petition Subordinated Lenders (each in its respective capacities under the Pre-Petition Financing Agreements (as defined below);

(6)      effective only upon entry of a Final Order (as defined below), the waiver of the Debtor's right to assert claims to surcharge against the Collateral (as defined below) pursuant to § 506(c) of the Bankruptcy Code, to the extent set forth below;

(7)      the modification of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Interim Order to the extent hereinafter set forth;

(8)      the setting of a final hearing on the Motion ("Final Hearing") to consider entry of a final order (the "Final Order") authorizing, among other things, the borrowing under the Loan Documents on a final basis, as set forth in the Motion and the Loan Agreement filed with the Court, including the granting to Lender the senior security interests and liens described above and super-priority administrative expense claims; and

(9)      related relief.

The initial hearing on the Motion having been held by this Court on January [ • ], 2017 (the "Interim Hearing"), and upon the record made by the Debtor at the Interim Hearing, including the Motion, the *Declaration of Jonathan Fung* (the "First Day Declaration"), and the filings and pleadings in the above-captioned chapter 11 cases (the "Cases"), the Court having found that the relief requested in the Motion is in the best interests of Debtor, its estate, its

3

creditors and other parties in interest; and appropriate notice of the Motion, the relief requested

therein, and the Interim Hearing (the "Notice") was appropriate under the circumstances; and the

Notice having been served by the Debtor in accordance with Bankruptcy Rule 4001 on (i)

counsel to the Lender, (ii) counsel to Medley Capital Corporation in its capacity as Pre-Petition

Subordinated Agent (as defined below), (iii) counsel to St. Cloud Capital Partners II, LP, (iv) the

office of the United States Trustee (the "U.S. Trustee"), (v) the holders of the thirty (30) largest

unsecured claims against the Debtor's estate (the "30 Largest Unsecured Creditors"), (vi) the

Internal Revenue Service and applicable state taxing authorities, (vii) all parties which, to the

best of the Debtor's knowledge, information, and belief, have asserted or may assert a lien in the

Debtor's assets; (viii) the Debtor's landlords, (ix) Cho Holdings, LLC, and (x) all parties who

have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule

2002 (collectively, the "Noticed Parties"); and the opportunity for a hearing on the Motion was

appropriate and no other notice need be provided; and after due deliberation sufficient cause

appearing therefor;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND
CONCLUSIONS OF LAW**:

A.      Petition.  On January 30, 2017 (the "Petition Date"), the Debtor filed a voluntary

petition (each, a "Petition") under chapter 11 of the Bankruptcy Code.  The Debtor continues to

operate its businesses and manage its properties as Debtor-in-possession pursuant to §§ 1107(a)

and 1108 of the Bankruptcy Code.

B.      Disposition.  The Motion is hereby granted in accordance with the terms of this

Interim Order.  Any objections to the Motion with respect to the entry of the Interim Order that

have not been withdrawn, waived, resolved, or settled are hereby denied and overruled.

C.      <u>Jurisdiction and Venue</u>.  The Court has jurisdiction of this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  The Motion is a "core" proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A), (D) and (M).  Venue of the Cases and the Motion in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      <u>Notice</u>.  The Notice was given in the manner described in the Motion.  Under the circumstances, the Notice given by the Debtor of the Motion, the Interim Hearing and the relief granted under this Interim Order constitutes due and sufficient notice thereof and complies with Bankruptcy Rule 4001.

E.      <u>Debtor's Acknowledgments and Agreements</u>.  Without prejudice to the rights of any creditors' committee appointed in these Cases under Section 1102 of the Bankruptcy Code (the "<u>Committee</u>") or other parties-in-interest as and to the extent set forth in Section 4.1 of this Interim Order, the Debtor admit, stipulate, acknowledge and agree that:

(i)      <u>Pre-Petition Senior Loan Documents</u>.  Prior to the commencement of the Cases, Lender made loans, advances and provided other financial accommodations to Debtor pursuant to the terms and conditions set forth in (1) the Pre-Petition Loan Agreement (as defined in the Ratification Agreement and referred to herein as the "<u>Pre-Petition Loan Agreement</u>"); and (2) all other agreements, documents and instruments executed and/or delivered with, to, or in favor of Lender in connection with the Pre-Petition Loan Agreement, including, without limitation, all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements and all other related agreements, documents and instruments executed and/or delivered in connection therewith or related thereto (all of the foregoing, together with the Pre-Petition Loan Agreement, as all of the same have heretofore been amended, supplemented, modified, extended, renewed, restated and/or replaced at any time prior to the Petition Date,

collectively, the "Pre-Petition Senior Loan Documents").  Copies of the operative Pre-Petition Senior Loan Documents are on file with counsel to the Debtor and available upon reasonable request.

        (ii)        Pre-Petition Senior Loan Obligations.  As of the Petition Date, the Debtor were indebted to Lender under the Pre-Petition Senior Loan Documents in respect of (1) Borrowings, including Advances, Term Loans, a Cap Ex Loan in the aggregate amount of not less than $3,178,565.46 and (2) outstanding Letters of Credit in the aggregate undrawn amount of not less than $87,870.00 and all other Obligations (each as defined in the Pre-Petition Loan Agreement), plus all interest accrued and accruing thereon, together with all costs, fees, expenses (including attorneys' fees and legal expenses) and other Obligations accrued, accruing or chargeable with respect thereto (collectively, the "Pre-Petition Obligations", as such term is further defined in the Ratification Agreement).  The Pre-Petition Obligations constitute allowed, legal, valid, binding, enforceable and non-avoidable obligations of Debtor, and are not subject to any offset, defense, counterclaim, avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or any other applicable law, and Debtor do not possess, shall not assert, hereby forever release, and are forever barred from bringing any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Pre-Petition Obligations or liens and security interest securing the same described in clause (E)(iii) below.

        (iii)        Pre-Petition Senior Loan Collateral.  As of the Petition Date, the Pre-Petition Obligations were fully secured pursuant to the Pre-Petition Senior Loan Documents by valid, perfected, enforceable and non-avoidable first-priority security interests and liens granted by Debtor to Lender under the Pre-Petition Senior Loan Documents, upon all of the Pre-Petition

4664464.6

Collateral (as defined in the Ratification Agreement and hereinafter referred to as the "Pre-Petition Collateral"), subject only to certain liens and security interests specifically permitted under Section 7.2 of the Pre-Petition Loan Agreement that are (1) valid, perfected and non-avoidable security interests, liens or encumbrances existing as of the Petition Date, and (2) senior in priority to, and have not been or are not subject to being subordinated to, Lender's liens on and security interests in the Pre-Petition Collateral under the Pre-Petition Senior Loan Documents or otherwise avoided, and, in each instance, only for so long as and to the extent that the indebtedness secured by such liens, security interests, and/or encumbrances existing as of the Petition Date remains outstanding (hereinafter referred to as the "Permitted Liens")[3]. The Debtor do not possess and will not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of Lender's liens, claims or security interests in the Pre-Petition Collateral.

(iv)      Proof of Claim.   The acknowledgment by Debtor of the Pre-Petition Obligations and the liens, rights, priorities and protections granted to or in favor of Lender in respect of the Pre-Petition Collateral as set forth herein and in the Pre-Petition Senior Loan Documents shall be deemed a timely filed proof of claim on behalf of Lender in these Cases.

(v)      Pre-Petition Subordinated Loan Documents.  Prior to the commencement of the Cases, Pre-Petition Subordinated Agent (as defined below) and the Pre-Petition Subordinated Lenders (as defined below) made loans, advances and provided other financial accommodations to Debtor pursuant to the terms and conditions set forth in (a) that certain 13%

---

[3]      For the avoidance of doubt, the liens and security interest of the Pre-Petition Subordinated Agent and the Pre-Petition Subordinated Lenders in the Collateral are not Permitted Liens for purposes of this Interim Order.

