# **EXHIBIT B**

[Wells DIP Credit Agreement]

*Draft 1/30/2017*

<u>RATIFICATION AND AMENDMENT AGREEMENT</u>

This RATIFICATION AND AMENDMENT AGREEMENT (the "**Ratification Agreement**"), dated as of January [ • ], 2017, is by and among PRESTIGE INDUSTRIES LLC as Debtor and Debtor-in-Possession ("**Borrower**") and WELLS FARGO BANK, NATIONAL ASSOCIATION in its capacity as Lender ("**Lender**").

<u>W I T N E S S E T H</u>:

WHEREAS, Borrower ("**Debtor**") has commenced cases under Chapter 11 of the Bankruptcy Code (as defined herein) in the United States Bankruptcy Court for the District of Delaware and each of Borrower and Guarantor has retained possession of its assets and is authorized under the Bankruptcy Code to continue the operation of its businesses as a debtor-in-possession;

WHEREAS, prior to the commencement of the Chapter 11 Case (as defined below), Lender made loans and advances and provided other financial or credit accommodations to Borrower secured by substantially all assets and properties of Borrower and Guarantor as set forth in the Pre-Petition Financing Agreements (as defined below);

WHEREAS, the Debtor is requesting that the Bankruptcy Court enter a Financing Order (defined below) pursuant to which Lender may make post-petition loans and advances, and provide other financial accommodations, to Borrower secured by substantially all the assets and properties of Borrower and Guarantor as set forth in the Financing Order and the Loan Documents (as defined below);

WHEREAS, Borrower has requested that Lender make post-petition loans and advances and provide other financial or credit accommodations to Borrower and make certain amendments to the Pre-Petition Loan Agreement (as defined below) and the other Pre-Petition Financing Agreements (as defined below), and Lender is willing to do so, subject to the terms and conditions contained herein; and

WHEREAS, Borrower desires to reaffirm its obligations to Lender pursuant to the Pre-Petition Financing Agreements and acknowledge its continuing liabilities to Lender thereunder in order to induce Lender to make such post-petition loans and advances, and provide other financial accommodations, to Borrower secured by substantially all the assets and properties of Borrower and Guarantor set forth in the Financing Order.

NOW, THEREFORE, in consideration of the foregoing, the mutual covenants and agreements contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lender and Borrower mutually covenant, warrant and agree as follows:

1.    <u>DEFINITIONS</u>.

1.1    <u>Additional Definitions</u>.  As used herein, the following terms shall have the respective meanings given to them below and the Pre-Petition Loan Agreement and the other

Pre-Petition Financing Agreements shall be deemed and are hereby amended to include, in addition and not in limitation, each of the following definitions:

        (a)      **"Bankruptcy Court"** means the United States Bankruptcy Court or the United States District Court for the District of Delaware

        (b)      **"Bankruptcy Code"** means the United States Bankruptcy Code, being Title 11 of the United States Code as enacted in 1978, as the same has heretofore been or may hereafter be amended, recodified, modified or supplemented, together with all rules, regulations and interpretations thereunder or related thereto.

        (c)      **"Bankruptcy Events"** means the commencement of the Chapter 11 Case, and the occurrence and existence of any defaults under agreements that have no effect under the terms of the Bankruptcy Code as a result of the commencement the Chapter 11 Case.

        (d)      **"Budget"** means the eight (8) week budget delivered to Lender in accordance with Section 5.3 of the Ratification Agreement (a summary of such initial Budget is attached to the Ratification Agreement as <u>Exhibit A</u>, in form and substance approved by the Lender), together with any subsequent or amended budgets thereto delivered to Lender, in form and substance satisfactory to Lender (each such subsequent budget, a "Budget"), in accordance with the terms and conditions of the Ratification Agreement.

        (e)      "**Carve-Out**" means the sum of (i) all allowed administrative expenses pursuant to 28 U.S.C. § 156(c) for fees required to be paid to the Clerk of the Bankruptcy Court and pursuant to 28 U.S.C. § 1930(a)(6) for fees payable to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code as determined by agreement of the United States Trustee or by final order of the Bankruptcy Court; (ii) all reasonable fees and expenses up to $5,000 incurred by a trustee under Section 726(b) of the Bankruptcy Code; and (iii) subject to the terms and conditions of the Financing Order, Allowed Professional Fees (as defined in the Financing Order) incurred by Professionals, less the amount of any fee retainers received by any Professionals, in an aggregate amount not to exceed at any time $50,000.

        (f)      **"Chapter 11 Case"** means the case under Chapter 11 of the Bankruptcy Code commenced by Debtor which is pending in the Bankruptcy Court.

        (g)      **"Committee"** means any official committee of unsecured creditors in the Chapter 11 Case pursuant to Section 1102 of the Bankruptcy Code.

        (h)      **"Debtor"** means Borrower as Debtor and Debtor-in-Possession in the Chapter 11 Case.

        (i)      **"Financing Order"** means the Interim Financing Order, the Permanent Financing Order and such other orders relating thereto or authorizing the granting of credit by Lender to Borrower on an emergency, interim or permanent basis pursuant to Section 364 of the Bankruptcy Code as may be issued or entered by the Bankruptcy Court in the Chapter 11 Case.

(j)     "**Forbearance Period**" means the period from the Forbearance Effective Date to the Forbearance Termination Date.

(k)     "**Forbearance Termination Date**" means the earlier of (i) the date of the occurrence of an Event of Default and (ii) the Maturity Date.

(l)     "**Interim Financing Order**" means, the order of the Bankruptcy Court entered in the Chapter 11 Case after an interim hearing, in the form attached hereto as Exhibit B and/or otherwise in form and substance satisfactory to the Lender in its sole discretion, together with all extension, modifications, and amendments thereto consented to by the Lender, which, among other matters but not by way of limitation, authorizing, on an interim basis, the Borrower to execute and perform under the terms of the Pre-Petition Financing Agreements, as amended and supplemented by the terms and conditions of the Ratification Agreement.

(m)    "**Loan Agreement**" means, the Pre-Petition Loan Agreement as ratified, amended, supplemented and otherwise modified by the Ratification Agreement, as the same now exists or may hereafter be amended from time to time.

(n)     "**Payment in Full**" or "**Paid in Full**" means (a) all of the liquidated Obligations have been paid in full in cash; (b) in the case of any contingent Obligations, including without limitation any payments that have been provisionally credited to the Obligations and any continuing obligations (contingent or otherwise) that Lender shall have furnished Lender with cash collateral or an indemnification from a Person, and pursuant to terms and conditions, in each case which are satisfactory to Lender in its sole discretion in all respects, and; (c) all other liabilities of Lender in respect of matters or circumstances known to Lender at the time which are reasonably expected to result in any actual loss, cost, damage or expense (including attorneys' fees and legal expenses) to Lender for which Lender is entitled to indemnification by any Borrower or Guarantor under the terms of the any Loan Document, each Borrower shall have furnished Lender with cash collateral in an amount satisfactory to Lender in its sole discretion.

(o)     "**Permanent Financing Order**" means, the order of the Bankruptcy Court entered in the Chapter 11 Case after a final hearing of the Bankruptcy Court, which order shall be in form and substance satisfactory to the Lender in its sole discretion and from which no appeal or motion to reconsider has been filed, together with all extensions, modifications and amendments thereto, consented to by the Lender, which among other matters, but not by way of limitation, authorizing the Borrower to obtain credit, incur the Post-Petition Obligations, and grant Liens therefor and granting super-priority expense claims to Lender with respect to all obligations due Lender, subject to no priority claim or administrative expenses of the Chapter 11 Case or any other entity (other than the Carve-Out and Pre-Petition Priority Liens).

(p)     "**Petition Date**" means the date of the commencement of the Chapter 11 Case.

(q)     "**Post-Petition Collateral**" means, collectively, all now existing and hereafter acquired real and personal property of each Debtor's estate, wherever located, of

3

any kind, nature or description, including any such property in which a lien is granted to Lender pursuant to the Loan Documents, the Financing Order or any other order entered or issued by the Bankruptcy Court, and shall include, without limitation:

        (i)     all of the Pre-Petition Collateral;

        (ii)    all Accounts;

        (iii)   all general intangibles, including, without limitation, all Intellectual Property;

        (iv)   all goods, including, without limitation, Inventory and Equipment (as such terms are defined in the Code);

        (v)    all Real Property and fixtures;

        (vi)   all chattel paper, including, without limitation, all tangible and electronic chattel paper;

        (vii)  all instruments, including, without limitation, all promissory notes;

        (viii) documents and all credit card sales drafts, credit card sales slips or charge slips or receipts, and other forms of store receipts;

        (ix)   deposit accounts;

        (x)    all letters of credit, banker's acceptances and similar instruments and including all letter-of-credit rights;

        (xi)   all supporting obligations and all present and future liens, security interests, rights, remedies, title and interest in, to and in respect of accounts receivable and other Collateral, including (i) rights and remedies under or relating to guaranties, contracts of suretyship, letters of credit and credit and other insurance related to the Collateral, (ii) rights of stoppage in transit, replevin, repossession, reclamation and other rights and remedies of an unpaid vendor, lienor or secured party, (iii) goods described in invoices, documents, contracts or instruments with respect to, or otherwise representing or evidencing, accounts receivables or other Collateral, including returned, repossessed and reclaimed goods, and (iv) deposits by and property of account debtors or other persons securing the obligations of account debtors;

        (xii)  all (i) investment property (including securities, whether certificated or uncertificated, securities accounts, security entitlements, commodity contracts or commodity accounts) and (ii) monies, credit balances, deposits and other property of any Debtor now or hereafter held or received by or in transit to any Lender or at any other depository or other institution from or for the account of any Debtor, whether for safekeeping, pledge, custody, transmission, collection or otherwise;

(xiii)   all commercial tort claims, including, without limitation, those identified in the Information Certificate;

(xiv)   to the extent not otherwise described above, all Receivables;

(xv)   all Records;

(xvi)   effective upon entry of a Permanent Financing Order, all claims, rights, interests, assets and properties (recovered by or on behalf of each Borrower and Guarantor or any trustee of such Borrower or Guarantor (whether in the Chapter 11 Case or any subsequent case to which any Chapter 11 Case is converted), including, without limitation, all property recovered as a result of transfers or obligations avoided or actions maintained or taken pursuant to (among others) Sections 542, 544, 545, 547, 548, 549, 550, 551, 552 and 553 of the Bankruptcy Code; and

(xvii)   to the extent not covered by the foregoing clauses, all products and proceeds of the foregoing, in any form, including insurance proceeds and all claims against third parties for loss or damage to or destruction of or other involuntary conversion of any kind or nature of any or all of the other Collateral.

