**EXHIBIT C**
[Permanent DIP Order]

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

```
-------------------------------------------------- X
In re:                                             :   Chapter 11
                                                   :
PRESTIGE INDUSTRIES LLC,¹                           :   Case No. 1710186(KG)
                                                   :
                  Debtor.                          :
                                                   :
-------------------------------------------------- X   Re:  Docket Nos. _____
```

**FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, AND 507 AND FED.
R. BANKR. P. 2002, 4001 AND 9014 (I) AUTHORIZING DEBTOR AND DEBTOR IN
POSSESSION TO OBTAIN POSTPETITION FINANCING,
(II) AUTHORIZING USE OF CASH COLLATERAL, (III) GRANTING PRIMING
LIENS AND SUPER-PRIORITY CLAIMS, (IV) GRANTING ADEQUATE
PROTECTION TO PREPETITION SECURED LENDERS, (V) MODIFYING THE
AUTOMATIC STAY; AND (VI) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")² of the above-captioned Debtor and Debtor in

possession (the "Debtor") pursuant to §§ 105, 361, 362, 363, 364(c)(1), 364(c)(2) and 364(c)(3),

and 364(d) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, and

9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and

Rule 4001-2 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the

District of Delaware (the "Local Rules"), *inter alia* seeking, among other things:

(1)     authorization for Prestige Industries LLC, as debtor and debtor-in-possession, (the

"Borrower") to obtain post-petition financing in the form of a revolving credit and letter of credit

facility in accordance with the terms and conditions set forth in that certain Senior Secured

---

¹     The Debtor and the last four digits of its federal taxpayer identification numbers are follows: Prestige
Industries, LLC (3213).  The Debtor'ss executive headquarters are located at 1099 Wall St W #100, Lyndhurst, NJ
07071.

Debtor-in-Possession Financing Agreement, dated as of February ___, 2017, a copy of which is attached hereto as **Exhibit 1** (as amended, supplemented or otherwise modified from time to time in accordance with the terms and conditions set forth herein, the "<u>DIP Financing Agreement</u>"), by and between the Borrower and Rosenthal & Rosenthal, Inc. as the lender party thereto (the "<u>Lender</u>"), and the other Loan Documents (as defined in the DIP Financing Agreement), and in accordance with this order (the "<u>Final Financing Order</u>"), secured by perfected senior priority security interests in and liens on the Collateral (as defined below) pursuant to §§ 364(c)(2) and 364(c)(3), and 364(d) of the Bankruptcy Code (subject to the Carve-Out);

(2)    authorization for Borrower to remit all collections, asset proceeds and payments to Lender for application, or deemed application to the repayment of all Obligations (as defined in the DIP Financing Agreement) in accordance with the DIP Financing Agreement and the other Loan Documents;

(3)    authorization for the Debtor to grant superpriority administrative claim status, pursuant to § 364(c)(1) of the Bankruptcy Code, to the Lender in respect of all Obligations (subject to the Carve-Out (as defined below));

(4)    as set forth below, authorization to provide adequate protection to the Lender, Pre-Petition Subordinated Agent and Pre-Petition Subordinated Lenders (each in their respective capacities under the Pre-Petition Financing Agreements (as defined below);

(5)    the waiver of the Debtor's right to assert claims to surcharge against the Collateral (as defined below) pursuant to § 506(c) of the Bankruptcy Code, to the extent set forth below;

---

[2]    Capitalized terms used but not defined in this Order shall have the same meanings ascribed to such terms in (Footnote Continued)

(6)     the modification of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Final Financing Order to the extent hereinafter set forth; and

(7)     related relief.

The final hearing on the Motion having been held by this Court on February [ • ], 2017 (the "Final Hearing"), and upon the record made by the Debtor at the Final Hearing, including the Motion, the Declaration of Jonathan Fung in Support of First Day Motions (the "First Day Declaration"), and the filings and pleadings in the above-captioned chapter 11 Case (the "Case"), the Court having found that the relief requested in the Motion is in the best interests of Debtor, its Estate, their creditors and other parties in interest; and appropriate notice of the Motion, the relief requested therein, and the Final Hearing (the "Notice") was appropriate under the circumstances; and the Notice having been served by the Debtor in accordance with Bankruptcy Rule 4001 on (i) counsel to the Lender; (ii) counsel to the Pre-Petition Subordinated Agent, (iii) the office of the United States Trustee (the "U.S. Trustee"), (iv) [the holders of the forty (40) largest unsecured claims, on a consolidated basis, against the Debtor's Estate (the "40 Largest Unsecured Creditors")], (v) the Committee (as defined below), (vi) the Internal Revenue Service and applicable state taxing authorities, (vii) all parties which, to the best of the Debtor's knowledge, information, and belief, have asserted or may assert a lien in the Debtor's assets; (viii) the Debtor's landlords, and (ix) all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002 (collectively, the "Noticed

---

the DIP Financing Agreement.

<u>Parties</u>"); and the opportunity for a hearing on the Motion was appropriate and no other notice need be provided; and after due deliberation sufficient cause appearing therefor;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW**:

A.      <u>Petition</u>.  On January 30, 2017 (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition (the "<u>Petition</u>") under chapter 11 of the Bankruptcy Code.  The Debtor continues to operate its businesses and manage its properties as Debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. On February ___, 2017, the United States Trustee appointed a committee of unsecured creditors in this case (the "<u>Committee</u>").

B.      <u>Disposition</u>.  The Motion is hereby granted on a final basis in accordance with the terms of this Final Financing Order.  Any objections to the Motion with respect to the entry of the Final Financing Order that have not been withdrawn, waived, resolved, or settled are hereby denied and overruled.

C.      <u>Jurisdiction and Venue</u>.  The Court has jurisdiction of this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  The Motion is a "core" proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A), (D) and (M).  Venue of the Case and the Motion in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      <u>Notice</u>.  The Notice was given in the manner described in the Motion.  Under the circumstances, the Notice given by the Debtor of the Motion, the Final Hearing and the relief granted under this Final Financing Order constitutes due and sufficient notice thereof and complies with Bankruptcy Rule 4001.

