**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Prestige Industries LLC,<br><br>     Debtor. | Chapter 11<br><br>Case No. 17-10186 (KG)<br><br>**Hearing Date: February 27, 2017 at 2:00 PM**<br><br>**Objection Deadline: February 15, 2017 by 4:00 PM** |

**APPLICATION OF THE DEBTOR PURSUANT
TO 11 U.S.C. 105(a) AND 363(b) TO (I) RETAIN TRAXI, LLC TO PROVIDE THE
DEBTOR A CHIEF RESTRUCTURING OFFICER AND CERTAIN ADDITIONAL
PERSONNEL AND (II) DESIGNATE ROBERT J. IOMMAZZO AS CHIEF
RESTRUCTURING OFFICER FOR THE DEBTOR
<u>NUNC PRO TUNC TO THE PETITION DATE</u>**

  Prestige Industries LLC, the above-captioned Debtor and Debtor in possession (collectively, the "Debtor") hereby files this application (the "Application") and respectfully represents as follows:

## I.

## BACKGROUND

  1. On January 30, 2017 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code, the Debtor continues to operate as debtor-in-possession and remains in possession of its assets. No official committee of unsecured creditors has been appointed.

  2. The factual background relating to the Debtor's commencement of this Chapter 11 cases is set forth in detail in the First Day Declaration filed on the Petition Date and incorporated herein by reference.

3. The Debtor, the successor to Prestige Corporation which was founded in 1995, is the largest hospitality laundry services provider in the New York City area, servicing over 90 hotels and other customers.

4. Following a period of rapid growth between 2007 and 2011, the Debtor experienced a series of operational setbacks, including cost overruns and delays in the construction of its state-of-the-art plant in North Bergen, New Jersey, weak operational management in its Paterson, New Jersey plant leading to high staff turnover and high temporary labor costs, and other adverse events. As a result, the Debtor is over-leveraged and has experienced persistent cash flow constraints despite maintaining operating profits before considering interest and depreciation. The Debtor employs approximately 582 employees in its plants in North Bergen and Paterson, New Jersey and generates annual revenues of approximately $40 million.

5. The Debtor seeks to sell its assets and business as a going concern to maximize the return to creditors.

6. The Debtor commenced this Chapter 11 case (the "Chapter 11 Case") to facilitate the sale of its business and to secure continued working capital financing to enable it to continue operations through the date of a sale, which is only available as debtor in possession financing.

## II.

## JURISDICTION

7. This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

8. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### III.

### RELIEF REQUESTED

9. By this Application, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtor requests entry of an order, substantially in the form of Exhibit "C" annexed hereto, authorizing, but not directing the Debtor to (i) retain personnel from Traxi, LLC ("Traxi") to provide the Debtor with a Chief Restructuring Officer ("CRO") and certain Additional Personnel (as described below) and (ii) designate Robert J. Iommazzo as the Debtor's CRO, nunc pro tunc to the Petition Date.

10. The Debtor's engagement agreement with Traxi (the "Engagement Agreement") is attached hereto as Exhibit "A".

11. Robert J. Iommazzo will serve as the CRO to assist the Debtor with its reorganization efforts and its Chapter 11 Case, as further described below. Traxi will provide additional employees ("Additional Personnel", collectively with the CRO, the "Engagement Personnel") as necessary to assist the CRO in the execution of the duties set forth more fully herein.

### IV.

### RETENTION OF PERSONNEL

12. In consideration of the size and complexity of its business, as well as the exigencies of the circumstances, the Debtor has determined that the services of experienced restructuring managers will substantially enhance its attempts to maximize the value of its estate. The Engagement Personnel are well qualified to act on the Debtor's behalf given their extensive knowledge and expertise with respect to chapter 11 proceedings.

13. Traxi is a nationally recognized business turnaround and crisis management company that specializes in providing restructuring and advisory services to companies in financial and operational distress. Traxi was founded in 2000 by Anthony Pacchia, a corporate restructuring advisor with over 25 years of experience in the banking, legal and investment fields.

14. Mr. Iommazzo is currently a Managing Director of Traxi. He has over thirty years of experience in financial, operational, restructuring and business consulting services. Mr. Iommazzo has restructured businesses in the distribution, manufacturing, real estate, fast food, casual dining and fine dining restaurants, construction related, apparel, and many other industries. Prior to joining Traxi, Mr. Iommazzo served as President of Scalamandre Silks, Inc., a luxury home furnishing design and marketing company. Mr. Iommazzo was formerly a principal in the turnaround consulting firm of Nachman Hays Brownstein Inc. and a Partner with Coopers & Lybrand (now PricewaterhouseCoopers). Mr. Iommazzo has previously led numerous turnaround and restructuring consulting engagements.