Second Amended and Restated Secured Promissory Note for the aggregate principal amount of $6,240,000 issued by Prestige Industries LLC to St. Cloud Capital Partners II, LP ("St. Cloud"), effective as of the revised issue date of April 30, 2015; (b) that certain 13% Second Amended and Restated Secured Promissory Note for the aggregate principal amount of $5,760,000 issued by Prestige Industries LLC to Medley Capital Corporation ("Medley"), effective as of the revised issue date of April 30, 2015; (c) that certain 13% Convertible Secured Promissory Note for the aggregate principal amount of $1,500,000 issued by Prestige Industries LLC to St. Cloud, effective as of the issue date of August 10, 2012; and (d) that certain Loan and Extension Agreement dated April 30, 2015, by and between Prestige Industries LLC and St. Cloud (each of the forgoing as the same may be amended, modified, supplemented or restated from time to time prior to the Petition Date, the "Pre-Petition Subordinated Loan Agreements"), by and among Prestige Industries LLC and the lenders party thereto (the "Pre-Petition Subordinated Lenders") and Medley, in its capacity as administrative agent and as collateral agent (the "Pre-Petition Subordinated Agent"); and (b) all other agreements, documents and instruments executed and/or delivered with, to or in favor of the Pre-Petition Subordinated Lenders or Pre-Petition Subordinated Agent in connection with the Pre-Petition Subordinated Loan Agreements, including, without limitation, the Subordinated Lender Intercreditor Agreement (as defined below), all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements and all other related agreements, documents and instruments, including any fee letters, executed and/or delivered in connection therewith or related thereto (all the foregoing, together with the Pre-Petition Subordinated Loan Agreements, as all of the same have been supplemented, modified, extended, renewed, restated and/or replaced at any time prior to the Petition Date, collectively, the "Pre-Petition Subordinated Loan Documents"). Copies of the

8

operative Pre-Petition Subordinated Loan Documents are on file with counsel to the Debtor and available upon reasonable request.

(vi)    Pre-Petition Intercreditor Agreement. Lender, Pre-Petition Subordinated Agent and Pre-Petition Subordinated Lenders are parties to that certain Subordination Agreement dated as of March 2, 2012 (as amended, supplemented or otherwise modified from time to time, the "Pre-Petition Intercreditor Agreement"), which (x) confirms the senior priority of the security interests of Lender in the assets and properties of Borrower, Guarantors, to the junior priority security interests of Pre-Petition Subordinated Agent and Pre-Petition Subordinated Lenders; (y) provides for the senior right of repayment of the Senior Debt (as defined in the Pre-Petition Intercreditor Agreement) prior to any repayment of the Subordinated Debt (as defined in the Pre-Petition Intercreditor Agreement), and (z) provides certain other rights and obligations between Lender, on the one hand, and the Pre-Petition Subordinated Agent and Pre-Petition Subordinated Lenders, on the other hand, relating to the Pre-Petition Collateral.

F.    Findings Regarding the Post-Petition Financing.

(i)    Post-Petition Financing.  The Debtor has requested from Lender, and the Lender is willing, to extend certain loans, advances and other financial accommodations on the terms and conditions set forth in this Interim Order, the Loan Agreement and the other Loan Documents (as defined in the Ratification Agreement), respectively.

(ii)    Need for Post-Petition Financing.  The Debtor do not have sufficient available sources of working capital, including cash collateral, to operate its businesses in the ordinary course of business without the financing requested in the Motion.  The Debtor's ability to maintain business relationships with its vendors, suppliers and customers, to pay its employees, and to otherwise fund its operations is essential to the Debtor's continued viability as

9

the Debtor seek to maximize the value of the assets of the Estates (as defined below) for the benefit of all creditors of the Debtor.  The ability of the Debtor to obtain sufficient working capital and liquidity through the proposed post-petition financing arrangements with the Lender as set forth in this Interim Order, the Loan Agreement, and other Loan Documents, as applicable, is vital to the preservation and maintenance of the going concern value of each Debtor. Accordingly, the Debtor has an immediate need to obtain the post-petition financing in order to, among other things, permit the orderly continuation of the operation of its businesses, minimize the disruption of its business operations, and preserve and maximize the value of the assets of the Debtor's bankruptcy estates (as defined under § 541 of the Bankruptcy Code, the "Estates") in order to maximize the recovery to all creditors of the Estates.

    (iii)   No Credit Available on More Favorable Terms.  The Debtor is unable to procure financing in the form of unsecured credit allowable as an administrative expense under §§ 364(a), 364(b), or 503(b)(1) of the Bankruptcy Code or in exchange for the grant of a superpriority administrative expense, junior liens on encumbered property of the Estates, or liens on property of the Estates not subject to a lien pursuant to § 364(c)(1), 364(c)(2) or 364(c)(3) of the Bankruptcy Code.  The Debtor has been unable to procure the necessary financing on terms more favorable, taken as a whole, than the financing offered by Lender pursuant to the Loan Documents.

    (iv)   Budget.  The Debtor has prepared and delivered to Lender an initial 8 week budget (as defined in the Ratification Agreement, the "Budget").  Such Budget has been thoroughly reviewed by the Debtor and its management and sets forth, among other things, the projected cash receipts and disbursements of the Debtor for the periods covered thereby.  The Debtor represent that the Budget is achievable in accordance with the terms of the Loan

Documents and this Interim Order and will allow the Debtor to operate at all times during these Cases.  Lender is relying upon the Debtor's compliance with the Budget (subject to certain variances permitted under Section 5.3(c) of the Ratification Agreement (the "Permitted Variances"), the other Loan Documents, and this Interim Order in determining to enter into the post-petition financing arrangements provided for herein.

(v)       Business Judgment and Good Faith Pursuant to § 364(e).  The terms of the Loan Documents and this Interim Order are fair, just and reasonable under the circumstances, are ordinary and appropriate for secured financing to Debtor-in-possession, reflect the Debtor's exercise of its prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.  The terms and conditions of the Loan Documents and this Interim Order have been negotiated in good faith and at arms' length by and among the Debtor and Lender, with all parties being represented by counsel.  Any credit extended under the terms of this Interim Order shall be deemed to have been extended in good faith by the Lender, as that term is used in § 364(e) of the Bankruptcy Code.

(vi)      Good Cause.  The relief requested in the Motion is necessary, essential and appropriate, and is in the best interest of and will benefit the Debtor, its creditors and its Estates, as its implementation will, among other things, provide the Debtor with the necessary liquidity to (1) minimize disruption to the Debtor's businesses and on-going operations, (2) preserve and maximize the value of the Debtor's Estates for the benefit of all the Debtor's creditors, and (3) avoid immediate and irreparable harm to the Debtor, its creditors, its businesses, its employees, and its assets.

(vii)     Immediate Entry.  Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).  No party appearing in the Cases has

filed or made an objection to the relief sought in the Motion or the entry of this Interim Order, or any objections that were made (to the extent such objections have not been withdrawn, waived, resolved, or settled) are hereby overruled.

Based upon the foregoing, and after due consideration and good cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

Section 1.      <u>Authorization and Conditions to Financing.</u>

1.1      <u>Motion Granted</u>.  The Motion is granted in accordance with Bankruptcy Rule 4001(c)(2) to the extent provided in this Interim Order.  Except as otherwise expressly provided in this Interim Order, any objection to the entry of this Interim Order that has not been withdrawn, waived, resolved or settled, is hereby denied and overruled on the merits.