(r)   **"Post-Petition Obligations"** means all Obligations (as defined in the Pre-Petition Loan Agreement) of Debtor arising on and after the Petition Date and whether arising on or after the conversion or dismissal of the Chapter 11 Case, or before, during and after the confirmation of any plan of reorganization in the Chapter 11 Case, and whether arising under or related to this Ratification Agreement, the Loan Agreement, the other Loan Documents, a Financing Order, by operation of law or otherwise, and whether incurred by Debtor as principal, surety, endorser, guarantor or otherwise and including, without limitation, all principal, interest, financing charges, letter of credit fees, unused line fees, servicing fees, line increase fees, debtor-in-possession facility fees, early termination fees, other fees, commissions, costs, expenses and attorneys', accountants' and consultants' fees and expenses incurred in connection with any of the foregoing.  For the avoidance of doubt, the Post-Petition Obligations shall include that portion of the outstanding Pre-Petition Obligations, which have been "rolled-up" from time to time as provided in the Financing Order.

(s)   **"Pre-Petition Collateral"** means, collectively, (i) all "Collateral" as such term is defined in the Pre-Petition Loan Agreement as in effect immediately prior to the Petition Date, (ii) all "Collateral" and "Pledged Collateral" as such terms are defined in each of the other Pre-Petition Financing Agreements as in effect immediately prior to the Petition Date, and (iii) all other security for the Pre-Petition Obligations as provided in the Pre-Petition Loan Agreement and the other Pre-Petition Financing Agreements immediately prior to the Petition Date.

(t)   **"Pre-Petition Financing Agreements"** means the Loan Documents (as defined in the Pre-Petition Loan Agreement), and any other documents or instruments relating thereto, each as in effect immediately prior to the Petition Date.

(u)    **"Pre-Petition Loan Agreement"** means the Credit and Security Agreement, dated as of February 2, 2012, by and among Borrower, Guarantor, and Lender (as amended by the Consent and First Amendment to Credit and Security Agreement dated as of March 30, 2012; the Waiver, Consent, and Second Amendment to Credit and Security Agreement dated as of December 18, 2012; the Consent and First Amendment to Credit and Security Agreement dated as of March 30, 2012, the Waiver and Third Amendment to Credit and Security Agreement dated as of March 18, 2013; Waiver and Fourth Amendment to Credit and Security Agreement dated as of July 22, 2014; Fifth Amendment to Credit and Security Agreement dated as of February 27, 2015; Waiver and Sixth Amendment to Credit and Security Agreement dated as of April 30 2015; Waiver and Seventh Amendment to Credit and Security Agreement dated as of April 6, 2016, and as otherwise in effect immediately prior to the Petition Date).

(v)    **"Pre-Petition Obligations"** means all Obligations (as such term is defined in the Pre-Petition Loan Agreement) arising at any time before the Petition Date.

(w)    **"Pre-Petition Priority Liens"** means, collectively, the Liens permitted by the Pre-Petition Financing Agreements, to the extent any such permitted Liens are valid, enforceable, properly perfected, non-avoidable and senior in priority to the Liens securing the Pre-Petition Obligations as of the Petition Date.

(x)    **"Professionals"** means the Debtor's and any Committee's professionals, retained by either of them by final order of the Bankruptcy Court (which order has not been reversed, vacated or stayed unless such stay is no longer effective) under Sections 327, 328 or 1103(a) of the Bankruptcy Code.

(y)    **"Ratification Agreement"** means the Ratification and Amendment Agreement, dated as of the January [ • ], 2017, by and among Borrower, Guarantor, and Lender, as the same may hereafter be amended, modified, supplemented, extended, renewed, restated or replaced.

(z)    **"Ratification Closing Date"** means the date on which all of the conditions precedent in Section 9 of the Ratification Agreement have been satisfied (or waived).

**1.2**    <u>Amendments to Definitions</u>.

(a)    <u>Availability Block</u>.  The definition of "Availability Block" set forth in Schedule 1.1 to the Loan Agreement is hereby amended and restated in its entirety as follows:

" '<u>Availability Block</u>' means an amount equal to $400,000."

(b)    <u>Borrower and Debtor</u>.  All references to the terms "Borrower" or "Debtor" in the Loan Documents shall be deemed and each such reference is hereby amended to mean and include (as applicable) the Debtor, as defined herein, and its successors and assigns (including any trustee or other fiduciary hereafter appointed as any Debtor's legal representative, as applicable, or with respect to any Debtor the property of the estate of such Debtor whether

under Chapter 11 of the Bankruptcy Code or any subsequent Chapter 7 case or cases and its successor upon conclusion of the Chapter 11 Case of such Debtor, as the case may be).

(c)     <u>Borrowing Base</u>.  The definition of "Borrowing Base" set forth in Schedule 1.1 to the Loan Agreement is hereby amended by (i) deleting the period at the end of subsection (d) and substituting the phrase ", <u>plus</u>" therefor; and (ii) inserting a new subsection (e) at the end of such definition as follows:

> "(e) the lesser amount of (i) eighty-five percent (85%) of the net orderly liquidation value of Eligible Equipment, and (ii) $350,000; <u>provided</u> that the amount set forth in clause (ii) shall increase to $725,000 on and after February 19, 2017."

(d)     <u>Collateral</u>.  All references to the term "Collateral" in the Loan Agreement or the other Loan Documents, or any other term referring to the security for the Pre-Petition Obligations, shall be deemed, and each such reference is hereby amended to mean, collectively, the Pre-Petition Collateral and the Post-Petition Collateral.

(e)     <u>Debtor</u>.  All references to Debtor, including, without limitation, to the terms "Borrower," in the Loan Agreement or the other Loan Documents shall be deemed, and each such reference is hereby amended, to mean and include the Debtor as defined herein, and its successors and assigns (including any trustee or other fiduciary hereafter appointed as its legal representative or with respect to the property of the estate of such corporation whether under Chapter 11 of the Bankruptcy Code or any subsequent Chapter 7 case and its successor upon conclusion of the Chapter 11 Case of such corporation).

(f)     <u>Lender</u>.  All references to the term "Lender" shall include its respective successors and assigns.

(g)     <u>Loan Documents</u>.  All references to the term "Loan Documents" in the Loan Agreement or any of the other Loan Documents shall be deemed, and each such reference is hereby amended, to include, in addition and not in limitation, this Ratification Agreement and all of the Pre-Petition Financing Agreements, as ratified, assumed and adopted by each Borrower and Guarantor pursuant to the terms of the Ratification Agreement, as amended and supplemented thereby, and the Financing Order, as each of the same now exists or may hereafter be amended, modified, supplemented, extended, renewed, restated or replaced.

(h)     <u>Interest Rate</u>.  The definition of "Interest Rate" in the Pre-Petition Loan Agreement is hereby deleted in its entirety and the following substituted therefor:

> " '<u>Interest Rate</u>' means an interest rate equal to the Prime Rate."

(i)     <u>Loan Agreement</u>.  All references to the term "Agreement" in the Pre-Petition Loan Agreement or the term "Loan Agreement" in the other Loan Documents shall be deemed, and each such reference is hereby amended, to mean the Loan Agreement (as defined in the Ratification Agreement), and as ratified, assumed and adopted by each Borrower and Guarantor pursuant to the terms hereof and the Financing Order.

(j)    <u>Material Adverse Change</u>.  All references to the term "Material Adverse Change," "material adverse effect" or "material adverse change" in the Loan Agreement, the Ratification Agreement or the other Loan Documents shall be deemed, and each such reference is hereby amended, to add at the end thereof:  "<u>provided</u>, <u>that</u>, the Bankruptcy Events shall not, individually or collectively, constitute a Material Adverse Change."

(k)    <u>Maturity Date</u>.  The definition of "Maturity Date" in the Pre-Petition Loan Agreement is hereby deleted in its entirety and the following substituted therefor:

" '<u>Maturity Date</u>' shall mean the earliest to occur of (a) June 30, 2017, 2016, (b) thirty (30) days after the entry of the Interim Financing Order if the Permanent Financing Order has not been entered prior to the expiration of such thirty (30) day period (or such longer period if consented to in writing by the Lender), (c) the effective date of a plan of reorganization filed in the Chapter 11 Case pursuant to an order entered by the Bankruptcy Court, (d) the date the Bankruptcy Court orders the conversion of the bankruptcy case of Debtor to a Chapter 7, (e) the date this Agreement is otherwise terminated for any reason whatsoever (including pursuant to Section 12.2) pursuant to the terms of this Agreement, (f) subject to the Financing Order, the acceleration of the Obligations or termination of the Commitments hereunder, including without limitation, as a result of the occurrence of an Event of Default, (g) the sale of all or substantially all of the Debtor's assets."