E.      Pre-Petition Financing Agreements. Prior to the commencement of the Case:

(i)    Wells Fargo Bank, National Association (the "<u>Pre-Petition Senior Lender</u>") made loans, advances and provided other financial accommodations to Debtor pursuant to the terms and conditions set forth in the Credit and Security Agreement, dated as of February 2, 2012, by and among Borrower, Cho Holdings, LLC and Pre-Petition Senior Lender (as amended, the "<u>Pre-Petition Senior Loan Agreement</u>"); and

(ii)    Pre-Petition Subordinated Agent (as defined below) and the Pre-Petition Subordinated Lenders (as defined below) made loans, advances and provided other financial accommodations to Debtor pursuant to the terms and conditions set forth in [(a) that certain 13% Second Amended and Restated Secured Promissory Note for the aggregate principal amount of $6,240,000 issued by Prestige Industries LLC to St. Cloud Capital Partners II, LP ("<u>St. Cloud</u>"), effective as of the revised issue date of April 30, 2015; (b) that certain 13% Second Amended and Restated Secured Promissory Note for the aggregate principal amount of $5,760,000 issued by Prestige Industries LLC to Medley Capital Corporation ("<u>Medley</u>"), effective as of the revised issue date of April 30, 2015; (c) that certain 13% Convertible Secured Promissory Note for the aggregate principal amount of $1,500,000 issued by Prestige Industries LLC to St. Cloud, effective as of the issue date of August 10, 2012; and (d) that certain Loan and Extension Agreement dated April 30, 2015, by and between Prestige Industries LLC and St. Cloud], each of the forgoing as the same may be amended, modified, supplemented or restated from time to time prior to the Petition Date, the "<u>Pre-Petition Subordinated Loan Agreements</u>"), by and among Prestige Industries LLC and the lenders party thereto (the "<u>Pre-Petition Subordinated Lenders</u>") and Medley, in its capacity as administrative agent and as collateral agent (the "<u>Pre-Petition Subordinated Agent</u>").

F.    <u>Findings Regarding the Post-Petition Financing</u>.

(i)       Existing Wells Fargo DIP Financing. Pursuant to the *Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, and 507 and Fed. R. Bankr. P. 2002, 4001 and 9014 (i) Authorizing Debtor and Debtor in Possession to Obtain Postpetition Financing, (ii) Authorizing Use of Cash Collateral, (iii) Granting Priming Liens and Super-Priority Claims, (iv) Granting Adequate Protection to Prepetition Secured Lenders, (v) Modifying the Automatic Stay, (vi) Scheduling a Final Hearing, and (viii) Granting Related Relief* (the "Wells Fargo DIP Financing Order"), Debtor obtained post-petition loans, advances, letters of credit and accommodations from Pre-Petition Senior Lender in accordance with the Wells Fargo Dip Financing Order (the "Wells Fargo DIP Facility").

(ii)      Post-Petition Financing.  The Debtor has requested from Lender, and the Lender is willing, to extend certain loans, advances and other financial accommodations on the terms and conditions set forth in this Final Financing Order, the DIP Financing Agreement and the other Loan Documents, respectively, in order to refinance and repay in full the Wells Fargo DIP Facility and provide working capital to the Debtor.

(iii)     Need for Post-Petition Financing.  The Debtor'ss ability to maintain business relationships with its vendors, suppliers and customers, to pay its employees, and to otherwise fund their operations is essential to the Debtor'ss continued viability as the Debtor seekss to maximize the value of the assets of the Estate (as defined below) for the benefit of all creditors of the Debtor.  The ability of the Debtor to obtain sufficient working capital and liquidity through the proposed post-petition financing arrangements with the Lender as set forth in this Final Financing Order, the DIP Financing Agreement and other Loan Documents, as applicable, is vital to the preservation and maintenance of the going concern value of each Debtor.  Accordingly, the Debtor and its Estate (defined below) will benefit from the post-

petition financing provided by Lender in order to, among other things, refinance and replace the Wells Fargo DIP Facility, permit the orderly continuation of the operation of its business, minimize the disruption of its business operations, and preserve and maximize the value of the assets of the Debtor'ss bankruptcy estate (as defined under § 541 of the Bankruptcy Code, the "Estate") in order to maximize the recovery to all creditors of the Estate.

(iv)    No Credit Available on More Favorable Terms.  The Debtor is unable to procure financing in the form of unsecured credit allowable as an administrative expense under §§ 364(a), 364(b), or 503(b)(1) of the Bankruptcy Code or in exchange for the grant of a superpriority administrative expense, junior liens on encumbered property of the Estate, or liens on property of the Estate not subject to a lien pursuant to § 364(c)(1), 364(c)(2) or 364(c)(3) of the Bankruptcy Code.  The financing offered by Lender in accordance with the DIP Financing Agreement and the other Loan Documents is more favorable, taken as a whole, than any other financing offered to or obtained by Debtor.

(v)    Budget.  The Debtor has prepared and delivered to Lender an initial 13 week budget (as defined in the DIP Financing Agreement, the "Budget").  Such Budget has been thoroughly reviewed by the Debtor and their management and sets forth, among other things, the projected cash receipts and disbursements of the Debtor for the periods covered thereby.  The Debtor represent that the Budget is achievable in accordance with the terms of the Loan Documents and this Final Financing Order and will allow the Debtor to operate at all times during This Case.  Lender is relying upon the Debtor's compliance with the Budget (subject to the variances permitted under Section 7 of the DIP Financing Agreement (the "Permitted Variances") in accordance with Section 7 of the DIP Financing Agreement, the other Loan

Documents, and this Final Financing Order in determining to enter into the post-petition financing arrangements provided for herein.

(vi)        <u>Business Judgment and Good Faith Pursuant to § 364(e)</u>.  The terms of the Loan Documents and this Final Financing Order are fair, just and reasonable under the circumstances, are ordinary and appropriate for secured financing to Debtor-in-possession, reflect the Debtor's exercise of their prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.  The terms and conditions of the Loan Documents and this Final Financing Order have been negotiated in good faith and at arms' length by and among the Debtor and Lender, with all parties being represented by counsel.  Any credit extended under the terms of this Final Financing Order shall be deemed to have been extended in good faith by the Lender, as that term is used in § 364(e) of the Bankruptcy Code.

(vii)       <u>Good Cause</u>.  The relief requested in the Motion is necessary, essential and appropriate, and is in the best interest of and will benefit the Debtor, their creditors and its Estate, as its implementation will, among other things, provide the Debtor with the necessary liquidity to (1) minimize disruption to the Debtor's businesses and on-going operations, (2) preserve and maximize the value of the Debtor's Estate for the benefit of all the Debtor's creditors, and (3) avoid immediate and irreparable harm to the Debtor, their creditors, its business, their employees, and their assets.