15. Traxi was originally engaged by the Debtor on December 1, 2016. In the time prior to the filing of the Debtor's bankruptcy, the Debtor requested, and Traxi provided the Debtor with, advice regarding the Debtor's anticipated bankruptcy filings. Robert J. Iommazzo already has taken an active role in overseeing extensive advisory and restructuring activities.

16. The Debtor believes that the employment of Mr. Iommazzo as the Chief Restructuring Officer, together with the other Additional Personnel, will enhance the Debtor's ability to manage the Debtor in its chapter 11 bankruptcy, assist in the sale of the Debtor's assets to maximize the value of those assets for the benefit of the Debtor's creditors, and develop a plan of reorganization, within the parameters of the Bankruptcy Court.

17. Due to its previous experience working with the Debtor, the Engagement Personnel have developed significant relevant experience and expertise regarding the Debtor's business operations that will provide the Debtor with effective and efficient services. They also have developed a strong working relationship with the Debtor's professionals and creditor representatives.

18. Based on the foregoing, the Debtor believes the employment of Traxi to assist the Debtor during this chapter 11 case is essential to the success of this case.

## V.

## SCOPE OF SERVICES

19. The services that Traxi, Mr. Iommazzo and the Additional Personnel will provide to the Debtor will be at the request of the Debtor and appropriately directed by the Debtor to avoid duplication of services with other professionals retained in this case. Traxi will make available Robert J. Iommazzo to serve as the Chief Restructuring Officer of the Debtor. The Debtor expects that Traxi will, among other things:

(1) Assist the Debtor in its restructuring negotiations with stakeholders and its representatives;

(2) Assist the Debtor in its development and implementation of cash management strategies and processes;

(3) Assist the Debtor in developing short term cash flow forecasts to assist with planning, including developing assumptions, related variance reporting and modeling;

(4) Assist the Debtor's development of the Debtor's future business plan, and related forecasts for use in negotiations with lenders and other stakeholders, and for other corporate purposes;

(5) Advise the Debtor in its oversight and management of financial performance in accordance with the business plan and compliance with the covenants under debtor-in-possession financing or cash collateral usage;

(6) Assist the Debtor in developing project plans, including the timing of milestones and milestone interdependencies, communications frameworks, governance structure, resource requirements, and the responsibilities of various project teams participants;

(7) Assist the Debtor in the preparation of the statement of financial affairs, bankruptcy schedules, account analyses, monthly reports, reconciliations, including reconciliation of claims, bankruptcy petitions, the plan of reorganization, and any other documentation required by the Bankruptcy Court or which customarily are issued by the chief financial officer;

(8) Assist the Debtor with providing testimony before the bankruptcy court on matters that are within the Traxi Personnel's knowledge and experience;

(9) Manage and approve the debtor-in-possession expenditures in accordance with the Bankruptcy Court approved budget and any other Bankruptcy Court approved expenditures; and

(10) Such other activities as may be mutually agreed upon by the Debtor and Traxi.

20. These services are necessary to enable the Debtor to maximize the value of its estate and successfully complete its restructuring.

## VI.

## **TRAXI'S DISINTERESTEDNESS**

21. To the best of the Debtor' knowledge, information, and belief, other than as set forth in the Declaration of Robert J. Iommazzo (the "Declaration"), annexed hereto as Exhibit B, Traxi: (i) has no connection with the Debtor, its creditors, other parties in interest, or the attorneys or accountants of any of the foregoing, or the United States Trustee or any person employed in the Office of the United States Trustee; and (i) does not hold any interest adverse to the Debtor's estate.

22. Although the Debtor submits that the retention of personnel is not governed by section 327 of the Bankruptcy Code, the Debtor attaches the Declaration, which discloses,

among other things, any relationship that Traxi, Iommazzo or any individual member of the Additional Personnel has with the Debtor, its significant creditors, or other significant parties in interest known to Traxi. Based upon the Declaration, the Debtor submits that Traxi is a "disinterested person" as that term is defined by section 101(14) of the Bankruptcy Code.

23. In addition, as set forth in the Declaration, if any new material facts or relationships are discovered or arise, Traxi will provide the Court with a supplemental declaration.

## VII.

## TERMS OF RETENTION

### A. Compensation

24. Subject to the Court's approval of this Application, Traxi will be entitled to compensation for its services on an hourly basis pursuant to the Engagement Letter.

25. The Debtor has provided Traxi an initial retainer of $100,000. Traxi has applied a portion of the retainer to its prepetition billings.