1.2      <u>Authorization to Borrow, Guaranty, and Use Loan Proceeds</u>.  Borrower is hereby authorized and empowered to immediately borrow and obtain Advances and Letters of Credit and to incur indebtedness and other Post-Petition Obligations (as defined in the Ratification Agreement), up to an aggregate amount equal to the sum of (i) 120% of all disbursements for the Interim Financing Period (as defined below) in the "Total Disbursements" line item of the Budget, (ii) an amount not less than $87,870.00 with respect to all Obligations relating to or arising in connection with Letters of Credit (inclusive of all Pre-Petition Obligations with respect to Letters of Credit, which are deemed to have been issued or provided, as applicable, under the Loan Agreement and the other Loan Documents, <u>plus</u> (iii) all interest, costs, and fees, accrued or accruing under the Loan Agreement and other Loan Documents, and the Pre-Petition Subordinated Loan Agreement, all pursuant to the terms and conditions of this Interim Order, the Loan Agreement, the other Loan Documents, and the Pre-Petition Subordinated Loan Agreement during the period commencing on the date of this Interim Order through and including the entry of the Final Order (the "<u>Interim Financing Period</u>").  Subject to

the terms and conditions contained in this Interim Order and the Loan Documents, Borrower shall use the proceeds of the Advances, Letters of Credit and other credit and financial accommodations provided by Lender under the Loan Agreement and the other Loan Documents solely for payment of expenses set forth in the Budget (subject to the Permitted Variances) and amounts owing to Lender in accordance with the terms and conditions of the Loan Documents and this Interim Order.

   1.3  <u>Financing Documents</u>

     (a)  <u>Authorization</u>.  Debtor is hereby authorized to enter into, execute, deliver, perform, and comply with all of the terms, conditions and covenants of the Loan Agreement and the other Loan Documents.  Upon execution and delivery of the Loan Agreement and the other Loan Documents, such agreements and documents shall constitute valid and binding obligations of the Debtor, enforceable against each Debtor party thereto in accordance with the terms of such agreements, documents and this Interim Order.  No obligation, payment, transfer or grant of security under the Loan Agreement, the other Loan Documents or this Interim Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under § 502(d) of the Bankruptcy Code), or be subject to any defense, reduction, setoff, recoupment or counterclaim.

     (b)  <u>Approval; Evidence of Borrowing Arrangements</u>.  All terms, conditions and covenants set forth in the Loan Documents (including, without limitation, the Loan Agreement) are approved to the extent necessary to implement the terms and provisions of this Interim Order.  All such terms, conditions and covenants shall be sufficient and conclusive evidence of (a) the borrowing arrangements by and among Debtor and Lender, and (b) each Debtor's assumption and adoption of all of the terms, conditions, and covenants of the Loan

Agreement and the other Loan Documents for all purposes, including, without limitation, to the extent applicable, the payment of all Post-Petition Obligations arising thereunder, including, without limitation, all principal, interest, fees and other expenses, including, without limitation, all of Lender's reasonable attorney fees and legal expenses, as more fully set forth in the Loan Documents.

(c)     <u>Amendment</u>.     Subject to the terms and conditions of the Loan Agreement and the other Loan Documents, Debtor and Lender may amend, modify, supplement or waive any provision of the Loan Documents (a "<u>DIP Loan Amendment</u>") without further approval or order of the Court so long as (a) such DIP Loan Amendment is not material (for purposes hereof, a "material" DIP Loan Amendment shall mean any DIP Loan Amendment that operates to increase the interest rate other than as currently provided in the Loan Documents, adds specific new events of default or enlarges the nature and extent of default remedies available to Lender following an event of default, or otherwise modifies any terms and conditions in any Financing Agreement in a manner materially less favorable to Debtor) and is undertaken in good faith by Lender and Debtor; (b) the Debtor provides prior written notice of the DIP Loan Amendment (the "<u>DIP Loan Amendment Notice</u>") to (i) the U.S. Trustee, (ii) counsel to any Committee, or in the event no such Committee is appointed at the time of such DIP Loan Amendment, the 40 Largest Unsecured Creditors, and (iii) counsel to the Pre-Petition Subordinated Agent; (c) the Debtor file the DIP Loan Amendment Notice with the Court; and (d) no objection to the DIP Loan Amendment is filed with the Court within five (5) business days from the later of the date the DIP Loan Amendment Notice is served or the date the DIP Loan Amendment Notice is filed with the Court in accordance with this Section.   Any material DIP

Loan Amendment to the Loan Documents must be approved by the Court prior to becoming effective.

   1.4 <u>Payment of Pre-Petition Debt</u>.  The Debtor is authorized to repay all Pre-Petition Obligations in accordance with the Loan Agreement, the other Loan Documents and this Interim Order, including, without limitation, Sections 1.5 and 1.6 of this Interim Order.

   1.5 <u>Payments and Application of Payments</u>.  The Debtor is authorized to make all payments and transfers of Estate property to the Lender as provided for, permitted and/or required under the Loan Agreement and the other Loan Documents, which payments and transfers shall not be avoidable or recoverable from the Lender under §§ 547, 548, 550, 553 or any other section of the Bankruptcy Code, or by reason of any other claim, charge, assessment, or other liability, whether by application of the Bankruptcy Code, other law or otherwise.  All proceeds of the Collateral (as defined herein) received by the Lender, and any other amounts or payments received by Lender in respect of the Post-Petition Obligations, may be applied or deemed to be applied by the Lender, in its discretion, first to the repayment in full of the Pre-Petition Obligations, and then in repayment of the Post-Petition Obligations, all in accordance with the Loan Agreement, the other Loan Documents and this Interim Order.  Without limiting the generality of the foregoing, the Debtor is authorized without further order of this Court to pay or reimburse Lender for future costs and expenses, including, without limitation, all professional fees, consultant fees and legal fees and expenses paid or incurred by the Lender in connection with the financing transactions as provided in this Interim Order and the Loan Documents, all of which shall be and are included as part of the principal amount of the Post-Petition Obligations and secured by the Collateral (as defined herein).

1.6     Continuation of Pre-Petition Procedures.   Except to the extent expressly set forth in the Loan Documents, all pre-petition practices and procedures for the payment and collection of proceeds of the Collateral (as defined herein), the turnover of cash, the delivery of property to the Lender, including lockbox or blocked depository bank account arrangements, are hereby approved and shall continue without interruption after the commencement of the Cases.

Section 2.     Post-Petition Lien; Superpriority Administrative Claim Status.

2.1     Post-Petition Lien.

(a)     Post-Petition Lien Granting.   To secure the prompt payment and performance of any and all Post-Petition Obligations (as defined in  the Loan Agreement) of Debtor to the Lender of whatever kind, nature or description, absolute or contingent, now existing or hereafter arising, Lender shall have, and is hereby granted, effective as of the Petition Date, valid and perfected first-priority security interests and liens, superior to all other liens, claims or security interests that any creditor of the Debtor's Estates may have (but subject to the Carve-Out (as defined below) and the Permitted Liens), in and upon all of the Collateral (as defined in the Loan Agreement and referred to herein as the "Collateral").   For the avoidance of doubt, prior to the entry of the Final Order, "Collateral" shall not include any property recovered as a result of transfers or obligations avoided or actions maintained or taken pursuant to (among others) Sections 542, 544, 545, 547, 548, 549, 550, 551, 552 and 553 of the Bankruptcy Code (the "Avoidance Actions").