(l)    <u>Obligations</u>.  All references to the term "Obligations" in the Loan Agreement, this Ratification Agreement or the other Loan Documents shall be deemed, and each such reference is hereby amended, to mean both the Pre-Petition Obligations and the Post-Petition Obligations.

(m)    <u>Permitted Liens</u>.  The definition of "Permitted Liens" in the Pre-Petition Loan Agreement is hereby amended by (i) deleting the period appearing at the end of clause (k) of such definition and replacing it with a semi-colon, and (ii) adding the following clauses at the end thereof:

"(l) all Liens existing on the Petition Date that constituted "Permitted Liens" as defined in and under the Pre-Petition Loan Agreement to the extent such liens were legal, valid, binding, enforceable and non-avoidable as of the Petition Date, and are not otherwise avoided, recharacterized or subordinated after the Petition Date";

<u>provided</u> that, Borrower and Guarantor shall not, and shall not permit any Subsidiary, after the Ratification Closing Date, to, create, incur, assume or suffer to exist, directly or indirectly, any Lien on or with respect to any of its assets, of any kind, whether now owned or hereafter acquired, or any income or profits therefrom without the prior written consent of the Lender."

(n)    <u>Reserves</u>.  The definition of "Reserves" in the Pre-Petition Loan Agreement is hereby amended and restated in its entirety as follows:

"<u>Reserves</u>" means, as of any date of determination, the sum of (a) an amount or percent of a specified item or category of items that Lender establishes from time to time in its sole discretion to reduce Availability under the Borrowing Base or the Maximum Revolver Amount to reflect (i) such matters, events, conditions, contingencies or risks which affect or which may reasonably be expected to affect the assets, business or prospects of Borrower, any other Loan Party or the Collateral or its value or the enforceability, perfection or priority of Lender's security interest in the Collateral, or (ii) Lender's judgment that any collateral report or financial information relating to Borrower or any other Loan Party delivered to Lender is incomplete, inaccurate or misleading in any material respect, **plus** (b) the Dilution Reserve (without duplication), **plus** (c) the Bank Product Reserve Amount, **plus** (d) an amount which the Lender deems necessary in the exercise of its sole discretion to maintain with respect to any Loan Party or the Collateral for any amounts which Lender may be obligated to pay or fund in the future for the account of any Loan Party (including, without limitation, all administrative expense claims and priority claims in the Chapter 11 Case), **plus** (e) the amount of the Carve-Out."

(o)    <u>Revolver Interest Rate Margin</u>.  The definition of "Revolver Interest Rate Margin" in the Pre-Petition Loan Agreement is hereby deleted in its entirety and the following substituted therefor:

" '<u>Revolver Interest Rate Margin</u>' means for that portion of the Obligations consisting of Advances (including Protective Advances) and all other Obligations arising out of or in connection with the Advances (including Protective Advances), two percent (2.00%) per annum."

1.3    <u>Interpretation</u>.

(a)    For purposes of this Ratification Agreement, unless otherwise defined or amended herein, including, but not limited to, those terms used or defined in the recitals hereto, all terms used herein shall have the respective meanings assigned to such terms in the Pre-Petition Loan Agreement, as amended, supplemented or otherwise modified by this Ratification Agreement.

(b)    All references to any term in the singular shall include the plural and all references to any term in the plural shall include the singular unless the context of such usage requires otherwise.

(c)    All terms not specifically defined herein which are defined in the Uniform Commercial Code, as in effect in the State of New York as of the date hereof, shall have the meaning set forth therein, except that the term "Lien" or "lien" shall have the meaning set forth in § 101(37) of the Bankruptcy Code.

2.    ACKNOWLEDGMENTS.

2.1    Pre-Petition Obligations.  Each Pre-Petition Borrower and Guarantor hereby acknowledges, confirms and agrees that, as of January 30, 2017, Pre-Petition Borrower is indebted to Lender in respect of all Pre-Petition Obligations in an aggregate principal amount of not less than $3,266,435.46 consisting of (a) Advances to Pre-Petition Borrower made pursuant to the Pre-Petition Loan Documents, together with interest accrued and accruing thereon, (b) Term Loans outstanding under the Pre-Petition Loan Agreement together with interest accrued and accruing thereon, (c) Cap Ex Loans outstanding under the Pre-Petition Loan Agreement together with interest accrued and accruing thereon, (d) Letter of Credit Usage outstanding under the Pre-Petition Loan Agreement together with interest accrued and accruing thereon, and all costs, expenses, fees (including attorneys' fees and legal expenses), plus all other charges now or hereafter owed by Pre-Petition Borrower to Lender, all of which are unconditionally owing by the Borrower and Guarantors to the Lender, without offset, defense or counterclaim of any kind, nature and description whatsoever.

2.2    Guaranteed Obligations.  Each Guarantor hereby acknowledges, confirms and agrees that:

(a)    all obligations of such Guarantors under the Pre-Petition Financing Agreements are unconditionally owing by such Guarantor to Lender without offset, defense or counterclaim of any kind, nature and description whatsoever, and

(b)    the absolute and unconditional guarantee of the payment of the Pre-Petition Obligations by such Guarantor pursuant to the Pre-Petition Financing Agreements extends to all Post-Petition Obligations, subject only to any limitations that may be set forth in the Pre-Petition Financing Agreements.

2.3    Acknowledgment of Security Interests.  Each Pre-Petition Borrower (and, solely in the case of clause (b) below, each Borrower) and Guarantor hereby acknowledges, confirms and agrees that Lender, has and shall continue to have (a) valid, enforceable and perfected first priority and senior security interests in and liens upon all Pre-Petition Collateral heretofore granted to Lender pursuant to the Pre-Petition Financing Agreements as in effect immediately prior to the Petition Date to secure all of the Obligations, and (b) valid and enforceable first priority and senior security interests in and liens upon all Post-Petition Collateral granted to Lender under the Financing Order or hereunder or under any of the other Loan Documents or otherwise granted to or held by Lender, in each case, subject only to liens or encumbrances expressly permitted by the Loan Agreement (including, without limitation, Pre-Petition Priority Liens) and any other liens or encumbrances expressly permitted by the Financing Order that may have priority over the liens in favor of Lender.

**2.4**    Binding Effect of Documents.  Each Pre-Petition Borrower and Guarantor hereby acknowledges, confirms and agrees that: (a) each of the Pre-Petition Financing Agreements to which it is a party was duly executed and delivered Lender by such Pre-Petition Borrower or Guarantor and each is in full force and effect as of the date hereof, (b) the agreements and obligations of such Pre-Petition Borrower or Guarantor contained in the Pre-Petition Financing Agreements constitute the legal, valid and binding obligations of such Pre-Petition Borrower or Guarantor enforceable against it in accordance with the terms thereof, and such Pre-Petition Borrower or Guarantor has no valid defense, offset or counterclaim to the enforcement of such obligations, and (c) Lender is and shall be entitled to all of the rights, remedies and benefits provided for in (i), subject to the entry and terms of the Financing Order, the Loan Documents and (ii) the Financing Order.

**3.**    ADOPTION AND RATIFICATION.

**3.1.**    Each Pre-Petition Borrower and Guarantor hereby (a) ratifies, assumes, adopts and agrees to be bound by all of the Pre-Petition Financing Agreements to which it is a party and (b) agrees to pay all of the Pre-Petition Obligations in accordance with the terms of such Pre-Petition Financing Agreements, as supplemented and amended by this Ratification Agreement, and in accordance with the Financing Order.  All of the Pre-Petition Financing Agreements are hereby incorporated herein by reference and hereby are and shall be deemed adopted and assumed in full by Borrower and Guarantors, each as Debtor and Debtor-in-Possession and considered as agreements between such Borrower or Guarantors, on the one hand, and Lender, on the other hand.  Pre-Petition Borrower hereby ratifies, restates, affirms and confirms all of the terms and conditions of the Pre-Petition Financing Agreements, as amended and supplemented pursuant hereto and the Financing Order, and Borrower, as Debtor and Debtor-in-Possession, agrees to be fully bound by the terms of the Loan Documents to which such Borrower is a party.

**3.2.**    Notwithstanding anything in Section 3.1 of this Ratification Agreement to the contrary, Debtor acknowledges that certain Events of Default, as further described on Exhibit C hereto, have occurred and are continuing under the Pre-Petition Loan Agreement and the other Pre-Petition Financing Agreements (the "**Existing Defaults**").

**4.**    GRANT OF SECURITY INTEREST.

As collateral security for the prompt performance, observance and payment in full of all of the Obligations (including the Pre-Petition Obligations and the Post-Petition Obligations), Borrower and Guarantors, each as Debtor and Debtor-in-Possession, hereby grant, pledge and assign to the Lender, and also confirm, reaffirm and restate the prior grant to Lender of, continuing senior priority security interests in and liens upon, and rights of setoff against, all of the Collateral.

**5.**    ADDITIONAL REPRESENTATIONS, WARRANTIES AND COVENANTS.

In addition to the representations, warranties and covenants made by Borrower and Guarantors to Lender, under the Loan Agreement or the other Loan Documents (in each case, for the avoidance of doubt, as amended by or provided in this Ratification Agreement) each

Borrower and Guarantor hereby represents, warrants and covenants to Lender the following (which shall survive the execution and delivery of this Ratification Agreement), the truth and accuracy of which, or compliance with, to the extent such compliance does not violate the terms and provisions of the Bankruptcy Code, shall be a continuing condition precedent to the making of Advances  (other than Protective Advances)  by Lender:

     **5.1**   <u>Financing Order</u>.  No Loan Party shall seek to have any Financing Order vacated, modified, reversed on appeal, or vacated or modified by any order of the Bankruptcy Court (other than as consented to by Lender).