(viii)      <u>Immediate Entry</u>.  Sufficient cause exists for immediate entry of this Final Financing Order pursuant to Bankruptcy Rule 4001(c)(2).  No party appearing in the Case has filed or made an objection to the relief sought in the Motion or the entry of this Final Financing

Order, or any objections that were made (to the extent such objections have not been withdrawn, waived, resolved, or settled) are hereby overruled.

Based upon the foregoing, and after due consideration and good cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

Section 1.    <u>Authorization and Conditions to Financing.</u>

1.1    <u>Motion Granted</u>.  The Motion is granted in accordance with Bankruptcy Rule 4001(c)(2) to the extent provided in this Final Financing Order.  Except as otherwise expressly provided in this Final Financing Order, any objection to the entry of this Final Financing Order that has not been withdrawn, waived, resolved or settled, is hereby denied and overruled on the merits.

1.2    <u>Authorization to Borrow and Use Loan Proceeds</u>.  Borrower is hereby authorized and empowered to immediately borrow and obtain advances and letters of credit and to incur indebtedness and other Obligations. Subject to the terms and conditions contained in this Final Financing Order and the Loan Documents, Borrower shall use the proceeds of the advances, letters of credit and other credit and financial accommodations provided by Lender under the DIP Financing Agreement and the other Loan Documents solely for (i) the repayment in full of of all indebtedness owing to Pre-Petition Senior Lender in accordance with the Wells Fargo DIP Facility, (ii) payment of expenses set forth in the Budget (subject to the Permitted Variances) and (iii) amounts owing to Lender in accordance with the terms and conditions of the Loan Documents and this Final Financing Order.

1.3    <u>Financing Documents</u>

(a)    <u>Authorization</u>.  Debtor is hereby authorized to enter into, execute, deliver, perform, and comply with all of the terms, conditions and covenants of the DIP Financing Agreement and the other Loan Documents.  Upon execution and delivery of the DIP

Financing Agreement and the other Loan Documents, such agreements and documents shall constitute valid and binding obligations of the Debtor, enforceable against each Debtor party thereto in accordance with the terms of such agreements, documents and this Final Financing Order.    No obligation, payment, transfer or grant of security under the DIP Financing Agreement, the other Loan Documents or this Final Financing Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under § 502(d) of the Bankruptcy Code), or be subject to any defense, reduction, setoff, recoupment or counterclaim.

(b)    <u>Approval; Evidence of Borrowing Arrangements</u>.    All terms, conditions and covenants set forth in the Loan Documents (including, without limitation, the DIP Financing Agreement) are approved on a final basis to implement the terms and provisions of this Final Financing Order.    All such terms, conditions and covenants shall be sufficient and conclusive evidence of (a) the borrowing arrangements by and among Debtor and Lender, and (b) each Debtor's assumption and adoption of all of the terms, conditions, and covenants of the DIP Financing Agreement and the other Loan Documents for all purposes, including, without limitation, to the extent applicable, the payment of all Obligations arising thereunder, including, without limitation, all principal, interest, fees and other expenses, including, without limitation, all of Lender's consultant fees, professional fees, attorney fees and legal expenses, as more fully set forth in the Loan Documents.

(c)    <u>Amendment</u>.    Subject to the terms and conditions of the DIP Financing Agreement and the other Loan Documents, Debtor and Lender may amend, modify, supplement or waive any provision of the Loan Documents (a "<u>DIP Loan Amendment</u>") without further approval or order of the Court so long as (a) such DIP Loan Amendment is not material

(for purposes hereof, a "material" DIP Loan Amendment shall mean any DIP Loan Amendment that operates to increase the interest rate other than as currently provided in the Loan Documents, adds specific new events of default or enlarges the nature and extent of default remedies available to Lender following an event of default, or otherwise modifies any terms and conditions in any Financing Agreement in a manner materially less favorable to Debtor) and is undertaken in good faith by Lender and Debtor; (b) the Debtor provide prior written notice of the DIP Loan Amendment (the "DIP Loan Amendment Notice") to (i) the U.S. Trustee, (ii) counsel to the Committee and (iii) counsel to the Pre-Petition Subordinated Agent; (c) the Debtor file the DIP Loan Amendment Notice with the Court; and (d) no objection to the DIP Loan Amendment is filed with the Court within five (5) business days from the later of the date the DIP Loan Amendment Notice is served or the date the DIP Loan Amendment Notice is filed with the Court in accordance with this Section.  Any material DIP Loan Amendment to the Loan Documents must be approved by the Court prior to becoming effective.

        1.4     <u>Payments and Application of Payments</u>.  The Debtor is authorized to make all payments and transfers of Estate property to the Lender as provided for, permitted and/or required under the DIP Financing Agreement and the other Loan Documents, which payments and transfers shall not be avoidable or recoverable from the Lender under §§ 547, 548, 550, 553 or any other section of the Bankruptcy Code, or by reason of any other claim, charge, assessment, or other liability, whether by application of the Bankruptcy Code, other law or otherwise. Without limiting the generality of the foregoing, the Debtor is authorized without further order of this Court to pay or reimburse Lender for future costs and expenses, including, without limitation, all professional fees, consultant fees and legal fees and expenses paid or incurred by the Lender in connection with the financing transactions as provided in this Final

Financing Order and the Loan Documents, all of which shall be and are included as part of the principal amount of the Obligations and secured by the Collateral (as defined herein).

Section 2.    <u>Post-Petition Priming Lien; Superpriority Administrative Claim Status.</u>

    2.1    <u>Post-Petition Lien</u>.

    (a)    <u>Post-Petition Lien Granting</u>.  To secure the prompt payment and performance of any and all Obligations (as defined in  the DIP Financing Agreement) of Debtor to the Lender of whatever kind, nature or description, absolute or contingent, now existing or hereafter arising, Lender shall have, and is hereby granted, effective as of the date of entry of this Final Financing Order, valid and perfected first-priority priming security interests and liens, superior to all other liens, claims or security interests that any creditor of the Debtor's Estate may have (but subject to the Carve-Out (as defined below)), in and upon all of the Collateral (as defined in the DIP Financing Agreement and referred to herein as the "<u>Collateral</u>").