26. Traxi will invoice the Debtor for the services of the Engagement Personnel at the following agreed-upon hourly rates, which may be revised from time to time.

| Professional | Rate Per Hour |
| --- | --- |
| Managing Directors | $595 |
| Director/Senior Manager | $450 |
| Senior Associate | $350 |
| Secretarial | |

27. The hourly rates are based upon Traxi's rates for an individual person of a certain skill and experience.

119433083_1

28.     Pursuant to the Engagement Letter, Mr. Iommazzo and the Engagement Personnel shall provide part time services to the Debtor.  Traxi's services shall be adjusted as necessary to reflect needs of the Debtor and the particular service(s) being provided at any given time by the Engagement Personnel.

29.     The Debtor shall also reimburse all of Traxi's reasonable out-of-pocket expenses (including travel, telephone, facsimile, courier and copy expenses and reasonable attorney fees), as incurred.

30.     Traxi has agreed that it will not seek allowance on an interim basis of more than $100,000 in fees in any month without the Debtor's prior written consent. However, Traxi reserves the right to seek allowance on a final basis of all fees and expenses, and the $100,000 monthly limit on interim compensation shall not apply to such final allowance. Traxi has undertaken to provide bi-weekly summaries of fees for the Debtor's review.

31.     The Debtor notes that the compensation to Traxi is straightforward and economical. The Traxi Personnel are independent contractors and are not entitled to direct compensation from the Debtor.  The Traxi Personnel will continue to draw salary and receive health and other personal benefits from Traxi, thus relieving the Debtor of any payroll expense.

**B.     Indemnification.**

32.     As a material part of the consideration for which the Engagement Personnel have agreed to provide the services described herein, and in lieu of the Indemnification Provisions set forth in the Engagement Agreement, the Debtor has agreed to (a) indemnify the Engagement Personnel acting as officers to the same extent as the most favorable indemnification it extends to its officers and directors and (b) to cover such Engagement Personnel under the Debtor's director and officer liability policy (collectively, "the Indemnity Provisions")

33. The Debtor believes the Indemnity Provisions are a reasonable term and condition of the retention of the Engagement Personnel and were, along with all terms of the Engagement Letter, negotiated by the Debtor and at arm's-length and in good faith. Traxi and the Debtor believe that the Indemnity Provisions are comparable to those indemnification provisions generally obtained by crisis management firms of similar stature to Traxi and for comparable engagements, both in and out of court. The Debtor respectfully submits that the Indemnification Provisions, viewed in conjunction with the other terms of the retention of the Engagement Personnel, are reasonable and in the best interests of the Debtor, its estate, and creditors in light of the fact that the Debtor requires Traxi's services to successfully reorganize.

## VIII.

## FEES AND REPORTING

34. If the Court approves the relief requested herein, Traxi will be retained to provide the Debtor with the Engagement Personnel and Mr. Iommazzo will be designated as the Debtor's Chief Restructuring Officer pursuant to section 363 of the Bankruptcy Code. Because Traxi is not being retained as a professional under section 327 of the Code, Traxi will not be required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code. Instead, Traxi will file monthly with the Court, with copies to the U.S Trustee and counsel to any statutory committee (collectively, the "Notice Parties"), a report of staffing on the engagement for the previous month (the "Staffing Report"). The Notice Parties shall have 14 days after the date each Staffing Report is served on the Notice Parties to object to such Staffing Report. Upon receipt of any objection, the Debtor shall deduct an amount equal to the amount objected to from the next payment to Traxi until such objection is resolved, either consensually or by Court order.

Such compensation and expenses shall be subject to Court review in the event that an objection is filed.

35. In the 90 days prior to the Petition Date, Traxi received payments totaling $209,336.45 in the aggregate for services performed for the Debtor.

36. A precise disclosure of the amounts or credits held, if any, as of the Petition Date will be provided in Traxi's first report filed regarding compensation earned and expenses incurred. The unapplied residual retainer will be applied to Traxi's fees and expenses from the Petition Date forward until exhausted.

37. Given the numerous issues which the Engagement Personnel may be required to address in the performance of its services, Traxi's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for such services for engagements of this nature in an out-of-court context, as well as in chapter 11, the Debtor submits that the fee arrangements set forth in the Engagement Letter are reasonable.