(b)     Lien Priority in Collateral.   The liens and security interests of Lender granted under the Loan Documents and this Interim Order in the Collateral securing all Post-Petition Obligations (as defined in the Loan Agreement) shall be first and senior in priority to all other interests and liens of every kind, nature and description, whether created

16

consensually, by an order of the Court or otherwise, including, without limitation, liens or interests granted in favor of third parties in conjunction with §§ 363, 364 or any other section of the Bankruptcy Code or other applicable law; provided, however, that Lender's liens on and security interests in the Collateral shall be subject only to (a) Permitted Liens, and (b) the Carve-Out (as defined below).

(c)      Post-Petition Lien Perfection.      This Interim Order shall be sufficient and conclusive evidence of the priority, perfection and validity of the post-petition liens and security interests granted herein, effective as of the Petition Date, without any further act and without regard to any other federal, state or local requirements or law requiring notice, filing, registration, recording or possession of the Collateral, or other act to validate or perfect such security interest or lien, including without limitation, control agreements with any financial institution(s) or other depository account consisting of Collateral (a "Perfection Act"). Notwithstanding the foregoing, if Lender, shall, in its sole discretion, elect for any reason to file, record or otherwise effectuate any Perfection Act, then Lender is authorized to perform such act, and the Debtor is authorized to perform such act to the extent necessary or required by Lender, which act or acts shall be deemed to have been accomplished as of the date and time of entry of this Interim Order notwithstanding the date and time actually accomplished, and in such event, the subject filing or recording office is authorized to accept, file or record any document in regard to such act in accordance with applicable law.  Lender may choose to file, record or present a certified copy of this Interim Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file or record such certified copy of this Interim Order in accordance with applicable law.  Should Lender so choose and attempt to file, record or perform a Perfection Act,

no defect or failure in connection with such attempt shall in any way limit, waive or alter the validity, enforceability, attachment, or perfection of the post-petition liens and security interests granted herein by virtue of the entry of this Interim Order.

(d)      Nullifying Pre-Petition Restrictions to Post-Petition Financing. Notwithstanding anything to the contrary contained in any pre-petition agreement, contract, lease, document, note or instrument to which any Debtor is a party or under which any Debtor is obligated, except as otherwise permitted under the Loan Documents, any provision that restricts, limits or impairs in any way any Debtor from granting Lender security interests in or liens upon any of the Debtor's assets or properties (including, among other things, any anti-lien granting or anti-assignment clauses in any leases or other contractual arrangements to which any Debtor is a party) under the Loan Documents or this Interim Order, as applicable, or otherwise entering into and complying with all of the terms, conditions and provisions hereof or of the Loan Documents, shall not (a) be effective and/or enforceable against any such Debtor(s) or Lender, as applicable, or (b) adversely affect the validity, priority or enforceability of the liens, security interests, claims, rights, priorities and/or protections granted to Lender pursuant to this Interim Order or the Loan Documents, in each case, to the maximum extent permitted under the Bankruptcy Code and other applicable law that would not render any unexpired lease or executory contract non-assumable or non-assignable pursuant to section 365 of the Bankruptcy Code.

2.2      Superpriority Administrative Expenses.  For all Post-Petition Obligations now existing or hereafter arising pursuant to this Interim Order, the Loan Documents or otherwise, Lender is granted an allowed superpriority administrative claim pursuant to § 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities and indebtedness of Debtor (other than the Carve-Out), whether now in

existence or hereafter incurred by Debtor, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, inter alia, §§ 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 364(c)(1), 546(c), 726, 1113 or 1114 of the Bankruptcy Code (other than the Carve-Out), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed superpriority administrative claim shall be payable from and have recourse to all pre-petition and post-petition property of the Debtor and all proceeds thereof (the "DIP Loan Superpriority Claim").

      2.3    Carve-Out.

Carve-Out.  As used in this Interim Order, the "Carve-Out" means the sum of: (i) all allowed administrative expenses pursuant to 28 U.S.C. § 156(c) for fees required to be paid to the Clerk of the Bankruptcy Court and pursuant to 28 U.S.C. § 1930(a)(6) for fees payable to the Office of the U.S. Trustee under section 1930(a) of title 28 of the United States Code, plus interest at the statutory rate, as determined by agreement of the U.S. Trustee or by final order of the Bankruptcy Court (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $5,000 incurred by a trustee under Section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); and (iii) subject to the terms and conditions of this Interim Order, Allowed Professional Fees (as defined below) incurred by attorneys, accountants and other professionals retained by the Debtor and any Committee(s), under § 327 or § 1103(a) of the Bankruptcy Code (collectively, the "Professionals"), less the amount of any fee retainers received by any Professionals, in an aggregate amount not to exceed at any time $50,000 ("Professional Fee Carve-Out").  For the avoidance of doubt, nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement or compensation described herein.  For purposes of this Interim Order, the term

19

"Allowed Professional Fees" shall mean the unpaid and outstanding reasonable fees and expenses of Professionals (i) actually incurred on or after the Petition Date and (ii) allowed at any time by a final order of the Court pursuant to §§ 326, 328, 330 or 331 of the Bankruptcy Code.

(a)     Excluded Professional Fees.    Notwithstanding anything to the contrary in this Interim Order, neither the Professional Fee Carve-Out nor the proceeds of Collateral or any Loans, Letters of Credit or any other credit or financial accommodations provided under or in connection with the Loan Documents shall be used to pay any Allowed Professional Fees or any other fees or expenses incurred by any Professional in connection with any of the following:

(i)     an assertion or joinder in any claim, counter-claim, action, proceeding, application, motion, objection, defense or other contested matter seeking any order, judgment, determination or similar relief: (i) challenging the legality, validity, priority, perfection, or enforceability of  (A) the Pre-Petition Obligations or Lender's liens on and security interests in the Pre-Petition Collateral, and (B) the Post-Petition Obligations or Lender's liens on and security interests in the Collateral; (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, (A) the Pre-Petition Obligations or the Lender's liens on and security interests in the Pre-Petition Collateral, or (B) the Post-Petition Obligations or Lender's liens on and security interests in the Collateral; or (iii) preventing, hindering or delaying Lender's assertion or enforcement of any lien, claim, right or security interest or realization upon any Collateral in accordance with the terms and conditions of the Loan Agreement, the Loan Documents, and this Interim Order;

(ii)    a request to use Cash Collateral (as such term is defined in section 363 of the Bankruptcy Code), without the prior written consent of Lender;

(iii)    a request for authorization to obtain debtor-in-possession financing or other financial accommodations pursuant to section 364(c) or § 364(d) of the Bankruptcy Code, other than as provided in the Loan Agreement, the Loan Documents, and this Interim Order, without (a) the prior written consent of Lender; and (b) such debtor-in-possession financing providing for Payment in Full (as defined in the Ratification Agreement) of all Obligations upon the closing of such financing in accordance with the terms and conditions of the Loan Agreement, the other Loan Documents, and this Interim Order;

(iv)    the commencement or prosecution of any action or proceeding of any claims, causes of action or defenses against Lender or any of its respective officers, directors, employees, agents, attorneys, affiliates, successors or assigns, including, without limitation, any attempt to recover or avoid any claim or interest from Lender, under chapter 5 of the Bankruptcy Code;

(v)    the cost of investigation into any claims against Lender arising under or in connection with the Pre-Petition Senior Loan Documents in excess of $10,000; or

(vi)    any act which has or could directly, materially and adversely modify or compromise the rights and remedies of Lender under this Interim Order, or which directly results in the occurrence of an Event of Default under any Loan Documents, or this Interim Order.

4664464.6

(b)    <u>Carve-Out Reserve</u>.  At the Lender's discretion, Lender may, at any time and in any increment in accordance with the Loan Agreement, establish a Reserve (the "<u>Carve-Out Reserve</u>") against the amount of Advances and Letters of Credit that would otherwise be available to Borrower in respect of the Carve-Out Reserve.