     **5.2**   <u>Use of Proceeds</u>.  Notwithstanding anything to the contrary set forth in the Loan Agreement or any other Loan document, all Advances and Letters of Credit provided by Lender to Borrower on and after the Ratification Closing Date pursuant to the Financing Order, the Loan Agreement or otherwise, shall only be used by Debtor to the extent (a) provided for in the Budget, (b) permitted by the Loan Documents, and (c) as authorized by the Bankruptcy Court and consented to by the Lender for: (i) general working capital needs, (ii) the repayment of the Obligations and (iii) the payment of fees, expenses, and costs incurred by Lender in connection with this Ratification Agreement and the Chapter 11 Case.

     **5.3**   <u>Budget</u>.

     (a)   Borrower has prepared and delivered to Lender an eight (8) week post-petition Budget.  The Budget has been thoroughly reviewed by the Borrower and its management and sets forth, for the periods covered thereby, projected weekly cash receipts and cash disbursements for each week (each such week ending on Sunday) of the eight (8) consecutive week period commencing with the week ending February 5, 2017.  Subsequent eight (8) week budgets shall be delivered to the Lender, in form and substance satisfactory to the Lender in its sole discretion, during the fifth week of the Budget.  Upon approval by the Lender, such budget shall be deemed to be the Budget for the next eight (8) week period.

     (b)   Not later than 3:00 p.m. (Eastern time) on the Wednesday of each week commencing with the Wednesday following the first full week ending after the Petition Date, Borrower shall furnish to Lender a weekly report (the "**Budget Compliance Report**") that (i) sets forth as of the preceding Sunday of each such week on a cumulative basis from the Petition Date until the third (3rd full week ending on a Sunday after the Petition Date and then on a rolling three (3) week basis at all times thereafter (each such period referred to herein as a "**Measurement Period**"), the actual results for the following line items set forth in the Budget: (A) "Less: A/R Collections", and (B) "Total Disbursements", noting therein variances from values set forth for such periods in the Budget, and (ii) an explanation for all such variances greater than fifteen percent (15%) in any line items or sub-line items, certified by the chief financial officer of the Borrower.  Such report/reconciliation shall also note any variances with values set forth in the Budget as of the day of such report/reconciliation.

     (c)   Debtor acknowledges, confirms and agrees that the following covenants shall be tested pursuant to the Budget Compliance Report for the applicable Measurement Period ending as of each Sunday, with such testing commencing on the Wednesday following the first full week ending after the Petition Date: (i) the actual total cash

receipts shall not be less than eighty-five percent (85%) of the projected total cash receipts set forth in the Budget on the line item "Less: A/R Collections" in respect of such Measurement Period, and (ii) the actual total cash disbursements shall not be more than one hundred and twenty percent (120%) of the projected total cash disbursements set forth in the Budget on the line item "Total Disbursements" in respect of such Measurement Period.

(d)    Each Debtor hereby confirms, acknowledges and agrees that, unless waived in writing by Lender, (i) a failure to maintain the deviations in the Budget in an amount equal to or less than the percentage set forth in Section 5.3(c) hereof shall constitute a material deviation from the Budget and an additional Event of Default (each, a "**Material Budget Deviation**") and (ii) the failure to deliver any reports with respect to any Budget, in form and substance satisfactory to Lender in its sole discretion, as provided in Section 5.3(b) hereof shall constitute an Event of Default.  Notwithstanding any approval by Lender of the Budget or any subsequent or amended Budget(s), Lender will not, and shall not be required to, provide any Advances (including Protective Advances) Term Loans, CapEx Loans or Letters of Credit to Borrower pursuant to the Budget, but shall only provide any Advances, Term Loans, CapEx Loans, and Letters of Credit in accordance with the terms and conditions set forth in the Loan Agreement as amended by this Ratification Agreement, the other Loan Documents and the Financing Order.  Lender is relying upon the Borrower's delivery of, and compliance with, the Budget in accordance with this Section 5.3 in determining to enter into the post-petition financing arrangements provided for herein.

(e)    Notwithstanding any projected amounts set forth in the Budget relating to the costs and expenses of Lender that are reimbursable by Borrower or any other amounts owing by Borrower to Lender (including, without limitation reasonable attorneys and consulting fees and expenses) in accordance with the Loan Agreement and the other Loan Documents, such projections shall not limit, impair, modify or waive the Debtor's obligation to pay the actual amounts due to Lender in respect of such costs, expenses and other amounts owing to Lender in accordance with the Loan Agreement and the other Loan Documents and the actual amounts paid in respect of such costs, expenses and other amounts other shall not be subject to the variance compliance set forth in Section 5.3(c).

(f)    Notwithstanding anything herein to the contrary, the Budget may be updated, modified or supplemented (with the consent and/or at the request of the Lender) from time to time, and each such updated, modified or supplemented budget shall be approved by, and in form and substance satisfactory to, the Lender in its sole discretion and no such updated, modified or supplemented budget shall be effective until so approved and once so approved shall be deemed the Budget; provided, that during the fifth (5th) week of the Budget, the Borrower shall submit a budget for the next successive eight 8 week period to the Lender, which budget shall be in form and substance acceptable to Lender in its sole discretion.  Each Budget delivered to the Lender shall be accompanied by such supporting documentation as requested by the Lender in its sole discretion.  Each Budget shall be prepared in good faith based upon assumptions which the Borrower believes to be achievable and are satisfactory to the Lender in its sole discretion.

      **5.4**   <u>Sale Milestones</u>.   Debtor covenants and agrees to satisfy each of the following conditions:

      (a)   On the Petition Date, the Debtor shall file a motion, in form and substance satisfactory to the Lender, requesting approval from the Bankruptcy Court to retain a nationally-recognized investment banking firm on terms and conditions acceptable to Lender ("**Investment Banker**") to conduct the marketing and sale process for all or substantially all of the assets of the Borrower;

      (b)   On or before February 24, 2017, the Debtor shall have entered into an agreement in form and substance acceptable to Lender with a "stalking horse" bidder, acceptable to Lender in its sole discretion, committing to purchase all or substantially all of the Debtor's assets;

      (c)   On or before February 24, 2017, the Debtor shall file a motion, in form and substance satisfactory to the Lender, requesting approval from the Bankruptcy Court of (i) bidding and auction procedures, in form and substance satisfactory to Lender, in connection with the sale or sales of all or substantially all of the Debtor's assets and properties (the "**Bidding Procedures Motion**"); (ii) a form of asset purchase agreement, in form and substance acceptable to Lender in its discretion pursuant to which Debtor will sell all or substantially all of its assets; and (iii) designating a "stalking horse" bidder.

      (d)   On or before March 10, 2017, Debtor shall obtain the entry of an order of the Bankruptcy Court, in form and substance satisfactory to Lender, (i) approving the bidding procedures for the sale of all or substantially all of the Debtor's assets in accordance with Section 363 of the Bankruptcy Code (the "**Sale**"), including, without limitation, a form of asset purchase agreement acceptable to Lender in its sole discretion, (ii) designating a "stalking horse" bidder; and (iii) providing that all cash proceeds generated by such Sale(s), less reasonable out of pocket fees, costs and expenses directly arising from the closing of such Sale(s), subject to approval by Lender (as defined in the Financing Order) shall be remitted to Lender for application against, and in permanent reduction of, the Obligations (the "**Bid Procedures Order**");

      (e)   On or before March 10, 2017, Debtor shall obtain the entry of an order of the Bankruptcy Court, in form and substance satisfactory to Lender, approving the retention of the Investment Banker on terms and conditions acceptable to Lender to conduct the marketing and sale process for all or substantially all of the assets of Borrower;

      (f)   On or before March 28, 2017, Debtor shall conduct an auction (the "**Auction**"), in accordance with the Bid Procedures Order, if more than one bona fide offer is received meeting the conditions set forth in the Bid Procedures Order;

      (g)   On or before March 31, 2017, the Bankruptcy Court shall have entered an order (the "**Sale Order**"), which order shall provide for, among other things, distribution of sale proceeds to Lender in a minimum cash amount not less than the amount required to satisfy the Obligations owed to Lender, and otherwise in form and substance satisfactory to Lender, approving the sale or sales of all or substantially of the Debtor's assets, on

terms and conditions acceptable to Lender, and authorizing and directing that all proceeds from the Sale(s) be remitted to Lender for application against and permanent reduction of the Obligations;

        (h)      On or before April 3, 2017, Debtor shall have (i) consummated the Sale(s); and (ii) distributed proceeds of the Sale(s) to Lender in a minimum cash amount not less than the amount required to satisfy the Obligations owed to Lender for application against and permanent reduction of the Obligations; and

        (i)      Debtor confirms, acknowledges and agrees that notwithstanding anything to the contrary contained in the Loan Agreement, any failure to comply with the requirements set forth in this Section 5.4 shall constitute an additional immediate Event of Default under the Transaction Documents.

        **5.5**    <u>Ratification of Deposit Account Control Agreement</u>.  To the extent Lender deems it necessary in its reasonable discretion and promptly upon Lender's request, Borrower shall promptly provide Lender with evidence, in form and substance satisfactory to Lender, that the Deposit Account Control Agreements (as defined in the Financing Order) and other deposit account arrangements provided for under the Loan Documents have been ratified and amended by the parties thereto, or their respective successors in interest to reflect the commencement of the Chapter 11 Case, that Borrower, as Debtor and Debtor-in-Possession, is the successor in interest to Borrower, that the Obligations include both the Pre-Petition Obligations and the Post-Petition Obligations, that the Collateral includes both the Pre-Petition Collateral and the Post-Petition Collateral as provided for in the Ratification Agreement.