    (b)    <u>Lien Priority in Collateral</u>.  The liens and security interests of Lender granted under the Loan Documents and this Final Financing Order in the Collateral securing all Obligations (as defined in the DIP Financing Agreement) shall be first and senior in priority to all other interests and liens of every kind, nature and description, whether created consensually, by an order of the Court or otherwise, including, without limitation, liens or interests granted in favor of third parties in conjunction with §§ 363, 364 or any other section of the Bankruptcy Code or other applicable law; provided, however, that Lender's liens on and security interests in the Collateral shall be subject only to the Carve-Out (as defined below).

    (c)    <u>Post-Petition Lien Perfection</u>.  This Final Financing Order shall be sufficient and conclusive evidence of the priority, perfection and validity of the post-petition liens and security interests granted herein, effective as of the Petition Date, without any further

act and without regard to any other federal, state or local requirements or law requiring notice, filing, registration, recording or possession of the Collateral, or other act to validate or perfect such security interest or lien, including without limitation, control agreements with any financial institution(s) or other depository account consisting of Collateral (a "Perfection Act"). Notwithstanding the foregoing, if Lender, shall, in its sole discretion, elect for any reason to file, record or otherwise effectuate any Perfection Act, then Lender is authorized to perform such act, and the Debtor is authorized to perform such act to the extent necessary or required by Lender, which act or acts shall be deemed to have been accomplished as of the date and time of entry of this Final Financing Order notwithstanding the date and time actually accomplished, and in such event, the subject filing or recording office is authorized to accept, file or record any document in regard to such act in accordance with applicable law.  Lender may choose to file, record or present a certified copy of this Final Financing Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file or record such certified copy of this Final Financing Order in accordance with applicable law.  Should Lender so choose and attempt to file, record or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive or alter the validity, enforceability, attachment, or perfection of the post-petition liens and security interests granted herein by virtue of the entry of this Final Financing Order.

(d)    Nullifying Pre-Petition Restrictions to Post-Petition Financing. Notwithstanding anything to the contrary contained in any pre-petition agreement, contract, lease, document, note or instrument to which any Debtor is a party or under which any Debtor is obligated, except as otherwise permitted under the Loan Documents, any provision that restricts, limits or impairs in any way any Debtor from granting Lender security interests in or liens upon

any of the Debtor's assets or properties (including, among other things, any anti-lien granting or anti-assignment clauses in any leases or other contractual arrangements to which any Debtor is a party) under the Loan Documents or this Final Financing Order, as applicable, or otherwise entering into and complying with all of the terms, conditions and provisions hereof or of the Loan Documents, shall not (a) be effective and/or enforceable against any such Debtor(s) or Lender, as applicable, or (b) adversely affect the validity, priority or enforceability of the liens, security interests, claims, rights, priorities and/or protections granted to Lender pursuant to this Final Financing Order or the Loan Documents, in each case, to the maximum extent permitted under the Bankruptcy Code and other applicable law that would not render any unexpired lease or executory contract non-assumable or non-assignable pursuant to section 365 of the Bankruptcy Code.

        2.2    <u>Superpriority Administrative Expenses</u>.

        (a)    <u>DIP Loans</u>.  For all Obligations now existing or hereafter arising pursuant to this Final Financing Order, the Loan Documents or otherwise, Lender is granted an allowed superpriority administrative claim pursuant to § 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities and indebtedness of Debtor (other than the Carve-Out), whether now in existence or hereafter incurred by Debtor, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, inter alia, §§ 105, 326, 328, 330, 331, 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 364(c)(1), 546(c), 726, 1113 or 1114 of the Bankruptcy Code (other than the Carve-Out), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed superpriority administrative

claim shall be payable from and have recourse to all pre-petition and post-petition property of the Debtor and all proceeds thereof (the "DIP Loan Superpriority Claim").

    2.3 Carve-Out.

      (a) Carve-Out.  As used in this Final Financing Order, the "Carve-Out" means the sum of: (i) all allowed administrative expenses pursuant to 28 U.S.C. § 156(c) for fees required to be paid to the Clerk of the Bankruptcy Court and pursuant to 28 U.S.C. § 1930(a)(6) for fees payable to the Office of the U.S. Trustee under section 1930(a) of title 28 of the United States Code, plus interest at the statutory rate, as determined by agreement of the U.S. Trustee or by final order of the Bankruptcy Court (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $5,000 incurred by a trustee under Section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); and (iii) subject to the terms and conditions of this Final Financing Order, Allowed Professional Fees (as defined below) incurred by attorneys, accountants and other professionals retained by the Debtor and any Committee(s), under § 327 or § 1103(a) of the Bankruptcy Code (collectively, the "Professionals"), less the amount of any fee retainers received by any Professionals, in an aggregate amount not to exceed at any time $250,000 ("Professional Fee Carve-Out").  For the avoidance of doubt, nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement or compensation described herein.  For purposes of this Final Financing Order, the term "Allowed Professional Fees" shall mean the unpaid and outstanding reasonable fees and expenses of Professionals (i) actually incurred on or after the Petition Date and (ii) allowed at any time by a final order of the Court pursuant to §§ 326, 328, 330 or 331 of the Bankruptcy Code.

(b)    Excluded Professional Fees.    Notwithstanding anything to the contrary in this Final Financing Order, neither the Professional Fee Carve-Out nor the proceeds of Collateral or any loans, letters of credit or any other credit or financial accommodations provided under or in connection with the Loan Documents shall be used to pay any Allowed Professional Fees or any other fees or expenses incurred by any Professional in connection with any of the following:

(i)    an assertion or joinder in any claim, counter-claim, action, proceeding, application, motion, objection, defense or other contested matter seeking any order, judgment, determination or similar relief: (i) challenging the legality, validity, priority, perfection, or enforceability of the Obligations or Lender's liens on and security interests in the Collateral; (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, the Obligations or Lender's liens on and security interests in the Collateral; or (iii) preventing, hindering or delaying Lender's assertion or enforcement of any lien, claim, right or security interest or realization upon any Collateral in accordance with the terms and conditions of the DIP Financing Agreement, the Loan Documents, and this Final Financing Order;

(ii)    a request to use Cash Collateral (as such term is defined in section 363 of the Bankruptcy Code), except as set forth in the DIP Financing Agreement, the Loan Documents, and this Final Financing Order, without the prior written consent of Lender in accordance with the terms and conditions of this Final Financing Order;

(iii)    a request for authorization to obtain debtor-in-possession financing or other financial accommodations pursuant to section 364(c) or § 364(d) of the

Bankruptcy Code, other than as provided in the DIP Financing Agreement, the Loan Documents, and this Final Financing Order, without the prior written consent of Lender;

(iv)    the commencement or prosecution of any action or proceeding of any claims, causes of action or defenses against Lender or any of its respective officers, directors, employees, agents, attorneys, affiliates, successors or assigns, including, without limitation, any attempt to recover or avoid any claim or interest from Lender, under chapter 5 of the Bankruptcy Code; or

(v)    any act which has or could directly, materially and adversely modify or compromise the rights and remedies of Lender under this Final Financing Order, or which directly results in the occurrence of an Event of Default under any Loan Documents, or this Final Financing Order.