## IX.

## **DISPUTE RESOLUTION PROCEDURES**

38. The Debtor and Traxi have agreed, subject to the Court's approval of this Application, that notwithstanding the terms of Engagement Letter: (a) any controversy or claim with respect to, in connection with, arising out of, or in any way related to this Application or the services provided by the Engagement Personnel to the Debtor as outlined in this Application, including any matter involving a successor in interest or agent of any of the Debtor or of Traxi, shall be brought in this Court or the United States District Court for the District of Delaware (the "District Court") (if the reference is withdrawn); (b) Traxi, the Debtor, and any and all successors and assigns thereof, consent to the jurisdiction and venue of such court as the sole and

119433083_1

exclusive forum (unless such courts do not have or retain jurisdiction over such claims or controversies) for the resolution of such claims, causes of actions, or lawsuits; (c) Traxi and the Debtor, and any and all successors and assigns thereof, waive trial by jury, such waiver being informed and freely made; (d) if this Court, or the District Court (if the reference is withdrawn), does not have or retain jurisdiction over the foregoing claims and controversies, Traxi and the Debtor, and any and all successors and assigns thereof, will submit first to non-binding mediation; and, if mediation is not successful, then to binding arbitration; and (e) judgment on any arbitration award may be entered in any court having proper jurisdiction. By this Application, the Debtor seeks approval of this agreement by the Court. Further, Traxi and the Debtor have agreed not to raise or assert any defense based upon jurisdiction, venue, abstention or otherwise to the jurisdiction and venue of this Court or the District Court (if the reference is withdrawn) to hear or determine any controversy or claims with respect to, in connection with, arising out of, or in any way related to this Application or the services provided hereunder.

## X.

## **APPLICABLE AUTHORITY**

39.    The Debtor seeks approval of the retention of Traxi pursuant to section 363 of the Bankruptcy Code, nunc pro tunc to the Petition Date. Section 363(b)(1) of the Bankruptcy Code provides in relevant part that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Further, pursuant to section 105(a) of the Bankruptcy Code, the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

40.    Under applicable case law, in this and other circuits, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the debtor, such use should be approved. See, e.g., Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a §363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application."); Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct").

41.    The retention of Traxi and its professionals is a sound exercise of the Debtor's business judgment. Robert J. Iommazzo has extensive experience as a senior officer and as an advisor for many troubled companies. The Debtor believes that the Engagement Personnel will provide services that benefit the Debtor's estate and creditors. In light of the foregoing, the Debtor believes that the retention of Traxi is appropriate and in the best interests of the Debtor and its estate and creditors.

42.    The retention of interim corporate officers and other temporary employees, therefore, is proper under section 363 of the Bankruptcy Code. This Court has authorized retention of officers utilizing this provision of the Bankruptcy Code on numerous occasions. See In re UCI Int LLC, Case No. 16-11354 (MFW) (Bankr. D. Del. July 12, 2016) (Docket No. 294); In re Constellation Enters. LLC, Case No. 11213 (CSS) (Bankr. D. Del. June 14, 2016) (Docket No. 237); In re Dex Media, Inc., Case No. 11200 (KG) (Bankr. D. Del. June 8, 2016) (Docket No. 166); In re Swift Energy Co., Case No. 15-12670 (MFW) (Bankr. D. Del. Feb. 1, 2016)

(Docket No. 217); In re Colt Holding Co. LLC, Case No. 15-11296 (LSS) (Bankr. D. Del. July 29, 2015) (Docket No. 291); In re Phoenix Payment Sys., Inc., Case No. 14-11848 (MFW) (Bankr. D. Del. Aug. 28, 2014) (Docket No. 113).

43. Based upon the foregoing, the Debtor submits that the retention of Traxi, and the designation of Robert J. Iommazzo as Chief Restructuring Officer on the terms set forth herein and in the Engagement Letter, is essential, appropriate, and in the best interest of the Debtor's estate, creditors, and other parties in interest and should be granted in this Chapter 11 Case.

44. Further, because the period from the Petition Date to the filing of this Application was brief, the Application should be approved nunc pro tunc to the Petition Date.

## XI.

## NOTICE

45. Notice of this Application has been provided to: (i) the U.S. Trustee; (ii) the Office of the United States Attorney for the District of Delaware; (iii) the Internal Revenue Service; (iv) the Debtor's twenty largest unsecured creditors; (v) counsel to the Debtor's prepetition and postpetition lenders; and (vi) all parties requesting notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is necessary.

46. No previous request for the relief sought herein has been made by the Debtor to this or any other court.

WHEREFORE, the Debtor respectfully requests that the Court grant the relief requested herein and such other and further relief as the Court deems just and proper.

Dated: February 1, 2017

/s/Peter C. Hughes

**DILWORTH PAXSON LLP**
Peter C. Hughes (I.D. No. 4180)
One Customs House – Suite 500
704 King Street
P.O. Box 1031
Wilmington, DE 19801
Telephone: (302) 571-9800 Facsimile: (302) 571-8875

-and-

**DILWORTH PAXSON LLP**
James M. Matour (*admitted pro hac vice*)
Peter C. Hughes
Erik L. Coccia (*admitted pro hac vice*)
1500 Market St., Suite 3500E
Philadelphia, PA 19102
Telephone: (215) 575-7000
Facsimile: (215) 575-7200

*Proposed Counsel for the Debtor and Debtor in Possession*