2.4    <u>Payment of Carve-Out</u>.

Payment from the Carve-Out, whether by or on behalf of the Lender, shall not and shall not be deemed to reduce the Post-Petition Obligations, and shall not and shall not be deemed to subordinate any of any of Lender's liens and security interests in the Pre-Petition Collateral, any other Collateral, the Senior Loan Adequate Protection Superpriority Claim (as defined below), or the DIP Loan Superpriority Claim to any junior pre- or post-petition lien, interest or claim in favor of any other party.  Lender shall not, under any circumstance, be responsible for the direct payment or reimbursement of any fees or disbursements of any Professionals incurred in connection with the Cases under any chapter of the Bankruptcy Code, and nothing in Section 2.3 of this Interim Order shall be construed to obligate the Lender in any way, to directly pay compensation to or to reimburse expenses of any Professional, or to ensure that the Debtor has sufficient funds to pay such compensation or reimbursement.

2.5    <u>Use of Cash Collateral; Adequate Protection.</u>

(a)    <u>Authorization to Use Cash Collateral</u>.  Subject to the terms and conditions of this Interim Order, the Loan Agreement, the Loan Documents, and in accordance with the Budget (subject to the Permitted Variances), including without limitation the continued payment of all monthly Term Loan and Cap Ex Loan amortization payments owed to Lender, Borrower shall be and is hereby authorized to use the Cash Collateral (as defined in section 363 of the Bankruptcy Code), to which the Debtor is permitted to have access under the terms of the

Loan Agreement and other Loan Documents for the period commencing on the date of this Interim Order and terminating upon the earlier of (i) the date that is the final day of the Interim Financing Period; and (ii) the date on which the Lender delivers an Enforcement Notice (as defined below) to counsel for the Debtor, counsel for the Committee (if appointed), and the U.S. Trustee, subject to the liens and security interests granted to the Lender, Pre-Petition Subordinated Agent and Pre-Petition Subordinated Lenders. Nothing in this Interim Order shall authorize the disposition of any assets of the Debtor or its Estates outside the ordinary course of business, or any Borrower's use of Cash Collateral or other proceeds resulting therefrom, except as expressly permitted in this Interim Order, the Loan Documents and in accordance with the Budget (subject to the Permitted Variances).

        (b)     <u>Replacement Liens</u>.  As adequate protection for the diminution in value of its interests in the Collateral (including Cash Collateral), including without limitation resulting from the Borrower's use of such Collateral (including Cash Collateral), the imposition of the automatic stay, the subordination to the Carve-Out, and any other act or omission which causes diminution in the value of its interests in the Collateral (collectively, the "<u>Diminution in Value</u>"), the Lender, is hereby granted pursuant to §§ 361 and 363 of the Bankruptcy Code, and solely to the extent of the Diminution in Value, valid, binding, enforceable and perfected replacement liens upon and security interests in all Collateral (the "<u>Senior Loan Replacement Lien</u>").  The Senior Loan Replacement Lien shall be junior and subordinate only to (A) the Carve-Out, (B) the Permitted Liens, and (C) Lender's liens on the Collateral to secure the Post-Petition Obligations, and shall otherwise be senior to all other security interests in, liens on, or claims against any of the Collateral and all rights of payment of all other parties.

(c)    <u>Section 507(b) Priority Claims</u>.  As adequate protection for the Diminution in Value, the Lender is hereby granted as and to the extent provided by section 507(b) of the Bankruptcy Code, and solely to the extent of the Diminution in Value, an allowed superpriority administrative expense claim in each of the Cases and any successor bankruptcy cases (the "<u>Senior Loan Adequate Protection Superpriority Claim</u>").  The Senior Loan Adequate Protection Superpriority Claim shall be junior only to (A) the Carve-Out, and (B) the DIP Loan Superpriority Claim, and shall otherwise have priority over all administrative expense claims and unsecured claims against Debtor and its Estates now existing or hereafter arising, of any kind or nature whatsoever.

(d)    <u>Pre-Petition Subordinated Agent Adequate Protection</u>. Pre-Petition Subordinated Agent, for the benefit of itself and the Pre-Petition Subordinated Lenders (collectively, the "<u>Subordinate Loan Adequate Protection Parties</u>"), shall be granted the following protection, pursuant to sections 361, 507, and 363(e) of the Bankruptcy Code for the consent to the use of its collateral (including Cash Collateral), consent to the transactions contemplated by the Loan Documents and this Interim Order, and for the Diminution in Value of the security interests and liens of such party.  The Subordinate Loan Adequate Protection Parties are granted the following adequate protection (the "<u>Subordinate Loan Adequate Protection Obligations</u>"):

(i)    <u>Adequate Protection Lien</u>.  Pre-Petition Subordinated Agent, on behalf of the Subordinate Loan Adequate Protection Parties, shall be granted for its benefit, effective and perfected as of the date of entry of this Interim Order and without the necessity of the execution or filing of mortgages, security agreements, pledge agreements, financing statements or other agreements, and solely to the extent of the Diminution in Value, a security

interest in and lien on the Collateral (together, the "<u>Subordinate Loan Adequate Protection</u> <u>Liens</u>"), subject and subordinate only to (i) the Carve-Out, (ii) Permitted Liens, and (iii) the liens of Lender securing all Obligations arising under or in connection with the Loan Agreement and the other Loan Documents and/or this Interim Order in and upon the Collateral, including, without limitation, the Senior Loan Replacement Lien; <u>provided</u> that, the Subordinate Loan Adequate Protection Liens shall only encumber the Avoidance Actions upon entry of the Final Order.

(ii)    <u>Pre-Petition Subordinated Loan Adequate Protection Super-</u> <u>Priority Claim</u>.   The Pre-Petition Subordinated Agent, on behalf of the Subordinate Loan Adequate Protection Parties, shall be granted, solely to the extent of the Diminution in Value, a super-priority administrative expense claim junior and subordinate only to the Carve-Out, DIP Loan Superpriority Claim and the Senior Loan Adequate Protection Superpriority Claim; <u>provided</u> that the Pre-Petition Subordinated Agent and the Pre-Petition Subordinated Lenders shall not receive or retain any payments, property or other amounts in respect of such super-priority claims unless and until all Obligations under the Loan Agreement and the other Loan Documents have indefeasibly been paid in cash in full in accordance with the terms of the Loan Agreement and subject to the terms of the Pre-Petition Intercreditor Agreement.

Section 3.    <u>Default; Rights and Remedies; Relief from Stay</u>.

3.1    <u>Events of Default</u>.   The occurrence of any of the following events shall constitute an "<u>Event of Default</u>" under this Interim Order: (a) any Debtor's failure to perform, in any respect, any of its obligations under this Interim Order; or (b) an "Event of Default" under the Loan Agreement or any of the other Loan Documents.

3.2    <u>Rights and Remedies upon Event of Default</u>.   Upon the occurrence of and during the continuance of an Event of Default, (a) the Debtor shall be bound by all restrictions,

prohibitions and other terms as provided in this Interim Order, the Loan Agreement and the other Loan Documents, and (b) the Lender shall be entitled to take any act or exercise any right or remedy (subject to Section 3.4 below) as provided in this Interim Order, the Loan Agreement or any other Loan Document, as applicable, including, without limitation, declaring all Obligations immediately due and payable, accelerating the Obligations, ceasing to extend Advances or provide or arrange for Letters of Credit on behalf of Debtor, setting off any Obligations with Collateral or proceeds in Lender's possession, and enforcing any and all rights with respect to the Collateral.  Lender shall have no obligation to lend or advance any additional funds to or on behalf of Debtor, or provide any other financial accommodations to Debtor, immediately upon or after the occurrence of an Event of Default or upon the occurrence of any act, event, or condition that, with the giving of notice or the passage of time, or both, would constitute an Event of Default.