        **5.6**    <u>ERISA</u>.  Borrower hereby represents and warrants with, to and in favor of Lender that (a) there are no liens, security interests or encumbrances upon, in or against any assets or properties of Borrower arising under ERISA, whether held by the Pension Benefit Guaranty Corporation (the "**PBGC**") or the contributing sponsor of, or a member of the controlled group thereof, any pension benefit plan of Borrower and (b) no notice of lien has been filed by the PBGC (or any other Person) pursuant to ERISA against any assets or properties of Borrower.

        **5.7**    <u>Chief Restructuring Officer</u>.

        (a)      The Debtor shall retain, at all times during which the Obligations remain outstanding, Robert J. Iommazzo of Traxi, LLC, or such other Person(s) acceptable to Lender as Debtor's chief restructuring officer (the "**CRO**"), at the sole cost and expense of the Debtor, on terms and conditions acceptable to Lender. The Debtor hereby irrevocably authorizes and directs the CRO to consult with Lender and to share with Lender, upon request therefor, all financial reports, budgets and any variances from same, other financial information, operational issues, matters related to the Collateral, all reports prepared or reviewed by the CRO, information on the sale and maintenance of the Debtor's businesses and assets and such other matters as the Lender may reasonably request.  The Debtor agrees to provide the CRO with complete access to all of the books and records of the Debtor, all of premises of the Debtor and to all management and employees of the Debtor as and when deemed necessary by the CRO.

(b)      Any amendment, modification or termination of the retention agreement with the CRO without the prior written consent of Lender shall constitute an Event of Default.  The Debtor acknowledges and agrees that the Debtor shall cause the CRO, as further described in clause (a) above, (i) to keep Lender fully informed of the progress of the business and operations of the Debtor and to respond to any reasonable inquiries of Lender regarding the maintenance of the Borrower's businesses and the sale of its assets and (ii) to communicate and cooperate with Lender and share all information, as requested thereby, with Lender regarding the Debtor, and the sale and maintenance of the Debtor's businesses and assets.

(c)      If the CRO resigns, the Debtor shall immediately notify Lender in writing and promptly after receipt thereof, provide Lender with a copy of any notice of resignation from such CRO.  Any replacement or successor CRO shall be acceptable to Lender, shall be retained pursuant to a new retention agreement on terms and conditions acceptable to Lender within five (5) Business Days immediately following the notice of resignation of the resigning CRO and shall be approved by the Bankruptcy Court.  Failure to comply with the terms and conditions of this Section shall constitute an Event of Default.

**6.**      DIP FACILITY FEE.

Borrower shall pay to Lender a debtor-in-possession financing facility fee on account of the financing provided by Lender to Borrower in the Chapter 11 Case, in a total amount not to exceed $75,000, which amount shall be become fully earned and payable in accordance with the following schedule: (i) $25,000 upon the entry of the Interim Financing Order; (ii) an additional $25,000 on the day that is thirty (30) calendar days following the Petition Date; and (iii) and additional $25,000 on the day that is sixty (60) calendar days following the Petition Date  (the "**DIP Facility Fee**"); provided that the entire amount of the DIP Facility Fee shall be fully earned and immediately due and payable upon the occurrence of an Event of Default.  For the avoidance of doubt, Debtor shall not be liable to pay, and Lender shall not be entitled to receive, any portion of the DIP Facility Fee which is not earned and payable in accordance with the forgoing terms prior to Lender being Paid in Full.

**7.**      AMENDMENTS.

**7.1**      Letter of Credit Limit.

(a)      Section 2.13(b)(ii) of the Pre-Petition Loan Agreement is hereby amended by deleting the term "$500,000" and substituting the term "$150,000" therefor.

(b)      Schedule 2.12 to the Pre-Petition Loan Agreement is hereby amended by deleting the first sentence of subsection (c) of the "Monthly" section of such schedule and substituting the following therefor:

"A Letter of Credit fee (in addition to the charges, commissions, fees, and costs set forth in Section 2.13(e)) which shall accrue at a rate equal to four and three-quarters percent (4.75%) per annum *times* the Daily Balance of the undrawn amount of all outstanding Letters of Credit."

**7.2**    Making of Loans.  Section 2.3(b) of the Pre-Petition Loan Agreement is hereby deleted in its entirety and the following is substituted therefor:

"(b)    **Making of Loans.**  Promptly after receipt of a request for a Borrowing pursuant to Section 2.3(a), Lender shall make the proceeds thereof available to Borrower on the applicable Funding Date by transferring immediately available funds equal to such amount to the Designated Account; provided, however, that, Lender shall not have the obligation to make any Advance (i) if one (1) or more of the applicable conditions precedent set forth in Section 4 will not be satisfied on the requested Funding Date for the applicable Borrowing unless such condition has been waived by Lender, (ii) if the requested Borrowing would exceed the Availability on such Funding Date, or (iii) if the requested Borrowing is not in accordance with the Budget and Financing Order as Lender may determine in its sole discretion.  For the avoidance of doubt, on and after the Ratification Closing Date, Borrower shall not request, and Lender shall not have any obligation to make any Cap Ex Loan.

**7.3**    Limits and Sublimits.  Section 2 of the Pre-Petition Loan Agreement is hereby amended by adding the following new Section 2.11 at the end of such Section:

"2.11    Limit and Sublimit Construction.  All limits and sublimits set forth in this Agreement, and any formula or other provision to which a limit or sublimit may apply, shall be determined on an aggregate basis considering together both the Pre-Petition Obligations and the Post-Petition Obligations."

**7.4**    Payments.

(a)    Section 2.4(d) of the Pre-Petition Loan Agreement is hereby amended and restated in its entirety as follows:

"**Application of Payments**.  All Collections and all Proceeds of Collateral received by Lender shall be applied to reduce the outstanding Obligations in such manner and such order as Lender shall determine in its sole discretion until Lender is Paid in Full."

(b)    Section 2.4 of the Pre-Petition Loan Agreement is hereby amended by adding the following new subsection (i) at the end of such Section:

"(i) Notwithstanding anything to the contrary contained in this Agreement or any of the other Loan Documents, Lender may, in its discretion, apply any such payments or proceeds first, to the Pre-Petition Obligations until such Pre-Petition Obligations are paid and satisfied in full and second, to the Post-Petition Obligations until such Post-Petition Obligations are paid and satisfied in full."

**7.5**     Corporate Existence; Power and Authority.

(a)     Section 5.1(a) of the Pre-Petition Loan Agreement is hereby amended by inserting the phrase "subject to any entry of any required orders of the Bankruptcy Court including, without limitation, the entry of the Interim Financing Order and the Permanent Financing Order, as applicable," at the beginning of clause (iii) set forth in such Section.

(b)     Section 5.2 of the Pre-Petition Loan Agreement is hereby amended by inserting the phrase "Subject to any entry of any required orders of the Bankruptcy Court including, without limitation, the entry of the Interim Financing Order and the Permanent Financing Order, as applicable," at the beginning of subsection (a) and subsection (b) set forth in such Section.

**7.6**     Material Contracts. Section 5.17 of the Pre-Petition Loan Agreement is hereby amended by deleting such section in its entirety and replacing it with the following:

"5.17     Material Contracts. Schedule 5.17 to the Information Certificate sets forth all Material Contracts to which Borrower and/or any Guarantor is a party or is bound as of the date hereof. Borrower has delivered true, correct and complete copies of such Material Contracts to the Lender on or before the date hereof. Other than the Bankruptcy Events, the Borrower and/or Guarantor are not in breach or in default in any material respect of or under any Material Contract and have not received any notice of the intention of any other party thereto to terminate any Material Contract, except where such breach, default or termination has not had or could not reasonably be expected to have a Material Adverse Change or would otherwise be stayed by the filing of the Chapter 11 Case."

**7.7**     Inspections, Exams Audits and Appraisals. Section 6.7 of the Pre-Petition Loan Agreement is hereby amended by deleting the period and the end of such section and replacing it with the following:

"; provided further that, on and after the Petition Date, Lender or Lender's duly authorized representatives or agents shall be permitted, at Borrower's expense, (a) to visit any of Borrower's properties and inspect any of Borrower's assets or books and records, (b) to conduct inspections, exams, audits, and appraisals of the Collateral (including without limitation any Real Property Collateral), (c) to examine and make copies of its books and records, and (d) to discuss its affairs, finances, and accounts with, and to be advised as to the same by, its officers and employees at such times and intervals as Lender may determine in its sole discretion."

**7.8**     Additional Financial Reporting Requirements.   Section 6 of the Pre-Petition Loan Agreement is hereby amended by adding the following new subsection at the end of such Section:

"6.17   Borrower shall provide Lender with copies of all financial reports, schedules and other materials and information at any time furnished by or on behalf of any Borrower or Guarantor to the Bankruptcy Court, or the U.S.

Trustee, or any material information not previously provided to Lender with respect to the Chapter 11 Case that is provided to any creditors' committee or such Borrower's or Guarantor's shareholders, substantially concurrently with the delivery thereof to the Bankruptcy Court, creditors' committee, U.S. Trustee or shareholders, as the case may be."

**7.9**    <u>Intercompany Transfers</u>.    Section 7 of the Loan Agreement is hereby amended by adding a new subsection 7.18 at the end of such section as follows:

"7.18    <u>Intercompany Transfers</u>.    Notwithstanding anything to the contrary contained in this Loan Agreement or any other Loan Documents, no Borrower or Guarantor shall transfer the proceeds of any Advance or any of its other property or assets to, nor make any intercompany loan to or investment in or payment on behalf of any non-debtor Subsidiary, Affiliate or otherwise related entity, without in each case the prior written consent of Lender (and no such consent shall be implied, from any other action, inaction or acquiescence by Lender)."