(c)    Carve-Out Reserve.  At the Lender's discretion, Lender may, at any time and in any increment in accordance with the DIP Financing Agreement, establish a Reserve (the "Professional Fee Reserve") against the amount of advances and letters of credit that would otherwise be available to Borrower in respect of the Professional Fee Carve-Out.

2.4    Payment of Carve-Out.

Payment from the Carve-Out, whether by or on behalf of the Lender, shall not and shall not be deemed to reduce the Obligations, and shall not and shall not be deemed to subordinate any of any of Lender's liens and security interests in the Collateral, the Senior Loan Adequate Protection Superpriority Claim (as defined below), or the DIP Loan Superpriority Claim to any junior pre- or post-petition lien, interest or claim in favor of any other party. Lender shall not, under any circumstance, be responsible for the direct payment or reimbursement of any fees or disbursements of any Professionals incurred in connection with the

Case under any chapter of the Bankruptcy Code, and nothing in Section 2.3 of this Final Financing Order shall be construed to obligate the Lender in any way, to directly pay compensation to or to reimburse expenses of any Professional, or to ensure that the Debtor has sufficient funds to pay such compensation or reimbursement.

2.5     Use of Cash Collateral; Adequate Protection.

(a)     Authorization to Use Cash Collateral.  Subject to the terms and conditions of this Final Financing Order, the DIP Financing Agreement, the Loan Documents, and in accordance with the Budget (subject to the Permitted Variances), Borrower shall be and is hereby authorized to use the Cash Collateral (as defined in section 363 of the Bankruptcy Code), to which the Debtor's are permitted to have access under the terms of the DIP Financing Agreement and other Loan Documents for the period commencing on the date of this Final Financing Order and terminating upon the date on which the Lender delivers an Enforcement Notice (as defined below) to counsel for the Debtor, counsel for the Committee, and the U.S. Trustee, subject to the liens and security interests granted to the Lender. Nothing in this Final Financing Order shall authorize the disposition of any assets of the Debtor or its Estate outside the ordinary course of business, or any Borrower's use of Cash Collateral or other proceeds resulting therefrom, except as expressly permitted in this Final Financing Order, the Loan Documents and in accordance with the Budget (subject to the Permitted Variances).

(b)     Replacement Liens.  As adequate protection for the diminution in value of its interests in the Collateral (including Cash Collateral), including without limitation resulting from the Borrower's use of such Collateral (including Cash Collateral), the imposition of the automatic stay, the subordination to the Carve-Out, and any other act or omission which causes diminution in the value of its interests in the Collateral (collectively, the "Diminution in

18

Value"), the Lender, is hereby granted pursuant to §§ 361 and 363 of the Bankruptcy Code, and solely to the extent of the Diminution in Value, valid, binding, enforceable and perfected replacement liens upon and security interests in all Collateral (the "Senior Loan Replacement Lien").  The Senior Loan Replacement Lien shall be junior and subordinate only to (A) the Carve-Out and (B) Lender's liens on the Collateral to secure the Obligations, and shall otherwise be senior to all other security interests in, liens on, or claims against any of the Collateral and all rights of payment of all other parties.

(c)    Section 507(b) Priority Claims.  As adequate protection for the Diminution in Value, the Lender is hereby granted as and to the extent provided by section 507(b) of the Bankruptcy Code, and solely to the extent of the Diminution in Value, an allowed superpriority administrative expense claim in each of the Case and any successor bankruptcy Case (the "Senior Loan Adequate Protection Superpriority Claim").  The Senior Loan Adequate Protection Superpriority Claim shall be junior only to (A) the Carve-Out, and (B) the DIP Loan Superpriority Claim, and shall otherwise have priority over all administrative expense claims and unsecured claims against Debtor and its Estate now existing or hereafter arising, of any kind or nature whatsoever.

(d)    Pre-Petition Subordinated Agent Adequate Protection. Pre-Petition Subordinated Agent, for the benefit of itself and the Pre-Petition Subordinated Lenders (collectively, the "Subordinated Loan Adequate Protection Parties"), shall be granted the following protection, pursuant to sections 361, 507, and 363(e) of the Bankruptcy Code for the consent to the use of its collateral (including Cash Collateral), consent to the transactions contemplated by the Loan Documents and this Final Financing Order, and for the Diminution in Value of the security interests and liens of such party.  The Subordinated Loan Adequate

Protection Parties are granted the following adequate protection (the "<u>Subordinated Loan Adequate Protection Obligations</u>"):

        (i)        <u>Adequate Protection Lien</u>.  Pre-Petition Subordinated Agent, on behalf of the Subordinated Loan Adequate Protection Parties, shall be granted for their benefit, effective and perfected as of the date of entry of this Final Financing Order and without the necessity of the execution or filing of mortgages, security agreements, pledge agreements, financing statements or other agreements, and solely to the extent of the Diminution in Value, a security interest in and lien on the Collateral (together, the "<u>Subordinated Loan Adequate Protection Liens</u>"), subject and subordinate only to (i) the Carve-Out and (ii) the liens of Lender securing all Obligations arising under or in connection with the DIP Finanicng Agreement and the other Loan Documents and/or this Final Financing Order in and upon the Collateral, including, without limitation, the Senior Loan Replacement Lien; <u>provided</u> that, the Subordinated Loan Adequate Protection Liens shall only encumber the Avoidance Actions upon entry of the Final Order.