        3.3     <u>Expiration of Credit Facility</u>.  Upon the expiration of Borrower's authority to borrow and obtain other credit accommodations from Lender pursuant to the terms of this Interim Order, the Loan Agreement, or the Loan Documents (except if such authority shall be extended with the prior written consent of Lender, which consent shall not be implied or construed from any action, inaction or acquiescence by Lender), unless an Event of Default set forth in Section 3.1 above occurs sooner and the automatic stay has been lifted or modified pursuant to Section 3.4 of this Interim Order, all of the Post-Petition Obligations shall immediately become due and payable and Lender shall have no obligation whatsoever to make or extend any loans, advances, provide any financial or credit accommodations to Debtor or permit the use of Cash Collateral, subject to the conditions set forth in Section 2.5(a) of this Interim Order.

3.4    <u>Modification of Automatic Stay</u>.    The automatic stay provisions of section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified without further notice, application or order of the Court to the extent necessary to permit Lender to perform any act authorized or permitted under or by virtue of this Interim Order, Loan Agreement or the other Loan Documents, as applicable, including, without limitation, (a) to implement the post-petition financing arrangements authorized by this Interim Order and pursuant to the terms of the Loan Documents, (b) to take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the Collateral, (c) to assess, charge, collect, advance, deduct and receive payments with respect to the Pre-Petition Obligations or the Post-Petition Obligations, as applicable, including, without limitation, all interests, fees, costs and expenses permitted under the Loan Documents (subject to Section 5.12 of this Interim Order) and apply such payments to the Pre-Petition Obligations or Post-Petition Obligations pursuant to the Loan Documents and/or this Interim Order, as applicable, and (d) immediately following the expiration of the Default Notice Period, to take any action and exercise all rights and remedies provided to it by this Interim Order, the Loan Agreement, the other Loan Documents or applicable law other than those rights and remedies of Lender against the Collateral set forth in the forgoing clauses (a), (b), and (c), which rights and remedies shall be enforceable immediately upon the occurrence of an Event of Default.    In addition, and without limiting the foregoing, upon the occurrence of an Event of Default and after providing three (3) business days (the "<u>Default Notice Period</u>") prior written notice (the "<u>Enforcement Notice</u>") to (i) counsel for the Debtor, (ii) counsel for the Committee (if appointed), (iii) counsel for the Pre-Petition Subordinated Agent and (iv) the U.S. Trustee, the Lender shall be entitled to take any action and exercise all rights and remedies provided to it by

this Interim Order, the Loan Documents or applicable law that Lender may deem appropriate in its sole discretion to proceed against and realize upon the Collateral or any other assets or properties of Debtor's Estates upon which the Lender, has been or may hereafter be granted liens or security interests to obtain the full and indefeasible repayment of all Post-Petition Obligations. Notwithstanding anything to the contrary, any action that Lender is otherwise permitted to take pursuant to this Interim Order to (i) terminate the commitments under the Loan Documents, (ii) accelerate the Borrowings, (iii) send blocking notices or activation notices pursuant to the terms of any deposit account control agreement, (iv) repay any amounts owing in respect of the Post-Petition Obligations (including, without limitation, fees, indemnities and expense reimbursements) and (v) cash collateralize Letters of Credit and/or Bank Products issued pursuant to the Loan Documents, in each case, shall not require any advance notice to the Debtor.  In any hearing regarding any exercise of rights or remedies (which hearing must take place within the Default Notice Period), the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing, and the Debtor shall not be entitled to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the Lender set forth in this Interim Order or the Loan Documents.

Section 4.    <u>Representations; Covenants; and Waivers.</u>

4.1    <u>Objections to Pre-Petition Obligations</u>.  Notwithstanding anything to the contrary in the Interim Order, any action, claim, defense, complaint, motion or other written opposition (hereinafter, an "<u>Objection</u>") that seeks to object to, challenge, contest or otherwise invalidate or reduce, whether by setoff, recoupment, counterclaim, deduction, disgorgement or claim of any kind: (a) the existence, validity or amount of the Pre-Petition Obligations as of the Petition Date, or (b) the extent, legality, validity, perfection or enforceability of Lender's pre-

petition liens and security interests in the Pre-Petition Collateral shall be properly filed with the Court (x) by any Committee within sixty (60) calendar days from the date of appointment of the Committee by the U.S. Trustee, or (y) by any party in interest with requisite standing within seventy-five (75) calendar days from the date of entry of this Interim Order; provided, however, that nothing herein shall permit any party to challenge the extent or validity of the Post-Petition Obligations.  If any such Objection is timely and properly filed and a final, non-appealable order is entered by a court of competent jurisdiction sustaining and ordering some or all of the relief requested in such Objection, nothing in this Interim Order shall prevent the Court from granting appropriate relief with respect to the Pre-Petition Obligations or Lender's pre-petition liens on the Pre-Petition Collateral, including, without limitation, with respect to Sections E, 1.3, 1.4, 1.5, 1.6, 2.5, 4.5, 5.6, and 5.11 of this Interim Order.  If no Objection is timely and properly filed, or if an Objection is timely and properly filed but denied, (i) the Pre-Petition Obligations shall be deemed allowed in full, shall not be subject to any setoff, recoupment, counterclaim, deduction or claim of any kind, and shall not be subject to any further objection or challenge by any party at any time, and Lender's pre-petition liens on and security interest in the Pre-Petition Collateral shall be deemed legal, valid, perfected, enforceable, and non-avoidable for all purposes and of first and senior priority, subject to only the Carve-Out and Permitted Liens, and (ii) the Lender, and each of its respective participants, agents, officers, directors, employees, attorneys, professionals, successors, and assigns (each in its respective capacities as such) shall be deemed released and discharged from any and all claims and causes of action related to or arising out of the Pre-Petition Senior Loan Documents and shall not be subject to any further objection or challenge relating thereto or arising therefrom by any party at any time.  Nothing contained in this Section 4.1(a) or otherwise shall or shall be deemed or construed to impair, prejudice or

waive any rights, claims or protections afforded to Lender in connection with all post-petition Advances and Letters of Credit, and any other post-petition financial and credit accommodations provided by Lender to Debtor in reliance on section 364(e) of the Bankruptcy Code and in accordance with the terms and provisions of this Interim Order and the Loan Documents.

      4.2    <u>Debtor's Waivers</u>.  At all times during the Cases, and whether or not an Event of Default has occurred, the Debtor irrevocably waive any right that they may have to seek further authority (a) to use Cash Collateral of Lender under section 363 of the Bankruptcy Code, (b) to obtain post-petition loans or other financial accommodations pursuant to section 364(c) or 364(d) of the Bankruptcy Code, other than as provided in this Interim Order or as may be otherwise expressly permitted pursuant to the Loan Documents, (c) to challenge the application of any payments authorized by this Interim Order as pursuant to section 506(b) of the Bankruptcy Code, or to assert that the value of the Pre-Petition Collateral is less than the Pre-Petition Obligations, (d) to propose, support or have a plan of reorganization or liquidation that does not provide for the indefeasible payment in cash in full and satisfaction of all Post-Petition Obligations on the effective date of such plan in accordance with the terms and conditions set forth in the Loan Agreement, or (e) to seek relief under the Bankruptcy Code, including without limitation, under section 105 of the Bankruptcy Code, to the extent any such relief would in any way restrict or impair the rights and remedies of Lender as provided in this Interim Order and the Loan Documents or Lender's exercise of such rights or remedies (other than to object to the exercise of the rights and remedies within the Default Notice Period on the grounds set forth in Section 3.4 of this Interim Order); <u>provided</u>, <u>however</u>, that Lender may otherwise consent in writing, but no such consent shall be implied from any other action, inaction, or acquiescence by Lender.