**7.10**    <u>Indebtedness</u>.    Section 7.1 of the Pre-Petition Loan Agreement is hereby amended by (a) deleting the period at the end of such Section and substituting the following therefor:

"; <u>provided</u> that notwithstanding anything to the contrary set forth in this Agreement or any other Loan Document; Borrower and Guarantor, on and after the Ratification Closing date, shall not create, incur, assume, suffer to exist, guarantee, or otherwise become or remain directly or indirectly liable with respect to any Indebtedness other than in strict accordance with the Budget."

**7.11**    <u>Prepayments and Amendments</u>.    Notwithstanding anything to the contrary contained in the Loan Agreement or any of the other Loan Documents, Borrower and Guarantor will not, and will not permit any Subsidiary, after the Ratification Closing Date, to optionally prepay, redeem, defease, purchase, or otherwise acquire any Indebtedness for borrowed money (other than the Obligations or as otherwise made in accordance with the Budget) without the prior written consent of the Lender.

**7.12**    <u>Minimum EBITDA</u>.    Section 8(a) of the Pre-Petition Loan Agreement is hereby amended and restated as follows:

Borrower and each other Loan Party on a consolidated basis shall achieve the following levels of EBITDA, calculated on a trailing period basis for each of the periods ending as of the dates set forth below:

| Period | Minimum EBITDA Covenant |
|---|---|
| The eleven calendar months ending January 31, 2017 | ($41,000) |
| The twelve calendar months ending February 28, 2017 | ($34,000) |

4662709.5

19

**7.13**    Events of Default.  Section 9 of the Pre-Petition Loan Agreement is hereby amended as follows:

(a)    Section 9.4 of the Pre-Petition Loan Agreement is hereby amended by deleting such subsection in its entirety and replacing it with "[intentionally deleted];".

(b)    Section 9.5 of the Pre-Petition Loan Agreement is hereby amended by deleting such subsection in its entirety and replacing it with "[intentionally deleted];".

(c)    Section 9 of the Pre-Petition Loan Agreement is hereby amended by adding the following subsections at the end of such Section:

"9.19  The occurrence of any condition or event which permits Lender to exercise any of the remedies set forth in the Financing Order, including, without limitation, any "Event of Default" (as defined in any Financing Order);

9.20   The termination or non-renewal of the Loan Documents as provided for in any Financing Order.

9.21   Any act, condition or event occurring after the Petition Date that has or could reasonably expect to have a Material Adverse Change.

9.22   The conversion of any Chapter 11 Case to a Chapter 7 case under the Bankruptcy Code.

9.23   The dismissal of any Chapter 11 Case or any subsequent Chapter 7 case either voluntarily or involuntarily.

9.24   The grant of a lien on or other interest in any property of any Loan Party, other than a Permitted Lien or a lien or encumbrance permitted by any Financing Order (including the Carve-Out), which is superior to or ranks in parity with Lender's security interest in or lien upon the Collateral.

9.25   The grant of an administrative expense claim in any Chapter 11 Case which is superior to or ranks in parity with the claims and rights of the Lender (other than administrative expense claims permitted by any Financing Order or the Ratification Agreement to be senior in priority of payment to the Obligations).

9.26   The failure of Borrower or Guarantors to comply with any Financing Order or the Ratification Agreement, or any Financing Order shall be modified, reversed, revoked, remanded, stayed, rescinded, vacated or amended on appeal or by the Bankruptcy Court without the prior written consent of the Lender.

9.27    The appointment of a trustee pursuant to Sections 1104(a)(1) or 1104(a)(2) of the Bankruptcy Code.

9.28    The appointment of an examiner with special powers pursuant to Section 1104(a) of the Bankruptcy Code.

9.29    The filing of a plan of reorganization or liquidation by or on behalf of any Loan Party which does not provide for payment in full of all Obligations on the effective date thereof in accordance with the terms and conditions contained herein, unless otherwise consented to by the Lender.

9.30    The confirmation of any plan of reorganization or liquidation in the Chapter 11 Case of any Loan Party which does not provide for payment in full of all Obligations on the effective date thereof in accordance with the terms and conditions contained herein, unless otherwise consented to by the Lender.

9.31    The filing of a motion by any Debtor (or any Affiliate) seeking, or the entry of any order permitting, recovery from any portion of the Collateral (or from Lender) any costs or expenses of preserving or disposing of the Collateral under section 506(c) or section 552(b) of the Bankruptcy Code (or otherwise);

9.32    (i) The failure of Borrower to comply with any material provision of its engagement agreement with the Investment Banker or CRO; or (ii) the termination of any such agreements for any reason without the prior written consent of the Lender; and

9.33    The occurrence of any Material Budget Deviation, as defined in Section 5.3(d) of the Ratification Agreement.

**7.14**    Notices. Section 12 of the Pre-Petition Loan Agreement is hereby amended by (i) deleting the address for courtesy copies of any notice sent to Borrower and substituting the following address therefor:

> Dilworth Paxson LLP
> 1500 Market St. 3500E
> Philadelphia, Pennsylvania 19102
> Attn: James M. Matour
> E-Mail: jmatour@dilworthlaw.com

and (ii) deleting the address for courtesy copies of any notice sent to Lender and substituting the following address therefor:

Otterbourg P.C.
230 Park Avenue – 30th Floor
New York, New York 10169
Attn: Daniel F. Fiorillo
E-Mail: dfiorillo@otterbourg.com

     **7.15**    <u>Governing Law; Choice of Forum; Service of Process; Jury Trial Waiver</u>. Section 13.1(a) and (b) of the Pre-Petition Loan Agreement is hereby amended by deleting such Sections in their entirety and replacing them with the following:

        "(a)      The validity, interpretation and enforcement of this Agreement and the other Loan Documents (except as otherwise provided therein) and any dispute arising out of the relationship between the parties hereto, whether in contract, tort, equity or otherwise, shall be governed by (i) the internal laws of the State of New York but excluding any principles of conflicts of law or other rule of law that would cause the application of the law of any jurisdiction other than the laws of the State of New York and (ii) to the extent applicable, the Bankruptcy Code.

        (b)      Each Borrower, Guarantor and the Lender irrevocably consent and submit to the non-exclusive jurisdiction of the Bankruptcy Court and the United States District Court for the Southern District of New York, and any appellate court from any thereof, whichever the Lender may elect, and waive any objection based on venue or forum non conveniens with respect to any action instituted therein arising under this Agreement or any of the other Loan Documents or in any way connected with or related or incidental to the dealings of the parties hereto in respect of this Agreement or any of the other Loan Documents or the transactions related hereto or thereto, in each case whether now existing or hereafter arising, and whether in contract, tort, equity or otherwise, and agree that any dispute with respect to any such matters shall be heard only in the courts described above (except that the Lender shall have the right to bring any action or proceeding against a Borrower or its property in the courts of any other jurisdiction which the Lender deems reasonably necessary or appropriate in order to realize on the Collateral or to otherwise enforce its rights against such Borrower or its property)."

    **8.**    <u>RELEASE</u>.

     **8.1**    <u>Release of Pre-Petition Claims</u>.

        (a)      Upon the earlier of (i) the entry of the Permanent Financing Order, (ii) the entry of an Order extending the term of the Interim Financing Order beyond thirty (30) calendar days after the date of the Interim Financing Order, or (iii) the entry of an Order authorizing the Payment in Full of all Obligations, in consideration of the agreements of Lender contained herein and the making of any Advances by Lender, each Loan Party, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, on behalf of itself and its respective successors, assigns, and other legal representatives, hereby absolutely, unconditionally and irrevocably releases, remises and forever discharges Lender, and Lender's

respective successors and assigns, and its present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees and other representatives (Lender and all such other parties being hereinafter referred to collectively as the "**Releasees**" and individually as a "**Releasee**"), of and from all demands, actions, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages and any and all other claims, counterclaims, defenses, rights of set-off, demands and liabilities whatsoever but, for the avoidance of doubt, excluding any claims or causes of action for gross negligence or willful misconduct (individually, a "**Pre-Petition Released Claim**" and collectively, "**Pre-Petition Released Claims**") of every name and nature, known or unknown, suspected or unsuspected, both at law and in equity, which any Borrower or Guarantor, or any of their respective successors, assigns, or other legal representatives may now or hereafter own, hold, have or claim to have against the Releasees or any of them for, upon, or by reason of any nature, cause or thing whatsoever which arises at any time on or prior to the Ratification Closing Date, including, without limitation, for or on account of, or in relation to, or in any way in connection with the Pre-Petition Loan Agreement, as amended and supplemented through the date hereof, and the other Loan Documents.

(b)    Upon the earlier of (i) the entry of the Permanent Financing Order or (ii) the entry of an Order extending the term of the Interim Financing Order beyond thirty (30) calendar days after the date of the Interim Financing Order, or (iii) the entry of an Order authorizing the Payment in Full of all Obligations, each Loan Party, on behalf of itself and its successors, assigns, and other legal representatives, hereby absolutely, unconditionally and irrevocably, covenants and agrees with each Releasee that it will not sue (at law, in equity, in any regulatory proceeding or otherwise) any Releasee on the basis of any Pre-Petition Released Claim released, remised and discharged by each Borrower and Guarantor pursuant to this Section 8.1.  If any Loan Party violates the foregoing covenant, Loan Parties agree to pay, in addition to such other damages as any Releasee may sustain as a result of such violation, all attorneys' fees and costs incurred by any Releasee as a result of such violation.

**8.2**    <u>Release of Post-Petition Claims</u>. Upon the Payment in Full of all of the Obligations, in consideration of the agreements of Lender contained herein and the making of any Revolving Loans by Lender, each Loan Party hereby covenants and agrees to execute and deliver in favor of Lender a valid and binding termination and release agreement, in form and substance satisfactory to Lender.  If any Loan Party violates such covenant, Loan Parties agree to pay, in addition to such other damages as any Releasee may sustain as a result of such violation, all attorneys' fees and costs incurred by any Releasee as a result of such violation.