        (ii)        <u>Pre-Petition Subordinated Loan Adequate Protection Super-Priority Claim</u>.  The Pre-Petition Subordinated Agent, on behalf of the Subordinated Loan Adequate Protection Parties, shall be granted, solely to the extent of the Diminution in Value, a super-priority administrative expense claim junior and subordinate only to the Carve-Out, DIP Loan Superpriority Claim and the Senior Loan Adequate Protection Superpriority Claim; <u>provided</u> that the Pre-Petition Subordinated Agent and the Pre-Petition Subordinated Lenders shall not receive or retain any payments, property or other amounts in respect of such super-priority claims unless and until all Obligations under the DIP Financing Agreement and the other

Loan Documents have indefeasibly been paid in cash in full in accordance with the terms of the DIP Financing Agreement.

Section 3.    <u>Default; Rights and Remedies; Relief from Stay</u>.

3.1    <u>Events of Default</u>.  The occurrence of any of the following events shall constitute an "<u>Event of Default</u>" under this Final Financing Order: (a) any Debtor'ss failure to perform, in any respect, any of their obligations under this Final Financing Order; or (b) an "Event of Default" under the DIP Financing Agreement or any of the other Loan Documents.

3.2    <u>Rights and Remedies upon Event of Default</u>.  Upon the occurrence of and during the continuance of an Event of Default, (a) the Debtor shall be bound by all restrictions, prohibitions and other terms as provided in this Final Financing Order, the DIP Financing Agreement and the other Loan Documents, and (b) the Lender shall be entitled to take any act or exercise any right or remedy (subject to Section 3.4 below) as provided in this Final Financing Order, the DIP Financing Agreement or any other Loan Document, as applicable, including, without limitation, declaring all Obligations immediately due and payable, accelerating the Obligations, ceasing to extend advances or provide or arrange for letters of credit on behalf of Debtor, setting off any Obligations with Collateral or proceeds in Lender's possession, and enforcing any and all rights with respect to the Collateral.  Lender shall have no obligation to lend or advance any additional funds to or on behalf of Debtor, or provide any other financial accommodations to Debtor, immediately upon or after the occurrence of an Event of Default or upon the occurrence of any act, event, or condition that, with the giving of notice or the passage of time, or both, would constitute an Event of Default.

3.3    <u>Expiration of Credit Facility</u>.  Upon the expiration of Borrower's authority to borrow and obtain other credit accommodations from Lender pursuant to the terms of this Final Financing Order, the DIP Financing Agreement, or the Loan Documents (except if such

authority shall be extended with the prior written consent of Lender, which consent shall not be implied or construed from any action, inaction or acquiescence by Lender), unless an Event of Default set forth in Section 3.1 above occurs sooner and the automatic stay has been lifted or modified pursuant to Section 3.4 of this Final Financing Order, all of the Obligations shall immediately become due and payable and Lender shall have no obligation whatsoever to make or extend any loans, advances, provide any financial or credit accommodations to Debtor or permit the use of Cash Collateral, subject to the conditions set forth in Section 2.5(a) of this Final Financing Order.

    3.4  <u>Modification of Automatic Stay</u>. The automatic stay provisions of section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified without further notice, application or order of the Court to the extent necessary to permit Lender to perform any act authorized or permitted under or by virtue of this Final Financing Order, the DIP Financing Agreement or the other Loan Documents, as applicable, including, without limitation, (a) to implement the post-petition financing arrangements authorized by this Final Financing Order and pursuant to the terms of the Loan Documents, (b) to take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the Collateral, (c) to assess, charge, collect, advance, deduct and receive payments with respect to the Obligations, as applicable, including, without limitation, all interests, fees, costs and expenses permitted under the Loan Documents (subject to Section 5.11 of this Final Financing Order) and apply such payments to the Obligations pursuant to the Loan Documents and/or this Final Financing Order, as applicable, and (d) immediately following the expiration of the Default Notice Period, to take any action and exercise all rights and remedies provided to it by this Final Financing Order, the Loan Documents or applicable law other than

those rights and remedies against the Collateral as provided in the following sentence. In addition, and without limiting the foregoing, upon the occurrence of an Event of Default and after providing five (5) business days (the "Default Notice Period") prior written notice (the "Enforcement Notice") to (i) counsel for the Debtor, (ii) counsel for the Committee (if appointed), (iii) counsel for the Pre-Petition Subordinated Agent and (iv) the U.S. Trustee, Lender shall be entitled to take any action and exercise all rights and remedies provided to it by this Final Financing Order, the Loan Documents or applicable law that Lender may deem appropriate in its sole discretion to proceed against and realize upon the Collateral or any other assets or properties of Debtor's Estate upon which the Lender has been or may hereafter be granted liens or security interests to obtain the full and indefeasible repayment of all Obligations. Notwithstanding anything to the contrary, any action that Lender is otherwise permitted to take pursuant to this Final Financing Order to (i) terminate the commitments under the Loan Documents, (ii) accelerate the loans, (iii) repay any amounts owing in respect of the Obligations (including, without limitation, fees, indemnities and expense reimbursements) and (iv) cash collateralize letters of credit issued pursuant to the Loan Documents, in each case, shall not require any advance notice to the Debtor. In any hearing regarding any exercise of rights or remedies (which hearing must take place within the Default Notice Period), the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing, and the Debtor shall not be entitled to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the Lender set forth in this Final Financing Order or the Loan Documents. The Court may stay the Lender's exercise of rights and remedies

pursuant to this Section 3.4 only if the Court determines within the Default Notice Period that an Event of Default has not occurred or is not continuing.

Section 4.        Representations; Covenants; and Waivers.

4.1    Debtor's Waivers.  At all times during the Case, and whether or not an Event of Default has occurred, the Debtor irrevocably waive any right that they may have to seek further authority (a) to use Cash Collateral of Lender under section 363 of the Bankruptcy Code, (b) to obtain post-petition loans or other financial accommodations pursuant to section 364(c) or 364(d) of the Bankruptcy Code, other than as provided in this Final Financing Order or as may be otherwise expressly permitted pursuant to the Loan Documents, (c) to challenge the application of any payments authorized by this Final Financing Order as pursuant to section 506(b) of the Bankruptcy Code, (d) to propose, support or have a plan of reorganization or liquidation that does not provide for the indefeasible payment in cash in full and satisfaction of all Obligations (other than unmatured indemnity obligations for which claims have not been asserted) on the effective date of such plan in accordance with the terms and conditions set forth in the DIP Financing Agreement, or (e) to seek relief under the Bankruptcy Code, including without limitation, under section 105 of the Bankruptcy Code, to the extent any such relief would in any way restrict or impair the rights and remedies of Lender as provided in this Final Financing Order and the Loan Documents or Lender's exercise of such rights or remedies (other than to object to the exercise of the rights and remedies within the Default Notice Period on the grounds set forth in Section 3.4 of this Final Financing Order); provided, however, that Lender may otherwise consent in writing, but no such consent shall be implied from any other action, inaction, or acquiescence by Lender.