4.3     <u>Section 506(c) Claims</u>.  Subject to entry of the Final Order granting such relief, no costs or expenses of administration which have or may be incurred in the Cases shall be charged against Lender, its respective claims or the Collateral pursuant to § 506(c) of the Bankruptcy Code without the prior written consent of Lender, and no such consent shall be implied from any other action, inaction or acquiescence by Lender.

4.4     <u>Collateral Rights</u>.  Until all Obligations shall have been indefeasibly paid and satisfied in full in accordance with the terms of the Loan Agreement and the other Loan Documents:

(a)     no party other than Lender shall foreclose or otherwise seek to enforce any junior lien or claim in Collateral; and

(b)     upon and after the declaration of the occurrence of an Event of Default, other than the Existing Defaults during the Forbearance Period (as defined in the Ratification Agreement), and subject to Lender obtaining relief from the automatic stay as provided for herein to enforce its rights and remedies against the Collateral, in connection with a liquidation of any of the Collateral, Lender (or any of its employees, agents, consultants, contractors or other professionals) shall have the right, at the sole cost and expense of Debtor, to: (i) enter upon, occupy and use any real or personal property, fixtures, equipment, leasehold interests or warehouse arrangements owned or leased by Debtor and (ii) use any and all trademarks, trade names, copyrights, licenses, patents or any other similar assets of Debtor, which are owned by or subject to a lien of any third party and which are used by Debtor in its businesses.

4.5     <u>Releases</u>.

Upon the earlier of (a) the entry of the Final Order, (b) Payment in Full of all Obligations owed to Lender, or (c) the entry of an order extending the Interim Financing Period beyond thirty-five (35) calendar days after the date of this Interim Order, and in each instance, subject to Section 4.1 above, in consideration of Lender permitting Debtor to use the Pre-Petition Collateral (including Cash Collateral) and providing other credit and financial accommodations to the Debtor pursuant to the provisions of the Loan Documents and this Interim Order, each Debtor, on behalf of itself and its successors and assigns, (collectively, the "Releasors"), shall, forever release, discharge and acquit Lender and its respective successors and assigns, and its present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees and other representatives in its respective capacities as such (collectively, the "Pre-Petition Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, of every kind, nature and description, including, without limitation, any so-called "lender liability" claims or defenses, that Releasors had, have or hereafter can or may have against Pre-Petition Releasees as of the date hereof, in respect of events that occurred on or prior to the date hereof with respect to the Debtor, the Obligations, Loan Documents and any Loans, Letters of Credit, Bank Products or other financial accommodations made by Lender to Debtor pursuant to the Loan Documents.  In addition, upon the Payment in Full of all Obligations (as defined in the Loan Agreement) owed to the Lender by Debtor and termination of the rights and obligations arising under the Loan Documents (which payment and termination shall be on terms and conditions acceptable to the Lender), the Lender shall be released from any and all obligations, liabilities, actions, duties, responsibilities and causes of action arising or occurring in connection with or related to the Loan Documents, this Interim Order or the Final Order

(including without limitation any obligation or responsibility (whether direct or indirect, absolute or contingent, due or not due, primary or secondary, liquidated or unliquidated) to pay or otherwise fund the Carve-Out and/or the Professional Fee Carve-Out, on terms and conditions acceptable to the Lender).

Section 5.    Other Rights and Post-Petition Obligations.

5.1    No Modification or Stay of This Interim Order.  Notwithstanding (a) any stay, modification, amendment, supplement, vacating, revocation or reversal of this Interim Order, the Loan Documents or any term hereunder or thereunder, (b) the failure to obtain a Final Order pursuant to Bankruptcy Rule 4001(c)(2), or (c) the dismissal or conversion of one or more of the Cases (each, a "Subject Event"), (x) the acts taken by Lender in accordance with this Interim Order, and (y) the Post-Petition Obligations incurred or arising prior to Lender's actual receipt of written notice from Debtor expressly describing the occurrence of such Subject Event shall, in each instance, be governed in all respects by the original provisions of this Interim Order, and the acts taken by Lender in accordance with this Interim Order, and the liens granted to Lender in the Collateral, and all other rights, remedies, privileges, and benefits in favor of Lender pursuant to this Interim Order and the Loan Documents shall remain valid and in full force and effect pursuant to section 364(e) of the Bankruptcy Code.  For purposes of this Interim Order, the term "appeal", as used in section 364(e) of the Bankruptcy Code, shall be construed to mean any proceeding for reconsideration, amending, rehearing, or re-evaluating this Interim Order by this Court or any other tribunal.

5.2    Power to Waive Rights; Duties to Third Parties.  Lender shall have the right to waive any of the terms, rights and remedies provided or acknowledged in this Interim Order that are in favor of Lender (the "DIP Lender Rights"), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce,

any DIP Lender Right(s).  Any waiver by Lender of any DIP Lender Rights shall not be or constitute a continuing waiver.  Any delay in or failure to exercise or enforce any DIP Lender Right shall neither constitute a waiver of such DIP Lender Right, subject Lender to any liability to any other party, nor cause or enable any party other than the Debtor to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtor to Lender.

5.3    Disposition of Collateral.  Debtor shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral, other than pursuant to the terms of the Loan Agreement and the Budget, without the prior written consent of Lender (and no such consent shall be implied, from any other action, inaction or acquiescence by the Lender) and, in each case, an order of this Court.

5.4    Inventory.  Debtor shall not, without the consent of the Lender, (a) enter into any agreement to return any inventory to any of its creditors for application against any pre-petition indebtedness under any applicable provision of section 546 of the Bankruptcy Code, or (b) consent to any creditor taking any setoff against any of its pre-petition indebtedness based upon any such return pursuant to section 553(b)(1) of the Bankruptcy Code or otherwise.

5.5    Reservation of Rights.  The terms, conditions and provisions of this Interim Order are in addition to and without prejudice to the rights of Lender to pursue any and all rights and remedies under the Bankruptcy Code, the Loan Documents or any other applicable agreement or law, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of cash collateral or granting of any interest in the Collateral, as applicable, or priority in favor of any other party, to object to any sale of assets,

and to object to applications for allowance and/or payment of compensation of Professionals or other parties seeking compensation or reimbursement from the Estates.

      5.6   <u>Binding Effect</u>.

      (a)   The provisions of this Interim Order and the Loan Documents, the Post-Petition Obligations, the Senior Loan Adequate Protection Superpriority Claim, the DIP Loan Superpriority Claim and any and all rights, remedies, privileges and benefits in favor of Lender provided or acknowledged in this Interim Order, and any actions taken pursuant thereto, shall be effective immediately upon entry of this Interim Order notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h) and 7062, shall continue in full force and effect, and shall survive entry of any such other order, including without limitation any order which may be entered confirming any plan of reorganization, converting one or more of the Cases to any other chapter under the Bankruptcy Code, or dismissing one or more of the Cases.

      (b)   Any order dismissing one or more of the Cases under section 1112 or otherwise shall be deemed to provide (in accordance with §§ 105 and 349 of the Bankruptcy Code) that (a) the DIP Loan Superpriority Claim and Lender's liens on and security interests in the Collateral and all other claims, liens, adequate protections and other rights granted pursuant to the terms of this Interim Order shall continue in full force and effect notwithstanding such dismissal until the Obligations are indefeasibly paid and satisfied in full, and (b) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing all such claims, liens, protections and rights.