**8.3**    <u>Releases Generally</u>.

(a)    Each Loan Party understands, acknowledges and agrees that the releases set forth above in Sections 8.1 and 8.2 hereof  may be pleaded as a full and complete defense and may be used as a basis for an injunction against any action, suit or other proceeding which may be instituted, prosecuted or attempted in breach of the provisions of such releases.

(b)    Each Loan Party agrees that no fact, event, circumstance, evidence or transaction which could now be asserted or which may hereafter be discovered shall affect in

any manner the final and unconditional nature of the releases set forth in Section 8.1 hereof and, when made, Section 8.2 hereof.

**9.**     **FORBEARANCE**.

    (a)    In reliance upon the representations, warranties and covenants of Borrower contained in this Ratification Agreement, Lender agrees that, subject to the terms and conditions contained herein, during the Forbearance Period, Lender shall forbear from exercising any of its rights and remedies arising under the Loan Agreement or applicable law solely due to the occurrence of the Existing Defaults.

    (b)    Borrower and Guarantor acknowledge that (i) Lender does not and has not waived, and may not ever waive, any Event of Default under the Loan Documents, including, without limitation, the Existing Defaults; (ii) all of the Existing Defaults and the rights and remedies of Lender arising in connection therewith are hereby preserved and reserved; and (iii) except as specifically set forth herein, nothing contained herein constitutes an amendment or modification of any terms, covenants or conditions of any Loan Document, or a waiver of any Event of Default which may hereafter occur under any Loan Document.

    (c)    Except as expressly set forth in this Section 9 of the Ratification Agreement, Lender has not agreed to forbear with respect to any of its respective rights or remedies concerning any Event of Default (other than, solely during the Forbearance Period, the Existing Defaults to the extent expressly set forth in this Ratification Agreement) which may have occurred or be continuing as of the date hereof or which may occur after the date hereof.

    (d)    Subject to this Section 9 of the Ratification Agreement, Lender reserves the right, in its sole and absolute discretion, to exercise any or all of its respective rights and remedies under the Loan Documents and applicable law or otherwise as a result of any Event of Default which may have occurred or be continuing as of the date hereof or any Event of Default which may occur after the date hereof, and Lender has not waived any of such rights and remedies, and nothing in this Ratification Agreement, and no delay on Lender's part in exercising such rights and remedies, should be construed as a waiver of any such rights or remedies.

**10.**     **CONDITIONS PRECEDENT**.

The amendments, representations and warranties, covenants, defaults and all other agreements and obligations contained in Sections 1 through 8 of this Ratification Agreement shall only become effective upon the satisfaction (or waiver) of all of the following conditions precedent (the time of such satisfaction (or waiver) referred to herein as the "**Ratification Closing Date**"):

    **10.1**    as of the Petition Date, the Pre-Petition Financing Agreements shall not have been terminated;

    **10.2**    Debtor shall have commenced a voluntary case under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware by no later than January 30, 2017.  Debtor shall have complied in full with the notice and other requirements

of the Bankruptcy Code in a manner reasonably acceptable to Lender and its counsel, with respect to the Interim Financing Order) and Lender shall have received such evidence thereof as it shall reasonably require.  All of the first day orders entered by the Bankruptcy Court at the time of the commencement of the Chapter 11 Case shall be in form and substance reasonably satisfactory to Lender;

      **10.3**    no trustee or examiner with expanded powers shall have been appointed or designated with respect to any Borrower or Guarantor, as Debtor and Debtor-in-Possession, or its respective business, properties and assets and no motion or proceeding shall be pending seeking such relief;

      **10.4**    the Interim Financing Order has been duly entered, is valid, subsisting and continuing and has not been vacated, reversed, or modified by any order of the Bankruptcy Court (other than as consented to by Lender) and is not subject to any pending appeal or stay;

      **10.5**    a cash management order amending and ratifying the cash management arrangements of Borrower and Guarantors on terms acceptable to Lender has been duly entered, is valid, subsisting and continuing and has not been vacated, reversed, or modified by any order of the Bankruptcy Court (other than as consented to by Lender) and is not subject to any pending appeal or stay;

      **10.6**    the execution and delivery of this Ratification Agreement to be delivered in connection herewith by Borrower, Guarantor and Lender in form and substance satisfactory to Lender;

      **10.7**    the implementation of the terms of this Ratification Agreement and the other Loan Documents, as modified pursuant to this Ratification Agreement, all of which contains provisions, representations, warranties, covenants and Events of Default, as are satisfactory to Lender and its counsel;

      **10.8**    each Borrower and Guarantor shall have complied in full with the notice and other requirements of the Bankruptcy Code and the applicable Bankruptcy Rules with respect to any relevant Financing Order in a manner prescribed by the Bankruptcy Code and the applicable Bankruptcy Rules;

      **10.9**    receipt by Lender of the initial Budget;

      **10.10**    other than the voluntary commencement of the Chapter 11 Case, no material impairment of the priority of Lender's security interests in the Collateral shall have occurred from the date of the latest field examinations of Lender to the Petition Date;

      **10.11**    Borrower and Guarantor shall have (i) engaged the CRO and Investment Banker in accordance with Section 5.4 and Section 5.7 of the Ratification Agreement, and (ii) have provided the CRO and the investment banking firm with such information as they may reasonably require;

      **10.12**    Other than the Bankruptcy Events, no Material Adverse Change shall have occurred since April 6, 2016;

**10.13**   None of the materials previously furnished to Lender by Borrower and any Guarantor contain any material misstatements in, or omit to state, any material facts necessary to make the statements therein taken as a whole, in the light of the circumstances under which they were made, not misleading in any material respect;

**10.14**   Lender shall hold perfected, first priority security interests in and liens upon the Collateral (subject to the Permitted Liens and the Carve-Out) and Lender shall have received such evidence thereof as it requires;

**10.15**   Other than the Existing Defaults, no Default or Event of Default shall have occurred or be existing under any of the Loan Documents, as modified pursuant hereto, and assumed by Borrower and Guarantor; and

**10.16**   The receipt by Lender of an Acknowledgement and Consent of Guarantor, duly executed by Guarantor and in form and substance acceptable to Lender, (i) consenting to the terms of this Ratification Agreement and (ii) ratifying the existing Guaranty.

## 11.   ADDITIONAL CONDITIONS PRECEDENT TO ALL LOANS AND LETTERS OF CREDIT.

In addition to the satisfaction of the conditions precedent under Section 10 of this Ratification Agreement with respect to the effectiveness of the noted Sections of this Ratification Agreement and the making of the initial Advances under the Loan Agreement, and the satisfaction of the conditions precedent in Section 4 of the Loan Agreement with respect to all Borrowings and other financial accommodations available to Borrower (such conditions in Section 4, except as modified or made pursuant to this Ratification Agreement shall remain applicable to the Borrowings and be applicable to other financial accommodations available to Borrower), the following are conditions to Lender's obligation to extend further loans, advances or other financial accommodations to Borrower pursuant to the Loan Agreement:

**11.1**   with respect to further credit after expiration of the Interim Financing Order, on or before the expiration of the Interim Financing Order, the Bankruptcy Court shall have entered the Permanent Financing Order. Lender shall not provide any Advances (or other financial accommodations) other than those authorized under the Interim Financing Order unless, on or before the expiration of the Interim Financing Order, the Permanent Financing Order shall have been entered, and there shall be no appeal or other contest with respect to either the Interim Financing Order or the Permanent Financing Order and the time to appeal to contest such order shall have expired;

**11.2**   requests for further credit shall be for purposes and in amounts in accordance with the Budget (subject to the variances permitted under Section 5.3(c) of the Ratification Agreement);

**11.3**   subject to the Financing Order, all fees and expenses required to be paid to the Lender pursuant to the Ratification Agreement and the Loan Agreement, as amended thereby, shall have been paid or shall be paid concurrently with the making of the Loans after the Ratification Closing Date; and

**11.4**    other than the Existing Defaults, no Default or Event of Default shall have occurred or be existing under any of the Loan Documents, as amended, supplemented or otherwise modified pursuant this Ratification Agreement and assumed by Borrower and Guarantors.

**12.    MISCELLANEOUS.**

**12.1**    Amendments and Waivers.  Neither this Ratification Agreement nor any other instrument or document referred to herein or therein may be changed, waived, discharged or terminated orally, but only by an instrument in writing signed by the party against whom enforcement of the change, waiver, discharge or termination is sought.

**12.2**    Further Assurances.  Each Borrower and Guarantor shall, at its expense, at any time or times duly execute and deliver, or shall use its best efforts to cause to be duly executed and delivered, such further agreements, instruments and documents, and do or use its best efforts to cause to be done such further acts as may be reasonably necessary or proper in Lender's opinion to evidence, perfect, maintain and enforce the security interests of Lender, and the priority thereof, in the Collateral and to otherwise effectuate the provisions or purposes of this Ratification Agreement, any of the other Loan Documents or the Financing Order.  Upon the request of Lender, at any time and from time to time, each Borrower and Guarantor shall, at its cost and expense, do, make, execute, deliver and record, register or file updates to the filings of Lender with respect to the Intellectual Property with the United States Patent and Trademark Office or the United States Copyright Office, the financing statements, and other instruments, acts, pledges, assignments and transfers (or use its best efforts to cause the same to be done) and will deliver to Lender such instruments evidencing items of Collateral as may be requested by Lender.

**12.3**    Headings.  The headings used herein are for convenience only and do not constitute matters to be considered in interpreting this Ratification Agreement.