4.2    Section 506(c) Claims.  No costs or expenses of administration which have or may be incurred in the Case shall be charged against Lender, its respective claims or the

Collateral pursuant to § 506(c) of the Bankruptcy Code without the prior written consent of Lender, and no such consent shall be implied from any other action, inaction or acquiescence by Lender.

      4.3    <u>Collateral Rights</u>. Until all Obligations shall have been indefeasibly paid and satisfied in full in accordance with the terms of the DIP Financing Agreement and the other Loan Documents:

      (a)    no other party shall foreclose or otherwise seek to enforce any junior lien or claim in Collateral; and

      (b)    upon and after the declaration of the occurrence of an Event of Default, and subject to Lender obtaining relief from the automatic stay as provided for herein to enforce its rights and remedies against the Collateral, in connection with a liquidation of any of the Collateral, Lender (or any of its employees, agents, consultants, contractors or other professionals) shall have the right, at the sole cost and expense of Debtor, to: (i) enter upon, occupy and use any real or personal property, fixtures, equipment, leasehold interests or warehouse arrangements owned or leased by Debtor and (ii) use any and all trademarks, trade names, copyrights, licenses, patents or any other similar assets of Debtor, which are owned by or subject to a lien of any third party and which are used by Debtor in its business. Lender will be responsible for the payment of any applicable fees, rentals, royalties or other amounts due such lessor, licensor or owner of such property for the period of time that Lender actually uses the equipment or the intellectual property (but in no event for any accrued and unpaid fees, rentals or other amounts due for any period prior to the date that Lender actually occupies or uses such

assets or properties or for any fees, rentals or other amounts that may become due following the end of Lender's occupation or use).

4.4     Releases.

Upon the repayment of all Obligations owed to the Lender by Debtor and termination of the rights and obligations arising under the Loan Documents (which payment and termination shall be on terms and conditions acceptable to the Lender), the Lender shall be released from any and all obligations, liabilities, actions, duties, responsibilities and causes of action arising or occurring in connection with or related to the Loan Documents or this Final Financing Order (including without limitation any obligation or responsibility (whether direct or indirect, absolute or contingent, due or not due, primary or secondary, liquidated or unliquidated) to pay or otherwise fund the Carve-Out and/or the Professional Fee Carve-Out, on terms and conditions acceptable to the Lender.

Section 5.     Other Rights and Post-Petition Obligations.

5.1     No Modification or Stay of This Final Financing Order.  Notwithstanding (a) any stay, modification, amendment, supplement, vacating, revocation or reversal of this Final Financing Order, the Loan Documents or any term hereunder or thereunder, (b) the failure to obtain a Final Order pursuant to Bankruptcy Rule 4001(c)(2), or (c) the dismissal or conversion of one or more of the Case (each, a "Subject Event"), (x) the acts taken by Lender in accordance with this Final Financing Order, and (y) the Obligations incurred or arising prior to Lender's actual receipt of written notice from Debtor expressly describing the occurrence of such Subject Event shall, in each instance, be governed in all respects by the original provisions of this Final Financing Order, and the acts taken by Lender in accordance with this Final Financing Order, and the liens granted to Lender in the Collateral, and all other rights, remedies, privileges, and benefits in favor of Lender pursuant to this Final Financing Order and the Loan Documents shall

remain valid and in full force and effect pursuant to section 364(e) of the Bankruptcy Code. For purposes of this Final Financing Order, the term "appeal", as used in section 364(e) of the Bankruptcy Code, shall be construed to mean any proceeding for reconsideration, amending, rehearing, or re-evaluating this Final Financing Order by this Court or any other tribunal.

5.2    <u>Power to Waive Rights; Duties to Third Parties</u>. Lender shall have the right to waive any of the terms, rights and remedies provided or acknowledged in this Final Financing Order that are in favor of Lender (the "<u>DIP Lender Rights</u>"), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any DIP Lender Right(s). Any waiver by Lender of any DIP Lender Rights shall not be or constitute a continuing waiver. Any delay in or failure to exercise or enforce any DIP Lender Right shall neither constitute a waiver of such DIP Lender Right, subject Lender to any liability to any other party, nor cause or enable any party other than the Debtor to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtor to Lender.

5.3    <u>Disposition of Collateral</u>. Debtor shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral, other than pursuant to the terms of the DIP Financing Agreement, without the prior written consent of Lender (and no such consent shall be implied, from any other action, inaction or acquiescence by the Lender) and, in each case, an order of this Court.

5.4    <u>Inventory</u>. Debtor shall not, without the consent of the Lender, (a) enter into any agreement to return any inventory to any of their creditors for application against any pre-petition indebtedness under any applicable provision of section 546 of the Bankruptcy Code, or (b) consent to any creditor taking any setoff against any of its pre-petition indebtedness based upon any such return pursuant to section 553(b)(1) of the Bankruptcy Code or otherwise.

5.5     Reservation of Rights.  The terms, conditions and provisions of this Final Financing Order are in addition to and without prejudice to the rights of Lender to pursue any and all rights and remedies under the Bankruptcy Code, the Loan Documents or any other applicable agreement or law, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of cash collateral or granting of any interest in the Collateral, as applicable, or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of Professionals or other parties seeking compensation or reimbursement from the Estate.

5.6     Binding Effect.

(a)     The provisions of this Final Financing Order and the Loan Documents, the Obligations, the DIP Loan Superpriority Claim and any and all rights, remedies, privileges and benefits in favor of Lender provided or acknowledged in this Final Financing Order, and any actions taken pursuant thereto, shall be effective immediately upon entry of this Final Financing Order notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h) and 7062, shall continue in full force and effect, and shall survive entry of any such other order, including without limitation any order which may be entered confirming any plan of reorganization, converting one or more of the Case to any other chapter under the Bankruptcy Code, or dismissing one or more of the Case.