      (c)   In the event this Court modifies any of the provisions of this Interim Order or the Loan Documents following a Final Hearing, such modifications shall not affect the rights or priorities of Lender pursuant to this Interim Order with respect to the

Collateral or any portion of the Obligations which arises or is incurred or is advanced prior to such modifications, and this Interim Order shall otherwise remain in full force and effect to such extent.

(d)    This Interim Order shall be binding upon Debtor, all parties in interest in the Cases and its respective successors and assigns, including any trustee or other fiduciary appointed in the Cases or any subsequently converted bankruptcy case(s) of any Debtor.  This Interim Order shall also inure to the benefit of Debtor, Lender, Pre-Petition Subordinated Agent, and Pre-Petition Subordinated Lenders, and each of its respective successors and assigns.

5.7    <u>Restrictions on Cash Collateral Use, Additional Financing, Plan Treatment</u>.

(a)    All post-petition advances and other financial accommodations under the Loan Agreement and the other Loan Documents are made in reliance on this Interim Order and there shall not at any time be entered in the Cases, or in any subsequently converted case under chapter 7 of the Bankruptcy Code, any order (other than the Final Order) which (a) authorizes the use of cash collateral of Debtor in which Lender has an interest, or the sale, lease, or other disposition of property of any Debtor's Estate in which Lender has a lien or security interest, except as expressly permitted hereunder or in the Loan Documents, or (b) authorizes under section 364 of the Bankruptcy Code the obtaining of credit or the incurring of indebtedness secured by a lien or security interest which is equal or senior to a lien or security interest in property in which Lender holds a lien or security interest, or which is entitled to priority administrative claim status which is equal or superior to that granted to Lender herein; unless, in each instance (x) Lender shall have given its express prior written consent with respect

36

thereto, no such consent being implied from any other action, inaction or acquiescence by Lender, or (y) such other order requires that all Post-Petition Obligations shall first be indefeasibly paid and satisfied in full in accordance with the terms of the Loan Agreement and the other Loan Documents, including, without limitation, all debts and obligations of Debtor to Lender which arise or result from the obligations, loans, security interests and liens authorized herein, on terms and conditions acceptable to Lender.  The security interests and liens granted to or for the benefit of Lender hereunder and the rights of Lender pursuant to this Interim Order and the Loan Documents with respect to the Post-Petition Obligations and the Collateral are cumulative and shall not be altered, modified, extended, impaired, or affected by any plan of reorganization or liquidation of Debtor and, if Lender shall expressly consent in writing that the Post-Petition Obligations shall not be repaid in full upon confirmation thereof, shall continue after confirmation and consummation of any such plan.

      5.8    <u>No Owner/Operator Liability</u>.  Subject to the entry of the Final Order granting such relief, Lender shall not be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtor (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq., as amended, or any similar federal or state statute).

      5.9    <u>Marshalling</u>.  Subject to entry of the Final Order granting such relief, in no event shall Lender be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the Collateral.  Lender shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and, subject to entry of the Final Order, the "equities of

the case" exception under section 552(b) of the Bankruptcy Code shall not apply to Lender with respect to proceeds, products, offspring or profits of any of the Collateral, as applicable.

        5.10   <u>Right of Setoff</u>.  To the extent any funds were on deposit with Lender as of the Petition Date, including, without limitation, all funds deposited in, or credited to, an account of any Debtor with Lender immediately prior to the filing of the Cases (regardless of whether, as of the Petition Date, such funds had been collected or made available for withdrawal by any such Debtor), such funds (the "<u>Deposited Funds</u>") are subject to rights of setoff.  By virtue of such setoff rights, the Deposited Funds are subject to a lien in favor of Lender pursuant to §§ 506(a) and 553 of the Bankruptcy Code.

        5.11   <u>Right to Credit Bid</u>.  Lender shall have the right to "credit bid" the amount of its claims that are Obligations arising under the terms of the Loan Documents, during any sale of all or substantially all of the Debtor's assets, including without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any restructuring plan subject to confirmation under section 1129(b)(2)(A)(ii)-(iii) of the Bankruptcy Code.

        5.12   <u>Payment and Review of Lender Fees and Expenses</u>.  Each Debtor shall pay all fees and expenses under the Loan Agreement, including, without limitation, the non-refundable payment to Lender of the reasonable attorney fees and expenses and any other professional fees and expenses set forth in the Loan Documents whether incurred before or after the Petition Date; <u>provided</u>, that Debtor shall pay all such reasonable fees and expenses within five (5) business days of delivery of a statement or invoice for such fees and expenses (it being understood that such statements or invoices shall not be required to be maintained in accordance with the U.S. Trustee Guidelines, nor shall any such counsel or other professional be required to file any interim or final fee applications with the Court or otherwise seek Court's approval of any

such payments) to the Debtor, the U.S. Trustee and the Committee, unless, within such five (5) business day period, the Debtor, the U.S. Trustee or the Creditors' Committee serve a written objection upon the requesting party, in which case, the Debtor shall pay only such amounts that are not the subject of any objection and the withheld amount subsequently agreed by the parties or ordered by the Court to be paid.

5.13    Term; Termination.    Notwithstanding any provision of this Interim Order to the contrary, the term of the financing arrangements among Debtor and Lender authorized by this Interim Order may be terminated pursuant to the terms of the Loan Agreement.

5.14    Limited Effect.    In the event of a conflict between the terms and provisions of any of the Loan Documents and this Interim Order, the terms and provisions of this Interim Order shall govern, interpreted as most consistent with the terms and provisions of the Loan Agreement.

5.15    Objections Overruled.    All objections to the entry of this Interim Order are (to the extent not withdrawn, waived, withdrawn, or settled) hereby overruled.

5.16    Retention of Jurisdiction.    The Court retains jurisdiction and power with respect to all matters arising from or related to the implementation or interpretation of this Interim Order, the Loan Agreement, and the other Loan Documents.

Section 6.    Final Hearing and Response Dates.

The Final Hearing on the Motion pursuant to Bankruptcy Rule 4001(c)(2) is scheduled for February ___, 2017, at _____ before this Court. The Debtor shall promptly mail copies of this Interim Order to the Noticed Parties, and to any other party that has filed a request for notices with this Court and to any Committee after same has been appointed, or such Committee's counsel, if same shall have filed a request for notice. The Debtor may serve the Motion and the Interim Order without the exhibits attached thereto as such exhibits are

voluminous and available, free of charge, at [ • ].  Such notice is deemed good and sufficient and

that no further notice need be given.  Any party in interest objecting to the relief sought at the

Final Hearing shall serve and file written objections, which objections shall be served upon (a)

proposed counsel to the Debtor, Dilworth Paxson LLP, 1500 Market St. 3500E, Philadelphia,

Pennsylvania  19102, Attn: James M. Matour, E-Mail: jmatour@dilworthlaw.com; (b) counsel

for the Lender, Otterbourg, P.C., 230 Park Avenue, New York, New York 10169-0075; Attn:

Daniel F. Fiorillo, Esq. and Chad B. Simon, Esq., E-Mail: dfiorillo@otterbourg.com,

csimon@otterbourg.com; (c) counsel for the Pre-Petition Subordinated Agent [ • ]; (d) counsel to

any Committee; and (e) the U.S. Trustee, 844 King Street, Room 2207, Wilmington, Delaware

19801, Attn: [ • ]; and shall be filed with the Clerk of the United States Bankruptcy Court for the

District of Delaware, in each case, to allow actual receipt of the foregoing no later than

_____, prevailing Eastern time, on February ___, 2017.

Dated: Wilmington, Delaware

_____, 2017

_____
UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT 1

**Loan Agreement**

4664464.6