**12.4**    Counterparts.  This Ratification Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which shall together constitute one and the same agreement.  In making proof of this Ratification Agreement, it shall not be necessary to produce or account for more than one counterpart thereof signed by each of the parties hereto. Delivery of an executed counterpart of this Ratification Agreement by telefacsimile or other means of electronic transmission shall have the same force and effect as delivery of an original executed counterpart of this Ratification Agreement.  Any party delivering an executed counterpart of this Ratification Agreement by telefacsimile or other means of electronic transmission also shall deliver an original executed counterpart of this Ratification Agreement, but the failure to deliver an original executed counterpart shall not affect the validity, enforceability, and binding effect of this Ratification Agreement as to such party or any other party.

**12.5**    Additional Events of Default.  The parties hereto acknowledge, confirm and agree that the failure of any Borrower or Guarantor to comply with any of the covenants, conditions and agreements contained herein or in any other agreement, document or instrument

at any time executed by such Borrower or Guarantor in connection herewith shall constitute an Event of Default under the Loan Documents.

       **12.6**   <u>Costs and Expenses</u>.   Subject to the terms of the Financing Order, Borrower shall pay to Lender on demand all costs and expenses that Lender or any Lender pays or incurs in connection with the negotiation, preparation, consummation, administration, enforcement, and termination of this Ratification Agreement and the other Loan Documents and the Financing Order.   Subject to the terms of the Financing Order, the foregoing shall not be construed to limit any other provisions of the Loan Documents regarding costs and expenses to be paid by Borrower.   Subject to the terms of the Financing Order, all sums provided for in this Section 11.6 shall be part of the Obligations, shall be payable on demand, and shall accrue interest after demand for payment thereof at the highest rate of interest then payable under the Loan Documents.   Lender is hereby irrevocably authorized to charge any amounts payable hereunder directly to any of the account(s) maintained by Lender with respect to any Borrower or Guarantor.

       **12.7**   <u>Effectiveness</u>.   This Ratification Agreement shall become effective upon the execution hereof by the Borrower, Guarantors, Lender and the entry of the Interim Financing Order.


[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the parties hereto have caused this Ratification Agreement to be duly executed as of the day and year first above written.

**BORROWER:**

**PRESTIGE INDUSTRIES LLC**

By:_____
Name: _____
Title: _____

**LENDER:**

**WELLS FARGO BANK, NATIONAL ASSOCIATION**

By:_____
Name: _____
Title: _____

**Signature Page to Ratification Agreement**

EXHIBIT A
to
RATIFICATION AND AMENDMENT AGREEMENT

**SUMMARY BUDGET**

(see attached)

PRESTIGE INDUSTRIES, LLC

WEEKLY CASH FLOW ANALYSIS - ACTUAL RESULTS + FORECAST     **Wells Fargo DIP**

| CASH BASIS<br>ACTUAL + FORECAST WEEK ENDING>> | Forecast 0<br>01/29/17 | Forecast 1<br>02/05/17 | Forecast 2<br>02/12/17 | Forecast 3<br>02/19/17 | Forecast 4<br>02/26/17 | Forecast 5<br>03/05/17 | Forecast 6<br>03/12/17 | Forecast 7<br>03/19/17 | Forecast 8<br>03/26/17 |
|---|---|---|---|---|---|---|---|---|---|
| **Lender Advances** | **842,043** | **567,570** | **772,657** | **832,624** | **704,963** | **773,454** | **598,804** | **701,448** | **761,611** |
| **Cash Disbursements - Operating** | | | | | | | | | |
| Wages & Salaries + Benefits | 356,205 | 395,230 | 361,937 | 378,882 | 373,677 | 411,134 | 379,409 | 409,355 | 392,951 |
| Union Dues | 16,250 | - | - | 17,000 | 16,250 | - | - | 17,000 | 16,250 |
| Insurance | 26,500 | 26,500 | 28,505 | 146,500 | 26,500 | 27,000 | 38,449 | 27,500 | 84,424 |
| Vendor Payments | 40,209 | 84,189 | 59,237 | 129,448 | 114,935 | 116,306 | 104,830 | 137,448 | 98,435 |
| Rent | 22,000 | 22,000 | 133,263 | 22,000 | 22,000 | 126,862 | 28,401 | 22,000 | 22,000 |
| Utilities | - | - | 16,943 | 77,650 | 118,751 | 42,500 | 14,943 | 29,200 | 113,500 |
| Utilities - Deposit | | | 150,000 | | | | | | |
| Auto Lease/Rentals | 13,750 | 18,159 | 13,750 | 15,950 | 13,750 | 18,159 | 13,750 | 14,250 | 15,450 |
| Fuel | 4,500 | 10,000 | 4,500 | 10,000 | 4,500 | 10,000 | 4,500 | 10,000 | 4,500 |
| Professional Retainers and Fees | 358,528 | 10,500 | 500 | 20,500 | 500 | 10,500 | 500 | 20,000 | - |
| Information Technology | 4,101 | 993 | 4,022 | 4,695 | 4,101 | 993 | 4,022 | 4,695 | 4,101 |
| Quarterly State Sales Taxes | | | | | | | | | |
| Miscellaneous Expense | | | | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 |
| Total  Disbursements | 842,043 | 567,570 | 772,657 | 832,624 | 704,963 | 773,454 | 598,804 | 701,448 | 761,611 |
| **Lender Advances less Operating Disburse.** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** |

| COLLATERAL VALUE ANALYSIS | 01/29/17 | 02/05/17 | 02/12/17 | 02/19/17 | 02/26/17 | 03/05/17 | 03/12/17 | 03/19/17 | 03/26/17 |
|---|---|---|---|---|---|---|---|---|---|
| Beginning A/R | 2,471,054 | 2,330,133 | 2,204,664 | 2,172,390 | 2,192,290 | 2,210,532 | 2,243,699 | 2,301,534 | 2,362,687 |
| Plus: Weekly Sales | 620,000 | 640,000 | 635,000 | 635,000 | 635,000 | 660,000 | 696,460 | 696,460 | 700,000 |
| Less: Discounts / Adjustments | (3,100) | (3,200) | (3,175) | (3,175) | (3,175) | (3,300) | (3,482) | (3,482) | (3,500) |
| Less: A/R Collections | (757,821) | (762,269) | (664,098) | (611,925) | (613,583) | (623,533) | (635,142) | (631,825) | (631,825) |
| Ending A/R | 2,330,133 | 2,204,664 | 2,172,390 | 2,192,290 | 2,210,532 | 2,243,699 | 2,301,534 | 2,362,687 | 2,427,362 |
| Less: Ineligibles | | (26,000) | (19,000) | (12,000) | | (26,000) | (19,000) | (12,000) | |
| Advance Rate | 85.0% | 85.0% | 85.0% | 85.0% | 85.0% | 85.0% | 85.0% | 85.0% | 85.0% |
| Collateral Value Before LoC | 1,980,613 | 1,851,864 | 1,830,382 | 1,853,247 | 1,878,952 | 1,885,044 | 1,940,154 | 1,998,084 | 2,063,258 |
| Eligible Equipment | | 350,000 | 350,000 | 725,000 | 725,000 | 725,000 | 725,000 | 725,000 | 725,000 |
| LoC pledged by St. Cloud | 1,200,000 | 1,200,000 | 1,200,000 | 1,200,000 | 1,200,000 | 1,200,000 | 1,200,000 | 1,200,000 | 1,200,000 |
| Total Collateral Value | 3,180,613 | 3,401,864 | 3,380,382 | 3,778,247 | 3,803,952 | 3,810,044 | 3,865,154 | 3,923,084 | 3,988,258 |

| LINE OF CREDIT | 01/29/17 | 02/05/17 | 02/12/17 | 02/19/17 | 02/26/17 | 03/05/17 | 03/12/17 | 03/19/17 | 03/26/17 |
|---|---|---|---|---|---|---|---|---|---|
| Beginning Balance | 2,290,355 | 2,374,577 | 2,311,479 | 2,442,038 | 2,662,737 | 2,754,117 | 3,036,525 | 3,022,187 | 3,091,810 |
| Plus: Advances | 842,043 | 567,570 | 772,657 | 832,624 | 704,963 | 773,454 | 598,804 | 701,448 | 761,611 |
| Less: A/R Collections | (757,821) | (762,269) | (664,098) | (611,925) | (613,583) | (623,533) | (635,142) | (631,825) | (631,825) |
| Plus: Term/CapEx Loan Debt Service | | 120,487 | | | | 120,487 | | | |
| Plus: Revolver Interest & Fees | | 11,114 | 22,000 | | | 12,000 | 22,000 | | |
| Ending Balance | 2,374,577 | 2,311,479 | 2,442,038 | 2,662,737 | 2,754,117 | 3,036,525 | 3,022,187 | 3,091,810 | 3,221,596 |

EXHIBIT B
to
RATIFICATION AND AMENDMENT AGREEMENT

**Form of Interim Financing Order**

(see attached)

EXHIBIT C
to
RATIFICATION AND AMENDMENT AGREEMENT

**Existing Defaults**

1.      Borrower's failure to maintain a Minimum EBITDA in the amount set forth in Section 8(a) of the Pre-Petition Loan Agreement for the months ending May 31, 2016 through December 31, 2016; and

2.      Borrower's failure to deliver financial statements, reports, and other items in accordance with Section 6.1 of the Pre-Petition Loan Agreement.

To the extent any of the Events of Default disclosed in this schedule would constitute an Event of Default or default under any other provision of the Pre-Petition Loan Agreement or the other Pre-Petition Financing Agreements, the disclosure of such Event of Default on this schedule shall be deemed to be a disclosure of same under such other provisions of the Pre-Petition Loan Agreement or other Pre-Petition Financing Agreements.