(b)     Any order dismissing one or more of the Case under section 1112 or otherwise shall be deemed to provide (in accordance with §§ 105 and 349 of the Bankruptcy Code) that (a) the DIP Loan Superpriority Claim and Lender's liens on and security interests in the Collateral and all other claims, liens, adequate protections and other rights granted pursuant

to the terms of this Final Financing Order shall continue in full force and effect notwithstanding such dismissal until the Obligations are indefeasibly paid and satisfied in full, and (b) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing all such claims, liens, protections and rights.

(c)    In the event this Court modifies any of the provisions of this Final Financing Order or the Loan documents following the final hearing, such modifications shall not affect the rights or priorities of Lender pursuant to this Final Financing Order with respect to the Collateral or any portion of the Obligations which arises or is incurred or is advanced prior to such modifications, and this Final Financing Order shall otherwise remain in full force and effect to such extent.

(d)    This Final Financing Order shall be binding upon Debtor, all parties in interest in the Case and their respective successors and assigns, including any trustee or other fiduciary appointed in the Case or any subsequently converted bankruptcy case(s) of any Debtor.  This Final Financing Order shall also inure to the benefit of Debtor, Lender, Pre-Petition Subordinated Lenders and each of their respective successors and assigns.

5.7    Restrictions on Cash Collateral Use, Additional Financing, Plan Treatment.

(a)    All post-petition advances and other financial accommodations under the DIP Financing Agreement and the other Loan Documents are made in reliance on this Final Financing Order and there shall not at any time be entered in the Case, or in any subsequently converted case under chapter 7 of the Bankruptcy Code, any order (other than the Final Order) which (a) authorizes the use of cash collateral of Debtor in which Lender has an interest, or the sale, lease, or other disposition of property of any Debtor'ss Estate in which

Lender has a lien or security interest, except as expressly permitted hereunder or in the Loan Documents, or (b) authorizes under section 364 of the Bankruptcy Code the obtaining of credit or the incurring of indebtedness secured by a lien or security interest which is equal or senior to a lien or security interest in property in which Lender holds a lien or security interest, or which is entitled to priority administrative claim status which is equal or superior to that granted to Lender herein; unless, in each instance (x) Lender shall have given its express prior written consent with respect thereto, no such consent being implied from any other action, inaction or acquiescence by Lender, or (y) such other order requires that all Obligations shall first be indefeasibly paid and satisfied in full in accordance with the terms of the DIP Financing Agreement and the other Loan Documents (other than unmatured indemnity obligations for which claims have not been asserted), including, without limitation, all debts and obligations of Debtor to Lender which arise or result from the obligations, loans, security interests and liens authorized herein, on terms and conditions acceptable to Lender.  The security interests and liens granted to or for the benefit of Lender and the Pre-Petition Subordinated Lenders hereunder and the rights of Lender and the Pre-Petition Subordinated Lenders pursuant to this Final Financing Order and the Loan Documents with respect to the Obligations and the Collateral are cumulative and shall not be altered, modified, extended, impaired, or affected by any plan of reorganization or liquidation of Debtor and, if Lender shall expressly consent in writing that the Obligations shall not be repaid in full upon confirmation thereof, shall continue after confirmation and consummation of any such plan.

    5.8 <u>No Owner/Operator Liability</u>.  Lender shall not be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtor (as such terms, or any similar terms,

are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq., as amended, or any similar federal or state statute).

5.9    Marshalling.  In no event shall Lender be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the Collateral.  Lender shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and, subject to entry of the Final Order, the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply Lender with respect to proceeds, products, offspring or profits of any of the Collateral, as applicable.

5.10    Right to Credit Bid.  Lender shall have the right to "credit bid" the amount of its claims that are Obligations arising under the terms of the Loan Documents, during any sale of all or substantially all of the Debtor's assets, including without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any restructuring plan subject to confirmation under section 1129(b)(2)(A)(ii)-(iii) of the Bankruptcy Code.

5.11    Payment and Review of Lender Fees and Expenses.  Each Debtor shall pay all fees, that are required under the DIP Financing Agreement, including, without limitation, the non-refundable payment to the Lender, as the case may be, of the fees and expenses of Lender (including without limitation professional fees and reasonable legal fees and expenses of Lender) set forth in the Loan Documents, whether incurred before or after the Petition Date; provided, that Debtor shall pay all such reasonable fees and expenses within ten (10) business days of delivery of a statement or invoice for such fees and expenses (it being understood that such statements or invoices shall not be required to be maintained in accordance with the U.S. Trustee Guidelines, nor shall any such counsel or other professional be required to file any interim or final fee applications with the Court or otherwise seek Court's approval of any such

payments) to the Debtor, the U.S. Trustee and the Committee, unless, within such ten (10) business day period, the Debtor, the U.S. Trustee or the Committee serves a written objection upon the requesting party, in which case, the Debtor shall pay only such amounts that are not the subject of any objection and the withheld amount subsequently agreed by the parties or ordered by the Court to be paid.

5.12    Term; Termination.    Notwithstanding any provision of this Final Financing Order to the contrary, the term of the financing arrangements among Debtor, Lender is authorized by this Final Financing Order may be terminated pursuant to the terms of the DIP Financing Agreement.

5.13    Proof of Claim.  The Obligations evidenced hereby and the liens, rights, priorities and protections granted to or in favor of Lender in respect of the  Collateral as set forth herein shall be deemed a timely filed proof of claim on behalf of Lender in This Case.

5.14    Limited Effect.    In the event of a conflict between the terms and provisions of any of the Loan Documents and this Final Financing Order, the terms and provisions of this Final Financing Order shall govern, interpreted as most consistent with the terms and provisions of the Loan Documents.

5.15    Objections Overruled.  All objections to the entry of this Final Financing Order are (to the extent not withdrawn, waived, withdrawn, or settled) hereby overruled.

5.16     Retention of Jurisdiction.  The Court retains jurisdiction and power with respect to all matters arising from or related to the implementation or interpretation of this Final Financing Order, the DIP Financing Agreement, and the other Loan Documents.

Dated: Wilmington, Delaware

          _____, 2017

_____
    UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT 1**

**DIP Financing Agreement**